**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE CITY OF NEW YORK, | |
| Plaintiff, | |
| vs. | Case Number: 1:21-CV-04807-VEC-SDA |
| EXXON MOBIL CORPORATION, EXXONMOBIL OIL CORPORATION, ROYAL DUTCH SHELL PLC, SHELL OIL COMPANY, BP P.L.C., BP AMERICA INC., and AMERICAN PETROLEUM INSTITUTE, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO REMAND TO STATE COURT**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 4

III.    LEGAL STANDARDS ..................................................................................... 6

IV.     THIS CASE DOES NOT "ARISE UNDER" FEDERAL LAW. ................................... 6

        A. Federal common law does not provide a basis for removal. .......................... 7

           1.  The City's claims do not "implicate" federal common law. ................................ 8

           2.  Neither the artful pleading doctrine nor *Grable* apply. ........................................ 14

              a.   Defendants cannot satisfy the requirements of the artful pleading
                   doctrine. ............................................................................................... 15

              b.   Defendants cannot satisfy the requirements of *Grable*. .................................. 17

        B. First Amendment defenses do not provide a basis for removal. ................................. 22

V.      THERE IS NO FEDERAL OFFICER REMOVAL JURISDICTION. ......................... 25

        A. Defendants have not shown that any federal officer directed the actions at issue
           in this case. ................................................................................................... 26

        B. Defendants have not satisfied the "acting under" element. ......................................... 30

        C. Defendants have not satisfied the "colorable federal defense" element. .................... 30

VI.     THIS CASE IS NOT REMOVABLE UNDER THE OUTER CONTINENTAL
        SHELF LANDS ACT. ..................................................................................... 32

VII.    FEDERAL-ENCLAVE JURISDICTION DOES NOT EXIST. ............................... 35

VIII.   THERE IS NO FRAUDULENT JOINDER. ......................................................... 37

IX.     THIS CASE IS NOT REMOVABLE UNDER CAFA. ........................................... 39

X.      DEFENDANTS' REMOVAL IS OBJECTIVELY UNREASONABLE. ...................... 43

CONCLUSION ........................................................................................................ 45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*,
  731 F.3d 740 (7th Cir. 2013) ................................................................................ 42

*Am. Elec. Power Co. v. Connecticut*,
  564 U.S. 410 (2011) ............................................................................................. 10

*Am. Ins. Ass'n v. Garamendi*,
  539 U.S. 396 (2003) ............................................................................................. 14

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) ............................................................................................. 31

*Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.*,
  159 F.3d 358 (9th Cir. 1997) .................................................................................. 9

*Baker v. Atlantic Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) ................................................................................ 29

*Banco Nacional de Cuba v. Sabbatino*,
  376 U.S. 398 (1964) ............................................................................................. 13

*Battle v. Seibels Bruce Ins. Co.*,
  288 F.3d 596 (4th Cir. 2002) ................................................................................ 18

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
  965 F.3d 792 (10th Cir. 2020) ................................................................... 1, 25, 30

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
  405 F. Supp. 3d 947 (D. Colo. 2019) .............................................................. *passim*

*Beneficial Nat'l Bank v. Anderson*,
  539 U.S. 1 (2003) ................................................................................................... 7

*Calabro v. Aniqa Halal Live Poultry Corp.*,
  650 F.3d 163 (2d Cir. 2011) ........................................................................... 43, 44

*California v. ARC Am. Corp.*,
  490 U.S. 93 (1989) ................................................................................................. 9

*Carey v. Ripp*,
  No. 2:17-cv-04899(ADS)(SIL), 2018 WL 1135553 (E.D.N.Y. Feb. 28, 2018) ........ 22

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) ......................................................................................... 6, 16

*Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n*,
  447 U.S. 557 (1980) ............................................................................................. 32

*Children's Vill. v. Greenburgh Eleven Teachers' Union Fed'n of Teachers, Local, 1532*, 867 F. Supp. 245 (S.D.N.Y. 1994) ................................................................... 23

*City & Cnty. of Honolulu v. Sunoco LP*,
No. 20-cv-00163-DKW, 2021 WL 839439 (D. Haw. Mar. 5, 2021) ......................................... 1

*City & Cnty. of Honolulu v. Sunoco LP*,
No. 20-cv-00163-DKW, 2021 WL 531237 (D. Haw. Feb. 12, 2021) ............................... *passim*

*City of Milwaukee v. Illinois & Michigan*,
451 U.S. 304 (1981) ........................................................................... 10

*City of New York v. Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021) ................................................................. *passim*

*City of Oakland v. BP PLC*,
__ S. Ct. __ , 2021 WL 2405350 (June 14, 2021) ................................................. 1

*City of Oakland v. BP PLC*,
969 F.3d 895 (9th Cir. 2020) ............................................................... *passim*

*CMGRP, Inc. v. Agency for the Performing Arts, Inc.*,
689 F. App'x 40 (2d Cir. 2017) ............................................................ 43, 45

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*,
996 F.3d 243 (4th Cir. 2021) ................................................................ 29, 30

*Cnty. of San Mateo v. Chevron Corp.*,
960 F.3d 586 (9th Cir. 2020) ............................................................... 1, 30

*Cnty. of San Mateo v. Chevron Corp.*,
294 F. Supp. 3d 934 (N.D. Cal. 2018) ..................................................... *passim*

*Cnty. of Santa Clara v. Atl. Richfield Co.*,
137 Cal. App. 4th 292 (Cal. App. Ct. 2006) ..................................................... 24

*Connecticut v. Exxon Mobil Corp.*,
No. 3:20-CV-1555 (JCH), 2021 WL 2389739 (D. Conn. June 2, 2021) ........................... *passim*

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) .......................................................................... 13

*CWCapital Cobalt VR Ltd. v. CWCapital Invs. LLC*,
No. 17 Civ. 9463 (GBD), 2018 WL 2731270 (S.D.N.Y. May 23, 2018) ............................. 20

*Delaware ex rel. Denn v. Purdue Pharma L.P.*,
No. 18-383-RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018) ................................... 24

*Doe v. Exxon Mobil Corp.*,
573 F. Supp. 2d 16 (D.D.C. 2008) ............................................................. 39

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) ................................................................ 35

*Earth Island Inst. v. Crystal Geyser Water Co.*,
   __ F. Supp. 3d __, No. 20-cv-02212-HSG, 2021 WL 684961 (N.D. Cal. Feb. 23, 2021)........... 8

*Edenfield v. Fane*,
   507 U.S. 761 (1993) ...................................................................................................... 9

*Empire HealthChoice Assurance, Inc. v. McVeigh*,
   396 F.3d 136 (2d Cir. 2005) ................................................................................ *passim*

*Empire HealthChoice Assurance, Inc. v. McVeigh*,
   547 U.S. 677 (2006) ........................................................................... 8, 17, 19, 24

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
   26 F.3d 563 (5th Cir. 2014) ....................................................................................... 33

*Est. of Cornell v. Bayview Loan Servicing, LLC*,
   908 F.3d 1008 (6th Cir. 2018) ................................................................................... 22

*Exxon Mobil Corp. v. Schneiderman*,
   316 F. Supp. 3d 679 ............................................................................................ 37, 38

*Federated Dep't Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981) .................................................................................................. 17

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
   373 U.S. 132 (1963) .................................................................................................... 9

*Fracasse v. People's United Bank*,
   747 F.3d 141 (2d Cir. 2014) ........................................................................... 15, 17, 19

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
   463 U.S. 1 (1983) ........................................................................................................ 7

*Georgia v. Tennessee Copper Co.*,
   206 U.S. 230 (1907) .................................................................................................. 10

*Good v. Altria Grp., Inc.*,
   555 U.S. 70 (2008) ...................................................................................................... 9

*Good v. Altria Grp., Inc.*,
   501 F.3d 29 (1st Cir. 2007) ......................................................................................... 9

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005) ............................................................................................ *passim*

*Greenidge v. Mundo Shipping Corp.*,
   60 F. Supp. 2d 10 (E.D.N.Y. 1999)............................................................................ 45

*Grynberg Prod. Corp. v. Brit. Gas, p.l.c.*,
   817 F. Supp. 1338 (E.D. Tex. 1993) .......................................................................... 21

*Gunn v. Minton*,
   568 U.S. 251 (2013) .................................................................................................. 17

*Hustler Mag., Inc. v. Falwell,*
    485 U.S. 46 (1988) ................................................................................................ 23

*Illinois v. City of Milwaukee,*
    406 U.S. 91 (1972) ................................................................................................ 10

*In re Assicurazioni Generali, S.P.A.,*
    592 F.3d 113 (2d Cir. 2010) ................................................................................ 14

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia,*
    790 F.3d 457 (3d Cir. 2015) ................................................................................ 29

*In re Deepwater Horizon,*
    745 F.3d 157 (5th Cir. 2014) ........................................................................ 32, 33

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.,*
    511 F. Supp. 2d 742 (S.D. Tex. 2005) ................................................................ 23

*In re Facebook, Inc., Consumer Privacy User Profile Litig.,*
    354 F. Supp. 3d 1122 (N.D. Cal. 2019) .............................................................. 42

*In re Fosamax Prods. Liab. Litig.,*
    No. 09-cv-4061, 2009 WL 3109832 (S.D.N.Y. Sept. 28, 2009) ........................... 37

*In re Gen. Motors LLC Ignition Switch Litig.,*
    69 F. Supp. 3d 404 (S.D.N.Y. 2014) ................................................................... 21

*In re High-Tech Emp. Antitrust Litig.,*
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) .............................................................. 35

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
    488 F.3d 112 (2d Cir. 2007) ................................................................................ 28

*In re Nat'l Sec. Agency Telecommc'ns Recs. Litig.,*
    483 F. Supp. 2d 934 (N.D. Cal. 2007) ................................................................ 21

*In re Standard & Poor's Rating Agency Litig.,*
    23 F. Supp. 3d 378 (S.D.N.Y. 2014) .............................................................. 20, 21

*Int'l Paper Co. v. Ouellette,*
    479 U.S. 481 (1987) .............................................................................................. 10

*Isaacson v. Dow Chem. Co.,*
    517 F.3d 129 (2d Cir. 2008) ...................................................................... 25, 26, 27

*Jograj v. Enter. Servs., LLC,*
    270 F. Supp. 3d 10 (D.D.C. 2017) ...................................................................... 36

*K&D LLC v. Trump Old Post Office LLC,*
    951 F.3d 503 (D.C. Cir. 2020) ............................................................................ 26

*Kuklachev v. Gelfman*,
  600 F. Supp. 2d 437 (E.D.N.Y. 2009) ..................................................................... 4

*Kuperstein v. Hoffman-Laroche, Inc.*,
  457 F. Supp. 2d 467 (S.D.N.Y. 2006) ................................................. 39, 43, 44, 45

*Latiolais v. Huntington Ingalls, Inc.*,
  951 F.3d 286 (5th Cir. 2020) ................................................................................ 26

*LG Display Co. v. Madigan*,
  665 F.3d 768 (7th Cir. 2011) ........................................................................... 40, 42

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001) ........................................................................................ 9, 20

*Marcus v. AT&T Corp.*,
  138 F.3d 46 (2d Cir. 1998) ............................................................................. 16, 17

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005) ............................................................................................. 43

*Massachusetts v. Exxon Mobil Corp.*,
  462 F. Supp. 3d 31 (D. Mass. 2020) .............................................................. *passim*

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  141 S. Ct. 1532 (2021) ................................................................................ 1, 2, 25

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  952 F.3d 452 (4th Cir. 2020) .................................................... 1, 27, 29, 30

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  388 F. Supp. 3d 538 (D. Md. 2019) ............................................................... *passim*

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*,
  857 F.3d 141 (2d Cir. 2017) .................................................................................. 6

*Meer Enters., LLC v. Kocak*,
  No. 18 Civ. 00006 (JFK), 2018 WL 1901478 (S.D.N.Y. Apr. 20, 2018) ................ 15

*Merrell Dow Pharms. Inc. v. Thompson*,
  478 U.S. 804 (1986) .............................................................................................. 6

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,
  136 S. Ct. 1562 (2016) ......................................................................................... 17

*Milkovich v. Lorain J. Co.*,
  497 U.S. 1 (1990) ................................................................................................. 23

*Minnesota v. Am. Petroleum Inst.*,
  No. CV 20-1636 (JRT/HB), 2021 WL 1215656 (D. Minn. Mar. 31, 2021) .............. *passim*

*Miree v. DeKalb Cnty.*,
  433 U.S. 25 (1977) ................................................................................................ 8

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
   701 F.3d 796 (5th Cir. 2012) ................................................................ 42

*Missouri v. Illinois*,
   200 U.S. 496 (1906) .......................................................................... 10

*Moran v. Cont'l Cas. Co.*,
   No. 1:01-CV-1008, 2001 WL 1717214 (N.D.N.Y. Nov. 16, 2001) ......................... 39

*Moses v. Martin*,
   360 F. Supp. 2d 533 (S.D.N.Y. 2004) ...................................................... 44

*N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
   824 F.3d 308 (2d Cir. 2016) ............................................................ 19, 23

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .......................................................................... 23

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
   770 F.3d 1010 (2d Cir. 2014) ........................................................... 19, 20

*Nat'l Rev., Inc. v. Mann*,
   140 S. Ct. 344 (2019) ........................................................................ 23

*Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*,
   954 F.3d 831 (6th Cir. 2020) ........................................................... 40, 42

*New Jersey v. City of New York*,
   283 U.S. 473 (1931) .......................................................................... 10

*New Mexico ex rel. Balderas v. Monsanto Co.*,
   454 F. Supp. 3d 1132 (D.N.M. 2020) ..................................................... 8, 36

*New York v. New Jersey*,
   256 U.S. 296 (1921) .......................................................................... 10

*Newton v. Cap. Assurance Co., Inc.*,
   245 F.3d 1306 (11th Cir. 2001) ............................................................ 18

*Nordlicht v. N.Y. Tel. Co.*,
   799 F.2d 859 (2d Cir. 1986) ................................................................ 16

*North Dakota v. Minnesota*,
   263 U.S. 365 (1923) .......................................................................... 10

*O'Melveny & Myers v. F.D.I.C.*,
   512 U.S. 79 (1994) ............................................................................. 8

*Owen v. Stokes*,
   No. 21-cv-01581, 2020 WL 127552 (D. Nev. Jan. 10, 2020) .............................. 43

*Pampillonia v. RJR Nabisco, Inc.*,
   138 F.3d 459 (2d Cir. 1998) ................................................. 37, 38, 39, 44

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003) ........................................................................ 4

*Philadelphia Newspapers, Inc. v. Hepps*,
   475 U.S. 767 (1986) .................................................................................................. 23

*Polonetsky v. Better Homes Depot*,
   97 N.Y.2d 46 (App. Div. 2001) ................................................................................ 18

*Purdue Pharma L.P. v. Kentucky*,
   704 F.3d 208 (2d Cir. 2013) .............................................................. 6, 40, 41, 44

*Qatar v. First Abu Dhabi Bank PJSC*,
   432 F. Supp. 3d 401 (S.D.N.Y. 2020) ................................................................. 20, 24

*Republic of Philippines v. Marcos*,
   806 F.2d 344 (2d Cir. 1986) ..................................................................................... 14

*Rhode Island v. Chevron Corp.*,
   393 F. Supp. 3d 142 (D.R.I. 2019) .................................................................. *passim*

*Rhode Island v. Chevron Corp.*,
   979 F.3d 50 (1st Cir. 2020) ............................................................. 1, 25, 28, 29

*Rivet v. Regions Bank of La.*,
   522 U.S. 470 (1998) .................................................................................................. 17

*Robinson v. Arioyshi*,
   854 F.2d 1189 (9th Cir. 1988) .................................................................................. 25

*Rodriguez v. Casa Chapa S.A. de C.V.*,
   394 F. Supp. 2d 901 (W.D. Tex. 2005) .................................................................... 38

*Rodriguez v. Fed. Deposit Ins. Corp.*,
   140 S. Ct. 713 (2020) ............................................................................................ 8, 9

*Romano v. Kazacos*,
   609 F.3d 512 (2d Cir. 2010) ..................................................................................... 15

*Solucorp Indus., Ltd. v. Goldstein*,
   No. 11 CV 5920(VB), 2011 WL 7101063 (S.D.N.Y. Nov. 17, 2011) ...................... 22

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013) .................................................................................................. 16

*State v. Purdue Pharma LP*,
   No. CJ-2017-816, 2019 WL 4019929 (Okla. Dist. Aug. 26, 2019) .......................... 24

*Surplus Trading Co. v. Cook*,
   281 U.S. 647 (1930) .................................................................................................. 35

*Syngenta Crop Prot., Inc. v. Henson*,
   537 U.S. 28 (2002) ...................................................................................................... 6

*Tokhtaman v. Human Care, LLC*,
  No. 18-CV-5907 (VEC), 2018 WL 5447543 (S.D.N.Y. Oct. 29, 2018)....................... 17, 18, 23

*Troung v. Am. Bible Soc'y*,
  171 F. App'x 898 (2d Cir. 2006)............................................................................... 22

*United States v. Kimbell Foods, Inc.*,
  440 U.S. 715 (1979) ............................................................................................... 19

*United States v. Standard Oil Co.*,
  332 U.S. 301 (1947) ............................................................................................... 16

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009) ................................................................................................... 6

*W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*,
  646 F.3d 169 (4th Cir. 2011)......................................................................... 40, 41, 42

*Washington v. Chimei Innolux Corp.*,
  659 F.3d 842 (9th Cir. 2011)............................................................................... 42

*Watson v. Philip Morris Cos.*,
  551 U.S. 142 (2007) ..................................................................................... 25, 30, 31

*Whitaker v. Am. Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001) .................................................................................... 6

*Williams v. Emps. Mut. Cas. Co.*,
  845 F.3d 891 (8th Cir. 2017).................................................................................. 42

*Wilson v. Ethicon Women's Health & Urology*,
  No. 2:14-CV-13542, 2014 WL 1900852 (S.D.W. Va. May 13, 2014) .................................... 45

*Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*,
  164 F.3d 123 (2d Cir. 1999) ......................................................................... 8, 9, 13, 19

**Statutes**

15 U.S.C. § 57b(e)............................................................................................................ 9

28 U.S.C. § 1331 ................................................................................................... 2, 6, 14, 18

28 U.S.C. § 1332(d)(1)(B)............................................................................................ 2, 3, 40

28 U.S.C. § 1442 ...................................................................................................... 2, 25, 30

28 U.S.C. § 1443 ............................................................................................................ 2

28 U.S.C. § 1447(c) ................................................................................................ 2, 4, 43, 45

28 U.S.C. § 1453(b)........................................................................................................ 2

43 U.S.C. § 1349(b)(1) ................................................................................. 2, 3, 32, 33

**NYC Administrative Code**

NYC Code § 20-700 ......................................................................................... 1

NYC Code § 20-701(a) ............................................................................... 2, 4, 18

NYC Code § 20-703(d) ............................................................................... 5, 40, 41

**Rules**

Federal Rule of Civil Procedure 23 ............................................................... 3, 40, 41

**Other Authorities**

Pub. L. No. 109-2, 119 Stat. 4 § 2 (2005) ................................................... 42

## I.   INTRODUCTION

The City of New York (the "City") brought this action in New York state court, alleging that several oil-and-gas companies and their top trade association (together, "Defendants") violated the City's Consumer Protection Law ("CPL"), New York City Administrative Code ("NYC Code"), §§ 20-700 *et seq.* Defendants have systematically deceived the City's consumers by making false and misleading statements about the climate-change impacts of their products and businesses. *See* Dkt. 1-5 (Ex. 5), Summons and Complaint ("Compl.") ¶¶ 1–9, 76–100. For these statutory violations, the City seeks civil penalties and a court order enjoining Defendants from continuing to inundate the City with its deceptive greenwashing campaigns. *See id.* at 53 (relief sought).

In removing this case to federal court, Defendants assert a litany of arguments that misrepresent the City's Complaint and the controlling law. *See generally* Dkt. 1, Notice of Removal ("NOR"). To date, four appellate courts and eight district courts, including the District of Connecticut, have rejected similar attempts to remove cases targeting climate deception, giving Defendants "[a] batting average of .000" in opposing remand. *City & Cnty. of Honolulu v. Sunoco LP*, No. 20-cv-00163-DKW, 2021 WL 839439, at *2 n.3 (D. Haw. Mar. 5, 2021).[1] Undaunted,

---

[1] *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) ("*San Mateo I*"), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020) ("*San Mateo II*"), *reh'g en banc denied* (Aug. 4, 2020), *vacated and remanded on other grounds*, No. 20-884 (U.S. May 24, 2021); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020) ("*Oakland*"), *cert. denied*, __ S. Ct. __ , 2021 WL 2405350 (June 14, 2021); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) ("*Baltimore I*"), *as amended* (June 20, 2019), *aff'd in part, appeal dismissed in part*, 952 F.3d 452 (4th Cir. 2020) ("*Baltimore II*"), *vacated and remanded on other grounds*, 141 S. Ct. 1532 (2021) ("*Baltimore III*"); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019) ("*Boulder I*"), *aff'd in part, appeal dismissed in part*, 965 F.3d 792 (10th Cir. 2020) ("*Boulder II*"), *vacated and remanded on other grounds*, No. 20-783 (U.S. May 24, 2021); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019) ("*Rhode Island I*"), *aff'd in part, appeal dismissed in part*, 979 F.3d 50 (1st Cir. 2020) ("*Rhode Island II*"), *vacated and remanded on other grounds*, No. 20-900 (U.S. May 24, 2021); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020); *City & Cnty. of Honolulu v. Sunoco LP*, No. 20-cv-00163-DKW, 2021 WL 531237 (D. Haw. Feb. 12, 2021) (granting motion to remand in that matter and the related case of *Cnty. of Maui v. Chevron U.S.A. Inc.*, No. 20-cv-00470-DKW (D. Haw.)) (together, "*Honolulu*"), *appeal filed*, No. 21-15318 (9th Cir. Feb. 23, 2021); *Minnesota v. Am. Petroleum Inst.*, No. CV 20-1636 (JRT/HB), 2021 WL 1215656 (D. Minn. Mar. 31, 2021), *appeal filed*, No. 21-1752 (8th Cir. Apr. 5, 2021); *Connecticut v. Exxon Mobil Corp.*, No. 3:20-CV-1555 (JCH), 2021 WL 2389739 (D. Conn. June 2, 2021), *appeal filed*, No. 21-1446 (2d Cir. June 8, 2021).

Defendants advance the same grounds for removal here that they have litigated and lost time and again, namely: (1) arising-under jurisdiction on the basis of federal common law and First Amendment defenses, 28 U.S.C. § 1331; (2) the federal officer removal statute, 28 U.S.C. § 1442(a)(1); (3) the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1); (4) federal-enclave jurisdiction; and (5) the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453(b).[2] The only theory that they raise here and that has not yet been addressed by another court—diversity jurisdiction premised on fraudulent joinder—falls equally flat.

As in all the previous cases, "[t]he principal problem with Defendants' arguments is that they misconstrue [the City's] claims." *Honolulu*, 2021 WL 531237, at *1. Unable to defend their removal based on the *actual* allegations in the Complaint, Defendants try to recast this action as "a transboundary pollution suit" that will "compel Defendants to curb greenhouse gas emissions" and "force [them] to reduce—if not eliminate—their fossil fuel production activities to achieve the City's preferred greenhouse gas emissions levels." NOR ¶¶ 20, 36, 46. That is nonsense. As apparent from even a cursory reading of the Complaint, the City seeks to hold Defendants liable for violating the CPL by making statements and omissions that have "the capacity, tendency or effect of deceiving or misleading consumers" in the City. NYC Code § 20-701(a); *see also* Compl. ¶¶ 76– 100 (causes of action). Although *the subject matter* of Defendants' deception involves climate change, greenhouse gas emissions, and fossil fuels, that mundane fact does not magically transform this lawsuit into one that seeks to halt global fossil-fuel production. To the contrary: if the City

---

[2] On May 24, 2021, the Supreme Court vacated judgment in *Baltimore*, *San Mateo*, *Boulder*, and *Rhode Island* in light of its decision in *Baltimore III*, 141 S. Ct. at 1535, which addressed the scope of appellate review of remand orders under 28 U.S.C. § 1447(d). The First, Fourth, Ninth, and Tenth Circuits had all construed that statutory provision as limiting appellate review of a remand order to two bases for removal: federal-officer jurisdiction under 28 U.S.C. § 1442 and civil-rights jurisdiction under 28 U.S.C. § 1443. In *Baltimore III*, however, the Supreme Court held that Section 1447(d) requires an appellate court to review all asserted bases for removal whenever a defendant alleges federal-officer jurisdiction. *See id.* at 1543. The Supreme Court did not address the merits of any of the defendants' removal arguments, but instead remanded those cases so that the appellate courts could review the non-federal-officer grounds for removal in the first instance. *See id.*

prevails on its CPL claims, Defendants will still be able to extract, produce, and sell as much fossil fuel as they desire without any fear of incurring liability under the CPL. They simply will not be able to misrepresent the climate impacts of their products and businesses to consumers in the City. *See* Compl. at 53 (relief sought).

Once the Court discards their straw-man theory of the case, Defendants' purported grounds for removal quickly crumble. The City's claims for deceptive advertising fall far outside any recognized body of federal common law, and they bear no resemblance to the claims asserted in *City of New York v. Chevron Corp.*, which sought to hold five fossil fuel companies liable "for the damages caused by fossil fuel emissions." 993 F.3d 81, 93 (2d Cir. 2021). At any rate, Defendants' invocation of federal common law, like their reliance on the First Amendment, amounts to nothing more than an ordinary federal defense that, under the well-pleaded complaint rule, cannot provide a basis for removal.

The federal officer removal statute does not confer jurisdiction because no federal officer directed or controlled Defendants' efforts to greenwash their products and businesses. Nor does OCSLA, because Defendants' false and misleading statements do not "aris[e] out of, or in connection with," any operation conducted on the outer continental shelf ("OCS"). 43 U.S.C. § 1349(b)(1). Defendants' theory of federal enclave jurisdiction is wholly untenable: it would work "a sweeping change to the balance between the jurisdiction of state and federal courts" by creating "federal jurisdiction in any case involving injuries that occur throughout a state, no matter how minor the injuries occurring on federal enclaves are in relation to the claims at issue." *Connecticut*, 2021 WL 2389739, at \*13. And this lawsuit cannot qualify as a CAFA "class action" because the City pleaded its claims under a local law enforceable only by the City that bears zero resemblance to Federal Rule of Civil Procedure 23. *See* 28 U.S.C. § 1332(d). Finally, Defendants' fraudulent-

joinder challenge fails because they have not and cannot come up with any evidence—much less clear and convincing evidence—of outright fraud.

This Court should therefore join the unanimous chorus of judicial authority rejecting Defendants' and other fossil fuel companies' baseless attempts to remove lawsuits targeting climate deception. This action belongs in state court, where it was filed, and Defendants had no objectively reasonable basis for removing it to federal court. This Court should therefore remand the case to state court and award costs and attorney's fees to the City pursuant to 28 U.S.C. § 1447(c).

## II.    BACKGROUND

On April 22, 2021, the City sued Defendants in New York state court, alleging claims exclusively under the CPL. *See* Compl. ¶¶ 76–100 (causes of action). As sole enforcer of that consumer protection statute, the City and its agencies are charged with protecting New York consumers from "deceptive trade practices," NYC Code § 20-701, which include any representation made "in connection with" the sale of consumer goods or services that has "the capacity, tendency or effect of deceiving or misleading consumers," *id.*; *see also Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 524 n.10 (S.D.N.Y. 2003) (City is sole enforcer); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009) (same). The City exercises that unique enforcement power here to stop Defendants from deceiving the City's consumers about the climate impacts of their products and businesses.

As extensively detailed in the Complaint, Defendants have engaged in relentless greenwashing campaigns over the past three years that continue to this day. *See, e.g.*, Compl. ¶¶ 1–9. Recognizing that consumers want to reduce their carbon footprint and combat climate change, Defendants promote their gasoline products as "cleaner" and "emissions-reducing," yet they fail to disclose the fact that those same products are leading drivers of climate change. *See id.* ¶¶ 26–33.

As a result, consumers are left with the false impression that purchasing Defendants' fossil-fuel products will help combat climate change when, in fact, the environmental benefits are a mirage.

At the same time, Defendants falsely portray themselves as corporate leaders in the fight against climate change, knowing that they can sell more products if they are viewed as environmentally responsible. *See id.* ¶¶ 18–25. Each day, they bombard consumers in the City with newspaper ads, social media posts, and other promotional materials that trumpet their supposed investments in low-emission technologies and zero-emission renewable energy, such as solar, wind, and battery storage. *See id.* ¶¶ 34–75. But Defendants fail to disclose that those investments constitute a negligible percentage of their total business, that many of their so-called "clean" energy projects contribute substantially to climate change, and that they plan to dramatically ramp up fossil-fuel production in the coming years. *See id.*

That ongoing deception of the City's consumers must stop. Accordingly, the City seeks civil penalties for CPL violations occurring in the past three years, and injunctive relief to prevent Defendants from blitzing the City with their deceptive advertisements and promotional statements. *See id.* at 53 (relief sought). The Complaint does *not* seek to restrict fossil-fuel sales or otherwise "stop climate change," as Defendants wrongly assert. NOR ¶¶ 13–14. Indeed, that sort of injunctive relief is not even available under the CPL. *See* NYC Code § 20-703(d) (limiting injunctive relief to "an order enjoining" "acts or practices which constitute violations of [the CPL]"). When the City prevails on its CPL claims, Defendants will still be able to sell as many fossil-fuel products to the City's consumers as they wish; they simply will not be able to do so using deceptive advertising.

On May 28, Defendants removed this case to federal court. The City now moves to remand the case to state court.

III.   **LEGAL STANDARDS**

As a general matter, federal courts must "strictly construe[]" removal jurisdiction. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002); *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 201 (2d Cir. 2001) (same). Doing so not only respects Congress's "intent to restrict federal court jurisdiction," but also advances important federalism principles, such as "preserving the independence of state governments." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013). Accordingly, the removing party bears the burden of demonstrating that removal is proper. *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017). And federal courts must "resolv[e] any doubts against removability." *Purdue Pharma*, 704 F.3d at 213.

IV.   **THIS CASE DOES NOT "ARISE UNDER" FEDERAL LAW.**

Defendants invoke Section 1331 as a basis for removal, insisting that the City's state-law claims actually "arise under" federal law for jurisdictional purposes. NOR ¶ 24. But here, as in the numerous other climate-deception cases that have been remanded to state court, Defendants face an insurmountable hurdle: the well-pleaded complaint rule. *See supra* note 1.

Under that "longstanding" rule, "a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (cleaned up). As "master of the claim," a plaintiff may choose to "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Accordingly, "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986). Nor can it rest on "a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463

6

U.S. 1, 14 (1983). "As a general rule," then, "a case will not be removable" on the basis of arising-under jurisdiction "if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

Here, the City asserts only claims created by New York City local law, and Defendants do not contend otherwise. Instead, they try to use federal common law and the First Amendment to force this case into two narrow exceptions to the well-pleaded complaint rule: (1) *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and (2) the artful pleading doctrine. *See* NOR ¶ 24. But they cannot do so because, at bottom, all of their arguments are thinly veiled federal defenses that are incapable of supporting removal jurisdiction. *See Connecticut*, 2021 WL 2389739, at \*3–10 (rejecting analogous attempts to remove consumer-protection claims targeting climate deception); *Minnesota*, 2021 WL 1215656, at \*3–8 (same); *Massachusetts*, 462 F. Supp. 3d at 39–45 (same); *see also Oakland*, 969 F.3d at 906–07 (rejecting arguments that arising-under jurisdiction existed because climate-deception claims "implicate[d] a variety of federal interests [relating to] energy policy, national security, and foreign policy" (cleaned up)).

A.    **Federal common law does not provide a basis for removal.**

Defendants contend that federal subject-matter jurisdiction exists because this lawsuit "implicate[s]" bodies of federal common law relating to interstate pollution and foreign affairs. NOR ¶ 27. But the City's CPL claims for deceptive trade practices do no such thing. And even if they did, Defendants do not—and cannot—show that these purported federal issues satisfy the strict requirements of *Grable* jurisdiction or the artful pleading doctrine. Accordingly, this Court should

join the "fleet" of decisions rejecting analogous attempts to remove on the basis of federal common law. *City of New York*, 993 F.3d at 94.[3]

### 1.    The City's claims do not "implicate" federal common law.

"Judicial lawmaking in the form of federal common law plays a necessarily modest role under a Constitution that vests the federal government's 'legislative Powers' in Congress and reserves most other regulatory authority to the States." *Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713, 717 (2020). To date, the Supreme Court has cabined federal common law to a "few and restricted enclaves." *City of New York*, 993 F.3d at 89 (cleaned up). And it has repeatedly warned that "strict conditions must be satisfied" before a judge "may claim a new area for common lawmaking." *Rodriguez*, 140 S. Ct. at 717.

The party invoking federal common law therefore bears a "substantial burden." *Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 127 (2d Cir. 1999). It must show, at a bare minimum, that "the operation of state law would (1) significantly conflict with (2) uniquely federal interests." *Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 140 (2d Cir. 2005) (Sotomayor, J.) ("*Empire I*") (cleaned up), *aff'd*, 547 U.S. 677 (2006) ("*Empire II*"). The "mere existence of a federal interest" will not suffice. *City of New York*, 993 F.3d at 90. Nor will a "highly abstract" or "speculative" interest. *Miree v. DeKalb Cnty.*, 433 U.S. 25, 32 (1977) (cleaned up). Instead, Defendants must identify a "specific, concrete federal policy or interest" regarding a particular issue raised in the case. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 88 (1994). They

---

[3] *See also Oakland*, 969 F.3d at 906; *Connecticut*, 2021 WL 2389739, at * 5–10; *Minnesota*, 2021 WL 1215656, at *5– 6; *Earth Island Inst. v. Crystal Geyser Water Co.*, __ F. Supp. 3d __, No. 20-cv-02212-HSG, 2021 WL 684961, at *2– 7 (N.D. Cal. Feb. 23, 2021); *New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1150 (D.N.M. 2020); *Baltimore I*, 388 F. Supp. 3d at 554–58; *San Mateo I*, 294 F. Supp. 3d at 937; *Boulder I*, 405 F. Supp. 3d at 957–64; *Rhode Island I*, 393 F. Supp. 3d at 149–150; *Massachusetts*, 462 F. Supp. 3d at 41–44.

then must "specifically show[]" "an actual, significant conflict" between that interest and the application of state law. *Woodward*, 164 F.3d at 127.

Defendants do not—and cannot—carry that "heavy burden." *Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358, 362 (9th Cir. 1997). For starters, the "federal government" has no "unique interest . . . in determining" whether or not Defendants should be held liable for making false and misleading statements to the City's consumers. *Rodriguez*, 140 S.Ct. at 717–18. Indeed, "there is no question that [a state's] interest in ensuring the accuracy of commercial information in the marketplace is substantial." *Edenfield v. Fane*, 507 U.S. 761, 769 (1993). Far, then, from raising a uniquely federal interest, this lawsuit falls squarely within fields that have been traditionally occupied and regulated by the States, namely: consumer protection, *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 150 (1963); "advertising," *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541–42 (2001); and "unfair business practices," *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989).

Nor do Defendants identify a significant and actual conflict between the operation of the CPL and any federal policy concerning the protection of consumers or the regulation of deceptive advertising practices. Indeed, they do not even try. That omission is unsurprising, as the Federal Trade Commission Act expressly preserves States' rights to enforce their own consumer protection laws. 15 U.S.C. § 57b(e) ("Remedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law."); *see also Good v. Altria Grp., Inc.*, 501 F.3d 29, 52–53 (1st Cir. 2007) ("We can think of no other purpose for this clause other than to allow further relief from unfair or deceptive acts or practices under state law."), *aff'd and remanded*, 555 U.S. 70 (2008). If anything, then, the federal government has expressed an

9

interest in *promoting* state-law consumer protection claims for deceptive advertising, including those asserted here.

In a bid to avoid that conclusion, Defendants try to squeeze the City's claims into (1) the federal common law of interstate pollution, and (2) the federal common law of foreign affairs. NOR ¶ 27. They cannot do so, however, without stretching those bodies of judge-made law beyond recognition.

**Federal Common Law of Interstate Pollution:** Contrary to Defendants' insistence, federal common law does not apply simply because the *subject matter* of Defendants' false and misleading statements concerns the climate impacts of Defendants' products and businesses. Federal courts have narrowly cabined the body of federal common law relating to transboundary pollution to public nuisance claims that "regulat[e]" interstate air or water pollution. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987).[4] The City's CPL claims, by contrast, do not directly or indirectly regulate Defendants' emissions or the pollution associated with the use of fossil fuels. In terms of injunctive relief, the City seeks only to enjoin Defendants from continuing their deceptive advertising campaigns of greenwashing their products and businesses. *See* Compl. at 53 (relief sought). It does not request any court order to limit or stop Defendants from producing or selling any of their products. As for monetary relief, the City simply seeks civil penalties that will be

---

[4] *See also Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 419 (2011) (seeking "injunctive relief" that would "require[e] each defendant to cap its carbon dioxide emissions and then reduce them by a specified percentage each year for at least a decade" (cleaned up)); *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 311 (1981) (*Milwaukee II*) (seeking an order requiring "petitioners to eliminate all overflows and to achieve specified effluent limitations on treated sewage"); *Illinois v. City of Milwaukee*, 406 U.S. 91, 93 (1972) (*Milwaukee I*) (same); *New Jersey v. City of New York*, 283 U.S. 473, 476–77 (1931) (seeking "an injunction" that would "restrain[] the city from dumping garbage into the ocean or waters of the United States off the coast of New Jersey and from otherwise polluting its waters and beaches"); *New York v. New Jersey*, 256 U.S. 296, 298 (1921) (seeking to "permanently enjoin[]" defendant from "discharging . . . sewage" into the New York harbor); *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 236 (1907) (seeking "to enjoin the defendant copper companies from discharging noxious gas"); *Missouri v. Illinois*, 200 U.S. 496, 517 (1906) (seeking "to restrain the discharge of . . . sewage"); *see also North Dakota v. Minnesota*, 263 U.S. 365, 371–72 (1923) (seeking "an order enjoining the continued use of [certain] ditches" that were water overflows that injured farming area in neighboring state).

assessed based on the number of CPL violations. *See id.* So, even assuming *arguendo* that these civil penalties could qualify as a form of "regulation," they would regulate—at most—Defendants' use of deceptive advertising in the sale of their fossil-fuel products. They would not prevent or otherwise discourage Defendants from selling fossil fuels or from using non-deceptive forms of advertising to promote those products. The City's CPL claims therefore fall far outside any established body of federal common law relating to interstate pollution.

*City of New York* does not compel a different conclusion, but instead confirms that the federal common law of interstate air pollution is restricted to lawsuits that, "if successful, would operate as a *de facto* regulation on [transborder] emissions." 993 F.3d at 96. In that case, the City brought common-law claims for nuisance and trespass against certain oil and gas companies, "seeking to recover damages for the harms caused by global greenhouse gas emissions." *Id.* at 91. The City specifically defined the conduct giving rise to liability as "lawful commercial activity," namely: their lawful "production, promotion, and sale of fossil fuels." *City of New York*, 993 F.3d at 87–88 (cleaned up). Its complaint did "not concern itself with aspects of fossil fuel production and sale that are unrelated to emissions." *Id.* at 97. And the City reaffirmed this point in its opening brief to the Second Circuit, declaring that its "particular theory of the claims . . . assumes that Defendants' business activities have substantial social utility and does not hinge on a finding that those activities themselves were unreasonable or violated any obligation other than the obligation to pay compensation." Brief for Appellant at 19, *City of New York v. Chevron Corp.*, 993 F.3d 81, No. 18-2188, Dkt. 89, 2018 WL 5905772 (2d Cir. Nov. 8. 2018).

In light of these representations, the Second Circuit concluded that the City's claims "would regulate cross-border emissions" because they "effectively impose[d] strict liability for the damages caused by fossil fuel emissions no matter where in the world those emissions were released (or who

released them)." 993 F.3d at 93. Under that theory of liability, the court reasoned, the defendants would need to "cease global production [of fossil fuels] altogether" if they "want[ed] to avoid all liability." *Id.* And that "ongoing liability," the court continued, "would no doubt compel the [defendants] to develop new means of pollution control." *Id.* (cleaned up). As a result, the panel concluded that the lawsuit before it was "no different" from earlier Supreme Court cases that applied federal common law to nuisance claims for the abatement of interstate pollution. *Id.* at 92.

Plainly, *City of New York* stands separate and distinct from the other climate-deception cases that have been remanded to state court, all of which seek to hold fossil-fuel companies liable for damages caused by their use of *unlawful deception* to inflate the market for their fossil-fuel products. *See supra* note 1. And it stands miles apart from the City's CPL claims here, which do not even seek damages nor any relief directed at production or use of Defendants' products. Instead, this action requests civil penalties for false and deceptive statements. Moreover, if the City prevails on the merits of its CPL claims, Defendants would *not* need to "cease global production" of fossil fuels to "avoid all [future] liability." *City of New York*, 993 F.3d at 93. They would simply need to stop their deceptive marketing campaigns. As a result, Defendants' "ongoing liability" would *not*, in any way, "compel [them] to develop new means of pollution control." *Id.* At the very most, the threat of liability under the CPL would encourage Defendants to develop new forms of advertising. Thus, the Second Circuit's decision in a prior, unrelated lawsuit lends no support to Defendants.

**Federal Common Law of Foreign Affairs:** Nor can Defendants shoehorn this case into the federal common law of foreign affairs. *See* NOR ¶ 42. In making these arguments, Defendants once again mischaracterize the Complaint as having the purpose and effect of "forc[ing] Defendants to reduce—if not eliminate—their fossil fuel production activities to achieve the City's preferred greenhouse gas emissions levels." *Id.* ¶ 46. Of course, the Complaint does not have anything to do

with "preferred greenhouse gas emissions levels," which are immaterial to proving a CPL claim for deceptive advertising. And for the reasons already stated, holding Defendants liable for misrepresenting the climate impacts of their products and businesses does not regulate the extraction, production, or sale of fossil fuels. So long as Defendants refrain from engaging in deceptive advertising practices, they can sell as many and as much of their fossil-fuel products as they want without risk of incurring liability under the CPL.

The City's lawsuit has nothing to do with any "international treaties" or federal policies relating to "the prevention of global warming . . . energy production, economic growth, foreign policy, [or] national security." *Id.* ¶ 47 (cleaned up). Defendants' cited examples prove as much. The removal notice points to legislation, executive action, treaties, and comments made by government officials about "quotas" on petroleum imports, *id.* ¶¶ 48–49; "emergency oil stocks," *id.* ¶ 50; "international commitment[s] to reduce greenhouse gas emissions," *id.* ¶¶ 51, 53–55; "domestic gas production . . . and domestic crude oil production," *id.* ¶ 52; "lease[s]" on federal lands for oil and gas production, *id.* ¶ 52; and "sovereign liability and compensation schemes to address climate change on an international level," *id.* ¶ 57 (cleaned up).

But none of these supposed federal policies addresses the liability of private companies for making false and misleading statements about the climate impacts of their products and businesses. Accordingly, none of them could possibly conflict with—much less "significant[ly] conflict" with—the operation of the CPL in this case. *Woodward*, 164 F.3d at 127. The City's lawsuit therefore stands miles apart from the foreign-affairs cases cited by Defendants. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 400–06 (1964) (applying act-of-state doctrine to claims that Cuba violated international law by expropriating sugar from a Cuban corporation owned primarily by United States residents); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 366 (2000)

(concluding that federal statute preempted state law that restricted state agencies from purchasing goods or services from companies doing business with the nation of Burma"); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 420 (2003) (finding preemption because of a "clear conflict" between state law and executive agreements); *Republic of Philippines v. Marcos*, 806 F.2d 344, 354 (2d Cir. 1986) ("an action brought by a foreign government against its former head of state arises under federal common law because of the necessary implications of such an action for United States foreign relations"); *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 119 (2d Cir. 2010) (finding a "clear conflict" between state law and an express foreign policy of the United States).

This Court should thus conclude that federal common law does not govern the City's CPL claims, just as the district courts in *Connecticut*, *Massachusetts*, and *Minnesota* did in consumer-protection cases for climate greenwashing. *See Connecticut*, 2021 WL 2389739, at *4–7, *Massachusetts*, 462 F. Supp. 3d at 41–42; *Minnesota*, 2021 WL 1215656, at *4–5; *see also San Mateo I*, 294 F. Supp. 3d at 937.

### 2.    Neither the artful pleading doctrine nor *Grable* apply.

Even if the City's claims for deceptive promotion and advertising did somehow "implicate" federal common law, NOR ¶ 27, arising-under jurisdiction would still not exist. Defendants do not contend that a state-law claim arises under federal law for jurisdictional purposes whenever the claim is governed by federal common law. Nor could they. As then-Judge Sotomayor explained in *Empire I*, "satisfaction of the two-prong [federal-common-law] test does not necessarily create federal jurisdiction under 28 U.S.C. § 1331." 396 F.3d at 142. To hold otherwise would "conflate[] the preemption and jurisdiction analysis," and "giv[e] short shrift to the well-pleaded complaint rule." *Id.* Accordingly, "even in cases" that are governed by federal common law, "courts must still

ask the secondary question of whether the federal common law issue appears on the face of the plaintiff's well-pleaded complaint." *Id.* at 143 n.4.[5]

Defendants cannot identify any federal common law issue on the face of the City's well-pleaded Complaint. They instead try to wedge this case into two exceptions to the well-pleaded complaint rule: (1) the artful pleading doctrine, and (2) *Grable*. *See* NOR ¶ 24. Neither applies, however, as every court has concluded in lawsuits targeting climate deception. *See supra* note 1.

### a. *Defendants cannot satisfy the requirements of the artful pleading doctrine.*

The Court can make quick work of Defendants' frivolous invocation of the artful pleading doctrine. The Second Circuit recognizes "[t]hree situations . . . in which a complaint that does not allege a federal cause of action may nonetheless arise under federal law for purposes of subject matter jurisdiction." *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (*per curiam*) (cleaned up). The first is where "Congress expressly provides, by statute, for removal of state law claims." *Id.* The second is where "the state law claims are completely preempted by federal law." *Id.* And the third is *Grable*. *Id.* The "artful pleading doctrine" simply refers to the first two exceptions: a removal statute and complete preemption. *See Romano v. Kazacos*, 609 F.3d 512, 519–20 (2d Cir. 2010); *see also Meer Enters., LLC v. Kocak*, No. 18 Civ. 00006 (JFK), 2018 WL 1901478, at *3 (S.D.N.Y. Apr. 20, 2018). It does not represent a fourth, stand-alone exception to the well-pleaded complaint rule. *See Fracasse*, 747 F.3d at 143–44 (applying this three-exception framework, even though defendant contended that "the 'artful pleading doctrine' permitted removal").

---

[5] On this point, the panel was unanimous. *See id.* at 150 (Sacks, J., concurring) (agreeing that, even if a case satisfied the test for federal common law, that would give rise to subject-matter jurisdiction only "if th[e] litigant's well-pleaded complaint arises under federal law"); *id.* at 154 (Raggi, J., dissenting) (agreeing that where a "complaint pleaded claims under only state law," "federal common law . . . was not a ground for removal of those state claims to federal court").

Here, Defendants do not identify a federal statute that completely preempts or expressly removes the City's CPL claims, and there is no such statute. Nor do they argue that federal common law possesses the "extraordinary" preemptive force necessary to *completely* preempt state-law claims—and for good reason. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). The Second Circuit has squarely rejected attempts to apply the complete preemption doctrine to federal common law, explaining: "it is clear that the complete preemption doctrine applies only where Congress has clearly manifested an intent to disallow state law claims in a particular field." *Marcus v. AT&T Corp.*, 138 F.3d 46, 53–54 (2d Cir. 1998); *see also Connecticut*, 2021 WL 2389739, at *4–7 (same); *Oakland*, 969 F.3d at 905–08 (treating the artful-pleading doctrine as coterminous with the complete-preemption doctrine, and analyzing the fossil-fuel companies' federal-common-law arguments under *Grable* only).

As a result, applying the artful pleading doctrine to this case would break new jurisdictional ground. Yet Defendants offer no doctrinal basis for doing so. Instead, they cite:

- cases where subject-matter removal jurisdiction was never in dispute, *see United States v. Standard Oil Co.*, 332 U.S. 301, 307 (1947) (United States was the plaintiff); *City of New York*, 993 F.3d at 94 (diversity jurisdiction); [6]

- an inapposite decision about jurisdiction under the Class Action Fairness Act, *see Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590 (2013);

- a holding that the Second Circuit has since expressly abrogated, *see Nordlicht v. N.Y. Tel. Co.*, 799 F.2d 859, 862 (2d Cir. 1986), *abrogated on the same grounds as recognized by Marcus v. AT&T Corp.*,138 F.3d 46, 54–55 (2d Cir. 1998);

- a footnote in *Federated Dep't Stores, Inc. v. Moitie* that the Supreme Court has expressly cabined to the facts of that decision, *compare*, *Moitie*, 452 U.S. 394, 397 n.2 (1981), *with Rivet v. Regions Bank of La.*, 522 U.S. 470, 472 (1998) ("clarify[ing] and confin[ing] to its specific context the Court's second footnote in [*Moitie*]"); and

---

[6] *City of New York* disavowed addressing any jurisdictional issues, "consider[ing] the [defendant's] preemption defense on its own terms, [and] not under the heightened standard unique to the removability inquiry." 993 F.3d at 94. Accordingly, the Second Circuit's colloquial reference to "artful pleading" cannot be understood as a reference to the jurisdictional doctrine of artful pleading. *Id.* at 97.

16

- dicta that predates the Second Circuit's clarification of the complete preemption doctrine in *Marcus*, that precedes the Supreme Court's clarification of the substantial-federal-question doctrine in *Grable*, and that therefore reflects a period of time when the "test for statutory 'arising under' jurisdiction" was "muddled" and the "canvas of . . . opinions" on that subject "look[ed] like one that Jackson Pollock got to first." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1571 (2016) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)) (cleaned up).

That is hardly the stuff from which a new exception to the well-pleaded complaint rule is made.

### b.    Defendants cannot satisfy the requirements of *Grable*.

The Court should also reject out of hand Defendants' attempts to "squeeze[]" the City's CPL claims "into the slim category [of cases] *Grable* exemplifies." *Empire II*, 547 U.S. at 701. That "extremely rare exception" to the well-pleaded complaint rule applies only if a state-law action "necessarily raise[s]" a "substantial" federal issue that is "actually disputed" and "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Fracasse*, 747 F.3d at 144 (cleaned up). It plainly does not apply here. *See, e.g.*, *Oakland*, 969 F.3d at 906 (rejecting federal common law as a basis for *Grable* jurisdiction in public nuisance suit for harms caused by climate deception) *Connecticut*, 2021 WL 2389739, at *7–10 (reaching same conclusion regarding consumer-protection claims that target climate deception); *Minnesota*, 2021 WL 1215656, at *6–8 (same); *Massachusetts*, 462 F. Supp. 3d at 44–45 (same).

**Necessarily Raised:** To begin, this municipal-law action does not "necessarily" raise a question of federal law because no federal issue is an "essential element" of the City's well-pleaded claims. *Empire II*, 547 U.S. at 690, 700; *see also Tokhtaman v. Human Care, LLC*, No. 18-CV-5907 (VEC), 2018 WL 5447543, at *2 (S.D.N.Y. Oct. 29, 2018) (same). To make out a *prima facie* case of a CPL violation, the City must prove two elements: (1) that Defendants have engaged in "a deceptive or unconscionable trade practice," and (2) that those "practices involved consumer goods or services." *Polonetsky v. Better Homes Depot*, 97 N.Y.2d 46, 52 (App. Div. 2001). Defendants

do not contend that either element depends on or otherwise involves an issue of federal law. And indeed, both elements derive entirely from municipal law. *See id.*; *see also* NYC Code § 20-701 (defining "deceptive or unconscionable trade practices" and "consumer goods [and] services"). The City can therefore prove its case-in-chief without any reference to federal law.

Ignoring the elements of the City's cause of action, Defendants insist that the Complaint necessarily raises a federal question because the claims are "govern[ed]" by federal common law. NOR ¶ 64. As noted above, however, the Second Circuit has already rejected that precise argument, holding that federal common law "does not necessarily create federal jurisdiction under 28 U.S.C. § 1331." *Empire I*, 396 F.3d at 142. Instead, it does so only when "the federal common law issue appears on the face of the plaintiff's well-pleaded complaint." *Id.* at 143 n.4. Here, no such issue appears on the face of the Complaint. Accordingly, Defendants' federal-common-law arguments present nothing more than a possible "affirmative defense," which—as this Court correctly recognized in other cases—cannot give rise to federal-question jurisdiction. *Tokhtaman*, 2018 WL 5447543, at *2 ("Regardless of whether a court will "necessarily" need to determine an issue, if the issue must be affirmatively raised by the defendant, then it is an affirmative defense, not an essential element of the plaintiff's claim.").[7]

**"Substantial" federal issue:** But even if the City's claims were "affirmatively premised" on federal common law, they would not raise a "substantial" federal issue within the meaning of *Grable*. *See N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315–16 (2d Cir.

---

[7] Defendants cannot override the Second Circuit's controlling decision in *Empire I* with out-of-circuit authority from the Fourth and Eleventh Circuits. *See* NOR ¶ 65 (citing *Newton v. Cap. Assurance Co., Inc.*, 245 F.3d 1306, 1309 (11th Cir. 2001), and *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 607 (4th Cir. 2002)). At any rate, both cited cases are entirely consistent with *Empire I*'s holding a federal common law creates arising-under jurisdiction only when it appears on the face of the well-pleaded complaint. As part of their cases-in-chief, the plaintiffs in *Newton* and *Battle* had to prove that the defendants violated certain federal flood insurance policies that were interpreted according to federal common law. *See Battle*, 288 F.3d at 607–08; *Newton*, 245 F.3d at 1308–09. In those cases, then, federal common law was a necessary element of the plaintiff's claim. Here, it is not.

2016) (cleaned up). To meet this standard, a defendant must do more than show that the asserted federal issue is "significant to the particular parties in the immediate suit." *Fracasse*, 747 F.3d at 144. Rather it must demonstrate "the importance of the issue to the federal system as a whole." *Id.* "[I]t is to be expected," moreover, that "most federal law questions raised in connection with state law claims will not be deemed substantial," because "the category of cases admitting federal jurisdiction over state law claims is special and small." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1029 (2d Cir. 2014) (cleaned up).

Defendants cannot overcome that strong presumption because none of the recognized indicia of substantiality weigh in their favor. This case does not "center[] on the action of a federal agency." *Empire II*, 547 U.S. at 700. It centers on the commercial statements of private companies. Defendants do not argue that any of the asserted issues of federal common law are "dispositive of the case." *Id.* And they do not contend that resolving the purported federal issues "would be controlling in numerous other cases." *Empire II*, 547 U.S. at 700. To the contrary, determining whether federal common law applies to a particular legal issue is a context-specific inquiry that "depend[s] upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979); *see also Woodward*, 164 F.3d at 127 ("[A]n actual, significant conflict between a federal interest and state law must be specifically shown, and not generally alleged." (cleaned up)). By their very nature, then, federal-common-law issues represent the sorts of "fact-bound," "situation-specific" questions of federal law that are "not sufficient to establish federal arising under jurisdiction." *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 419 (S.D.N.Y. 2020); *see also In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 399 (S.D.N.Y. 2014) (same); *CWCapital Cobalt VR Ltd. v. CWCapital Invs. LLC*, No. 17 Civ.

9463 (GBD), 2018 WL 2731270, at *5 (S.D.N.Y. May 23, 2018) (same); *see also Oakland*, 969

F.3d at 906–07 (federal-common-law issues were not "substantial" within the meaning of *Grable*).

Unable to defend their position based on any recognized factor of substantiality, Defendants

resort to mischaracterizations of the Complaint, baldly asserting that the City's "action sits at the

intersection of federal energy and environmental regulations." NOR ¶ 70. As discussed above,

though, that assertion that cannot be squared with the actual claims in the Complaint, which merely

seek to hold Defendants liable for making false and misleading statements about their products to

the City's consumers. Nor is there any merit to Defendants' vague assertion that this lawsuit

"implicates the proper constitutional relationship among the states and also between the states and

the federal government." *Id.* Because the City's claims target deceptive "advertising" directed

specifically at consumers in the City, this lawsuit falls squarely with "a field of traditional state

regulation." *Lorillard*, 533 U.S. at 541.

Defendants' cited cases only confirm that this lawsuit bears no resemblance to one that

actually raises a substantial federal issue. In *NASDAQ*, a national securities exchange (NASDAQ)

allegedly violated a "critical, federally mandated duty" by failing to perform "one of the most

fundamental functions of a national securities exchange" during "one of the largest public stock

offerings in history." 770 F.3d at 1027. In *In re Nat'l Sec. Agency Telecommc'ns Recs. Litig.*,

plaintiffs sued a telecommunications company for disclosing phone records to the National Security

Agency, and the federal government later informed the court that it would seek to dismiss the action

based on the "state secrets privilege"—a privilege that, in the court's view, "head[ed] the list" of

"privileges . . . ranked by importance."483 F. Supp. 2d 934, 942, 943 (N.D. Cal. 2007) (cleaned

up). Finally, *Grynberg* involved a dispute over mineral rights located in the Republic of Kazakhstan,

the outcome of which so "vitally affected" the interests of Kazakhstan that the foreign government

itself wrote the court to argue that "any determination of [those] mineral rights" must be made by Kazakhstan courts. *Grynberg Prod. Corp. v. Brit. Gas, p.l.c.*, 817 F. Supp. 1338, 1356, 1357 (E.D. Tex. 1993). Plainly, those cases are a far cry from the City's claims here, which are geographically circumscribed to false advertising directed at the City's consumers, involve no foreign governments, and implicate no foreign security concerns.

**Federal-State Balance**: Finally, finding *Grable* jurisdiction here would impermissibly disrupt the congressionally approved balance of federal and state judicial responsibilities. *See Grable*, 545 U.S. at 315. Under Defendants' theory of removal, *any* consumer protection claim for false or misleading advertising would be removable if the *subject matter* of the deceptive statements related in some tangential way to "energy," "environmental law," or "foreign policy." NOR ¶ 71. Adopting that theory, though, would certainly have "more than a 'microscopic effect on the federal-state division of labor.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 69 F. Supp. 3d 404, 415 (S.D.N.Y. 2014) (quoting *Grable*, 545 U.S. at 315). Indeed, in today's global economy, it is difficult to imagine a consumer product that does *not* "touch[] on foreign relations" in some indirect or tangential way. NOR ¶ 67.

Extending federal jurisdiction over this lawsuit would also insert federal courts into "an area traditionally regulated by the States." *In re Standard & Poor's*, 23 F. Supp. 3d at 399 (concluding that removal of state consumer protection claim would disturb the federal-state balance). What is more, that usurpation of state-law domain would be entirely unnecessary because state courts are just as competent as federal ones at adjudicating federal-common-law defenses. *See Empire I*, 396 F.3d at 142–43 (leaving it "up to the state court to apply federal common law" and noting, in the accompanying parenthetical, that "state courts are competent to enforce federal rights"). And New York state courts certainly have more experience than federal courts at interpreting and applying

the City's CPL. *See Est. of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1016–17 (6th Cir. 2018) (cautioning against "disrupt[ing] the federal-state balance in an area where states have a much stronger interest and experience").

For these reasons, this Court should reject Defendants' efforts to manufacture *Grable* jurisdiction on the basis of federal common law and amorphous federal policies.

### B.   First Amendment defenses do not provide a basis for removal.

The Court should also reject Defendants' farfetched theory that the First Amendment "injects affirmative federal-law elements" into the City's CPL claims and thereby satisfies the requirements of *Grable*. NOR ¶ 205. Just this past month, the District of Connecticut rejected that exact theory in a climate-deception case, concluding that the defendant's First Amendment arguments presented nothing more than "a federal defense" to the plaintiff's state-law consumer-protection claims. *Connecticut*, 2021 WL 2389739, at *10. And for similar reasons, other courts in this Circuit have repeatedly rebuffed attempts to remove state-law claims based on the First Amendment. *See, e.g.*, *Truong v. Am. Bible Soc'y*, 171 F. App'x 898 (2d Cir. 2006) ("First Amendment defenses . . . cannot establish federal question jurisdiction."); *Solucorp Indus., Ltd. v. Goldstein*, No. 11 CV 5920(VB), 2011 WL 7101063, at *2 (S.D.N.Y. Nov. 17, 2011) ("[A] possible First Amendment defense does not create federal subject matter jurisdiction."); *Carey v. Ripp*, No. 2:17-cv-04899(ADS)(SIL), 2018 WL 1135553, at *2 (E.D.N.Y. Feb. 28, 2018) ("The mere fact that the Defendant intends to assert a First Amendment defense does not bestow jurisdiction on this Court."); *Children's Vill. v. Greenburgh Eleven Teachers' Union Fed'n of Teachers, Local 1532*, 867 F. Supp. 245, 247 (S.D.N.Y. 1994) (same). This Court should do the same here.

The City's CPL claims do not "necessarily rais[e]" a First Amendment question because they are not "affirmatively premised" on that constitutional provision. *Jacobson*, 824 F.3d at 315

("A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law."). It is Defendants—not the City—who seek to invoke the First Amendment's "protection[s]." *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 (1988). And so, the First Amendment enters this case only because Defendants have indicated an intent to "affirmatively raise[]" it as a federal defense. *See Tokhtaman*, 2018 WL 5447543, at \*2 ("Regardless of whether a court will 'necessarily' need to determine an issue, if the issue must be affirmatively raised by the defendant, then it is an affirmative defense, not an essential element of the plaintiff's claim.").

Tellingly, Defendants cite no case where a court exercised federal subject-matter jurisdiction over a state-law claim based on a First Amendment defense, and the City is aware of none. Instead, Defendants point to cases where federal-court jurisdiction was not at issue because diversity jurisdiction existed, *see Hustler*, 485 U.S. at 48; because bankruptcy jurisdiction existed, *see In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 761–62 (S.D. Tex. 2005); or because the case was litigated to judgment in state court and then reviewed by the Supreme Court after state court appeals, *see N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 256 (1964) (Alabama); *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 6–7 (1990) (Ohio); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 770 (1986) (Pennsylvania); *see also Nat'l Rev., Inc. v. Mann*, 140 S. Ct. 344, 345 (2019) (Alito, J., dissenting from denial of certiorari) (District of Columbia). None of Defendants' authorities support their radical theory that a defendant's First Amendment rights can render removable any state-law claim that allegedly concerns "speech . . . [on] a subject of national and international importance." NOR ¶ 207.

At any rate, even if the City's claims somehow necessarily raised Defendants' First Amendment rights, that federal issue would still flunk the last two prongs of *Grable*. Defendants'

First Amendment defenses are not substantial for the same reasons already discussed. *See supra* Part IV(A)(2)(b). Indeed, they are the epitome of a "fact-bound" and "situation-specific" federal question, as they must be applied on an individual basis to each false and misleading statement alleged in the Complaint. *Qatar*, 432 F. Supp. 3d at 419 ("[I]ssues that have 'fact-bound and situation-specific effects are not sufficient to establish federal arising under jurisdiction.'" (quoting *Empire II*, 547 U.S. at 701)); *see also Oakland*, 969 F.3d at 907 ("[A] state-law claim that is 'fact-bound and situation-specific' is not the type of claim for which federal-question jurisdiction lies."). Moreover, finding *Grable* jurisdiction on the basis of a First Amendment defense would mark a radical departure from the current federal-state balance. State and local governments routinely litigate state-law claims to protect consumers from deceptive commercial speech that touches upon matters of national importance.[8] On Defendants' theory, however, those cases—and many others— would be removable to federal court whenever a defendant alleged violations of its First Amendment rights. That cannot be what Congress intended. *See Grable*, 545 U.S. at 310 ("the exercise of federal-question jurisdiction . . . [cannot] distort any division of labor between the state and federal courts, *provided or assumed by Congress*." (emphasis added)).

Accordingly, the Court should reject Defendants' attempts to manufacture *Grable* jurisdiction out of potential First Amendment defenses.

---

[8] *See, e.g.*, *Delaware ex rel. Denn v. Purdue Pharma L.P.*, No. 18-383-RGA, 2018 WL 1942363, at *1, 3 (D. Del. Apr. 25, 2018) (remanding State's case "against manufacturers, distributors, and pharmacy retailers of prescription opioids, alleging state common law claims for their roles in Delaware's opioid crisis" to state court where State alleged in part that defendants "misrepresented material facts or suppressed, concealed, or omitted material facts" concerning their products and compliance with federal drug laws) (cleaned up); *State v. Purdue Pharma LP*, No. CJ-2017-816, 2019 WL 4019929, at *12, 20 (Okla. Dist. Aug. 26, 2019) (awarding $572 million judgment in nuisance trial where the "challenged conduct" was "misleading marketing and promotion of opioids" which contributed to a statewide opioid crisis); *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 304, 330 (Cal. App. Ct. 2006) (reversing dismissal of public nuisance complaint alleging in relevant part that defendants misled consumers and the public about dangers of indoor lead paint).

## V.     THERE IS NO FEDERAL OFFICER REMOVAL JURISDICTION.

Defendants' attempt to remove this case based on the federal officer removal statute, 28 U.S.C. § 1442, is misguided. This case is about violations of the City's CPL, not fossil fuel production. There is no plausible connection between the City's consumer protection claims and the activities described in the Notice of Removal. Rather than acknowledging the content of the City's Complaint, Defendants simply repackage the same arguments that have all been rejected by twelve courts, including four courts of appeal.[9] *See supra* 1 nn. 1 & 2.

The federal officer removal statute permits removal only if the defendant, "in carrying out the 'act[s]' that are *the subject of the petitioners' complaint*, was 'acting under' any 'agency' or 'officer' of 'the United States.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (emphasis added). Private parties that seek removal on the basis of § 1442 must show that (1) "they are person[s] within the meaning of [the] statute who act[ed] under [a federal] officer," (2) "they performed the actions for which they are being sued under color of [federal] office," and (3) "they [] raise a colorable federal defense." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (cleaned up).

Defendants' NOR and their voluminous supporting documents take a kitchen-sink approach to federal officer removal. *See* NOR ¶¶ 67–182. Ignoring the Complaint's allegations detailing Defendants' misleading advertisements and deceptive marketing, Defendants assert that this case implicates virtually every interaction they have had with the federal government since the dawn of the twentieth century, covering everything from fossil fuel sales during World War II, to mineral

---

[9] The Supreme Court in *Baltimore III* addressed only the scope of appellate review and did not disturb the Fourth Circuit's determination that there was no federal officer jurisdiction. The defendants in that case—and in *Boulder II*, *Rhode Island II*, and *San Mateo II*—did not seek review of the court of appeals' rejections of federal officer jurisdiction, nor did they challenge the standard the courts applied in reaching those conclusions; and thus the opinions' holdings and reasoning remain persuasive. *See, e.g.*, *Robinson v. Arioyshi*, 854 F.2d 1189, 1990 (9th Cir. 1988) (rejecting the proposition that a Supreme Court order remanding for consideration in light of another case "reopens the whole case for reconsideration of all issues").

leases on the OCS, joint operation of an oil reserve shared with the Navy, and fuel sales to the military. But it bears repeating—and any fair reading of the Complaint will confirm—that this case is about false and misleading statements to consumers in New York City. It does not seek "to limit and ultimately end Defendants' production of fossil fuels," NOR ¶ 3, nor to remedy "the effects of climate change," *id.* ¶ 11. Defendants' repeated incantation of a false narrative cannot change the fact that this action under the CPL aims to protect the City's consumers from Defendants' deceptive advertising and marketing in the City. Their invocation of federal officer removal does not support jurisdiction.

### A.   Defendants have not shown that any federal officer directed the actions at issue in this case.

Defendants posit that their leasing of federal lands for exploration, drilling, and production of fossil fuels, along with certain contracts to sell certain fuels to the federal government, renders them federal officers entitled to this Court's jurisdiction. But, even if that were the case, Defendants cannot show that the "acts for which they are being sued"—which involve wholly different marketing-related conduct during wholly different time periods—"occurred *because of* what they were asked to do by the government." *Isaacson*, 517 F.3d at 137 (emphasis in original).[10]

The district courts in both *Connecticut* and *Massachusetts* handily rejected federal officer jurisdiction in similar cases, as should this Court. *See Connecticut*, 2021 WL 2389739, at *11–12; *Massachusetts*, 462 F. Supp. 3d at 47. In *Connecticut*, the court held that despite its obligation to credit the defendant's theory of the case, 2021 WL 2389739, at *2 (citing *Isaacson*, 517 F.3d at

---

[10] This element has been "known as the causation requirement." *Isaacson*, 517 F.3d at 137. Following Congress's addition of the words "or relating to" in the federal officer removal statute in 2011, some circuits have relaxed the causation requirement such that "a connection or association between the act in question and the federal office" now suffices. *K&D LLC v. Trump Old Post Office LLC*, 951 F.3d 503, 507 n.1 (D.C. Cir. 2020); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc). Courts in this circuit, however, have recently affirmed that "the nature of this connection must be causal." *Connecticut*, 2021 WL 2389739, at *11. Resolving this open question is unnecessary here, however, as federal officer removal is improper under any interpretation of this nexus requirement.

137), ExxonMobil had failed to show that federal officer removal applied to Connecticut's consumer protection claims where "ExxonMobil does not assert, or even suggest, that the government directed ExxonMobil to make the[] allegedly deceptive statements" that formed the basis of the State's consumer protection claims. *Id.* In *Massachusetts*, recognizing that ExxonMobil's arguments were based on an "overreading" of the complaint that "seize[d] on a few lines here and there" and took them "out of context," the court explained that "[a] fair reading of the complaint tells a far different story." 462 F. Supp. 3d at 47. The court rebuffed ExxonMobil's effort to remove on this basis, reasoning that the actions at issue in the complaint—ExxonMobil's false and deceptive marketing and sales tactics—"were not plausibly 'relat[ed] to' the drilling and production activities supposedly done under the direction of the federal government." *Id.*

*Massachusetts* also relied on the Fourth Circuit's similar rejection of federal officer jurisdiction in Baltimore's case against fossil fuel industry defendants, which alleged claims under Maryland common law as well as that state's Consumer Protection Act. The Fourth Circuit likewise saw through the defendants' mischaracterization of the complaint, explaining that any stray references to fossil fuel production are "not the source of tort liability," and that "[w]hen read as a whole, the Complaint clearly seeks to challenge the promotion and sale of fossil fuel products without warning," as well as the "concealment and misrepresentation of the products' known dangers." *Baltimore II*, 952 F.3d at 467. And thus "the Fourth Circuit found it easy to separate the properly pled misrepresentation allegations from the surrounding context of fossil fuel production, holding that the alleged 'disinformation campaign' was the core of the complaint and was unrelated to any action under federal officials." *Massachusetts*, 2020 WL 2769681, at *12 (quoting *Baltimore II*, 952 F.3d at 467); *see also Minnesota*, 2021 WL 1215656, at *9 (because "[d]efendants do not claim that any federal officer directed their respective marketing or sales activities . . . . there does

not appear to be any direction from or connection to the federal government related to the specific claims alleged here"); *Honolulu*, 2021 WL 531237, at *6–7 (no causal connection between the "alleged failure to warn and/or disseminate accurate information about the hazards of fossil fuels" and any acts defendants may have taken at the direction of a federal officer).

The result is no different here. Like these similar cases, the conduct at issue is Defendants' deceptive marketing activities, and Defendants' attempt to convince the Court otherwise in the NOR is an elaborate misdirection. The "mirage [of federal officer jurisdiction] only lasts until one remembers what [the City] is alleging in its lawsuit": that Defendants' deceptive marketing and advertising violated the CPL. *Rhode Island II*, 979 F.3d at 59–60. The City's Complaint does not challenge Defendants' drilling activities or their development of oil and gas on federal lands, nor does it seek relief to stop or reduce Defendants' production or sale of fossil fuel products, including to the federal government. *See* NOR ¶¶ 75–95. Defendants do not claim—nor could they—that federal officers dictated the content of Defendants' advertisements to the City's consumers or the concealment of their products' known hazards. Courts routinely reject federal jurisdiction in state-law cases involving deceptive marketing, particularly where, as here, there is no assertion that the government controlled that marketing in any way. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 131 (2d Cir. 2007) (federal officer removal improper where federal regulations "say nothing" about marketing and other tortious conduct).

Defendants' cited cases only underscore the differences between this lawsuit and ones that satisfy the nexus element. *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia* involved efforts to bar attorneys from the Federal Community Defender Organization from representing clients in state post-conviction proceedings because of their alleged misuse of federal grant funds. 790 F.3d 457, 461 (3d Cir. 2015). The Third Circuit

28

held "the acts complained of undoubtedly 'relate to' acts taken under color federal office" because the case was predicated on whether "the Federal Community Defender is violating the federal authority granted to it." *Id.* at 472. That case thus involved a direct connection between the tortious conduct and the acts taken under a federal officer. The same is true for *Baker v. Atlantic Richfield Co.*, where the plaintiffs alleged that the defendants' manufacturing operations "tortiously contaminated" their properties, but the defendants claimed that the federal government controlled and directed the same specific operations that allegedly directly contaminated the subject properties. 962 F.3d 937, 940–41 (7th Cir. 2020). The government-directed conduct in these cases overlapped with the culpable behavior described in the complaint. Here, Defendants do not contend the federal government had any involvement in the alleged deceptive marketing that constitutes the City's causes of action, and thus, as in *Connecticut*, there is no federal officer jurisdiction.

Finally, *County Board of Arlington County v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2021), is likewise inapposite. There, the plaintiff sued opioid manufacturers and distributors for contributing to the opioid epidemic, and the defendants removed on the grounds that one of them operated a mail order pharmacy program for the Department of Defense ("DOD"). *Id.* at 247–48. The Fourth Circuit found that the nexus prong was satisfied because the plaintiff's claims "necessarily include[d] activity that is directly connected to the DOD contract." *Id.* at 257. Here, in contrast, there is no connection between Defendants' purportedly government-directed fossil fuel exploration, production, and sales to the military and their advertisements and marketing targeting the City's consumers.

As in *Connecticut*, *Massachusetts*, *Baltimore II*, *Rhode Island II*, *Honolulu*, and *Minnesota*, this Court can and should end its inquiry here and reject federal officer jurisdiction because there

is no connection between the conduct alleged in the Complaint and any purported activity under a federal officer.

### B.   Defendants have not satisfied the "acting under" element.

Even if this Court were to look beyond the "relating to" element of § 1442(a)(1), Defendants have also failed to meet their separate burden to establish the "acting under" requirement, i.e., that any of the actions asserted "involve[d] an effort to *assist*, or to help *carry out*, the duties or tasks of [a] federal superior" or that its relationship with the federal superior "involve[d] 'subjection, guidance, or control.'" *Watson*, 551 U.S. at 151–52. Defendants rely on their commercial relationship with federal entities arising out of leasing mineral rights or selling an off-the-shelf commodity or jet fuel to the government. But even in cases brought by governmental entities seeking to obtain damages under state tort law to compensate in part for the harmful effects of greenhouse gas emissions (unlike the City's CPL claims here), courts have consistently rejected the defendants' assertions of "acting under" federal officers. *See Baltimore II*, 952 F.3d at 463–66 (fossil fuel companies were not "acting under" federal officials, within the meaning of § 1442(a)(1), in developing oil and gas pursuant to federal leases and national petroleum reserves); *San Mateo II*, 960 F.3d at 601–03 (same); *Boulder II*, 965 F.3d at 819–27 (same). In addition to being completely untethered to the advertising and marketing conduct alleged in the Complaint, none of Defendants' purported relationships with the federal government demonstrate the requisite level of "subjection, guidance, or control" by a federal officer to support jurisdiction. *Watson*, 551 U.S. at 143.

### C.   Defendants have not satisfied the "colorable federal defense" element.

A defendant fails to raise a colorable federal defense if the proffered defense is "'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006). Such is the case here, where

Defendants' litany of federal defenses is premised on their strawman of the Complaint and none has colorable application to the Complaint's allegations. *See Honolulu*, 2021 WL 531237, at \*7 (no colorable federal defense); *Minnesota*, 2021 WL 1215656, at \*9 (same).

The government contractor defense does not apply here because, even if Defendants produced oil and gas at the direction of the federal government, they do not—and could not—allege that the government directed the content of their advertising to the City's consumers. Defendants' *res judicata* argument is plainly frivolous because the *City of New York* case involved different causes of action. The claims at issue here, involving recent misleading advertising, could not have been raised in that earlier case. Defendants cursorily list constitutional defenses under the commerce clause, the due process clause, and the foreign affair doctrines. These also fail because they misconstrue the City's Complaint as attempting to limit fossil fuel production and greenhouse gas emissions. In fact, the Complaint addresses only Defendants' deceptive advertising and marketing conduct related to the sale of their products to the City's consumers and seeks relief under the CPL for those violations of municipal consumer protection law. Finally, the *Noerr-Pennington* doctrine is inapplicable because the City does not challenge Defendants' lobbying activity, and in any event, the First Amendment does not protect misleading commercial speech. *Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563, 566 (1980). Defendants have thus failed to demonstrate the colorable federal defense element for federal officer jurisdiction.

## VI.    THIS CASE IS NOT REMOVABLE UNDER THE OUTER CONTINENTAL SHELF LANDS ACT.

Defendants offer no reasonable basis for asserting OCSLA jurisdiction. Instead, they rehash the same tired arguments that have been uniformly rejected by courts around the country in climate-deception cases.[11]

OCSLA grants federal subject-matter jurisdiction over a narrow set of "cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals." 43 U.S.C. § 1349(b)(1). The Second Circuit has not ruled on the outer limits of OCSLA jurisdiction. *See Connecticut*, 2021 WL 2389739, at *12. Regardless, Defendants cannot even satisfy the maximally "broad" jurisdictional standard set forth by the Fifth Circuit, which requires a defendant to establish that "(1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation." *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014); *see also, e.g.*, *Baltimore I*, 388 F. Supp. 3d at 566 (finding no jurisdiction over climate-deception case "[e]ven under a 'broad' reading of the OCSLA jurisdictional grant"); *Connecticut*, 2021 WL 2389739, at *12 (rejecting analogous attempts to remove consumer-protection claims targeting climate deception); *Minnesota*, 2021 WL 1215656, at *10 (same).

Defendants plainly flunk the first prong of this test. To qualify as an "operation" within the meaning of OCSLA, the activity that caused the alleged injury must not only involve "some physical act on the OCS." *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir.

---

[11] *See Connecticut*, 2021 WL 2389739, at *12; *Minnesota*, 2021 WL 1215656, at *10; *Honolulu*, 2021 WL 531237, at *3; *Boulder* I, 405 F. Supp. 3d at 978–79; *Baltimore I*, 388 F. Supp. 3d at 566; *Rhode Island I*, 393 F. Supp. 3d at 151–52; *San Mateo I*, 294 F. Supp. 3d at 938–39.

2014). It must also relate to the "exploration, development, or production" of OCS minerals, 43 U.S.C. § 1349(b)(1), such as "locating mineral resources" or "the construction, operation, servicing and maintenance of facilities to produce those resources," *EP Operating*, 26 F.3d at 568. The City's Complaint alleges no such activity, however. The injury that the City seeks to remedy in this lawsuit is the deception of its consumers, and the activities that caused that injury are Defendants' lies about the climate impacts of their products. *See, e.g.*, Compl. ¶ 8 ("In waging these deceptive advertising campaigns, Defendants are intentionally depriving NYC consumers of information that is material to their purchasing decisions."). Defendants do not contend that those false and misleading statements were made on the OCS. Nor do they identify any case holding that deceptive marketing qualifies as an "operation" within the meaning of OCSLA. To the contrary, advertising is qualitatively different from the activities that have given rise to OCSLA jurisdiction in other cases. *See, e.g.*, *EP Operating*, 26 F.3d at 568 (defining "operation" "broadly . . . to encompass the full range of oil and gas activity").

More fatal still to Defendants' assertion of OCSLA jurisdiction, the City's CPL claims for deceptive advertising do not "arise[] out of, or in connection with," any operation on the OCS. 43 U.S.C. § 1349(b)(1). As the Fifth Circuit has explained, that second prong of the OCSLA test requires "a 'but-for' connection" between "the cause of action and the OCS operation." *Deepwater Horizon*, 745 F.3d at 163 (collecting cases). Here, however, the City's claims do not depend on whether a particular Defendant conducted a particular OCS operation. Instead, they turn entirely on whether Defendants misrepresented the climate impacts of their fossil-fuel products and businesses to the City's consumers, irrespective of *where* Defendants sourced their fossil fuels (*i.e.*, from the OCS or elsewhere). The City can therefore prove the alleged CPL violations without any reference to the OCS. Indeed, Defendants acknowledge as much when they observe that the Complaint

33

"challenges Defendants' advertising relating to all of their products, *regardless of where they were extracted or produced*." NOR ¶ 165 (emphasis added).

Unable to show that an OCS operation was the subject or cause of the misrepresentations alleged in the Complaint, Defendants instead try to rest OCSLA jurisdiction on the theory that some unspecified portion of their fossil-fuel products comes from the OCS. *See* NOR ¶ 165. That theory would, however, "dramatically expand the statute's scope," beyond all recognition. *Boulder I*, 405 F. Supp. 3d at 979 (rejecting analogous argument). It would imply that "[a]ny spillage of oil or gasoline involving some fraction of OCS-sourced oil—or any commercial claim over such a commodity—could be removed to federal court." *Id.* Thus, under Defendants' view, a personal injury claim involving a collision with a gasoline tanker truck, a products liability case involving any petroleum-based product, and a breach-of-contract claim involving the sale of gasoline would all be removable under OCSLA. "Congress" cannot have "intended such an absurd result." *Id.*

Nor will granting relief here disrupt "the efficient exploitation of minerals from the OCS." NOR ¶ 167. Again, Defendants are *not* liable under the CPL because they extract, produce, and sell fossil fuels. They are liable because they deceptively advertised their products and businesses in the City. As a result, Defendants do not need to "stop or substantially curtail fossil fuel extraction and production" in order to avoid ongoing liability. NOR ¶ 167. They simply need to stop making false and misleading statements to the City's consumers. Defendants offer no explanation, moreover, for how imposing "civil penalties" on Defendants for their "deceptive advertisements" will "discourage OCS production, jeopardizing . . . and impairing national energy security." *Id.* Those penalties might discourage Defendants from making false and misleading statements to the City's consumers. But nothing in the way these penalties are calculated or assessed has anything to do with activities on the OCS. And so any "impact[]" that a penalty award in this case might have

34

on OCS production is purely "speculative." *Boulder I*, 405 F. Supp. 3d 947, 979 (D. Colo. 2019) ("A case cannot be removed under OCSLA based on speculative impacts; immediate and physical impact is needed."); *see also Minnesota*, 2021 WL 1215656, at *10 ("This type of speculation . . . does not establish a stable ground for supporting removal.").

Accordingly, this Court should reject Defendants' assertion of OCSLA jurisdiction, as every court to consider the issue has done in climate-deception cases.

## VII.   FEDERAL-ENCLAVE JURISDICTION DOES NOT EXIST.

Defendants' frivolous assertion of federal-enclave jurisdiction has been rejected by every court to consider it in climate deception cases. [12] This Court should do the same.

Courts have federal-question jurisdiction over claims that "arise on" federal enclaves—*i.e.*, on military bases, federal facilities, and other lands obtained pursuant to the Enclaves Clause of Article I of the Constitution. *See Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930) (observing that the federal government's jurisdiction over these lands is "the sole jurisdiction"); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006). As illustrated by "the dearth of case law," this jurisdictional grant applies only in "limited circumstances," namely: "when all or most of the pertinent events occurred [on a federal enclave]." *Baltimore I*, 388 F. Supp. 3d 538, 565 (D. Md. 2019) (collecting cases); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125–26 (N.D. Cal. 2012) ("the federal enclave doctrine only applies when the locus in which the claim arose is the federal enclave itself"); *Jograj v. Enter. Servs., LLC*, 270 F. Supp. 3d 10, 16 (D.D.C. 2017) ("[C]ourts have generally read the 'Enclave Clause' to establish federal subject matter jurisdiction over tort claims occurring on federal enclaves."). Thus, where a claim rests on

---

[12] *Connecticut*, 2021 WL 2389739, at *13; *Minnesota*, 2021 WL 1215656, at *10–11; *Honolulu*, 2021 WL 531237, at *8; *Baltimore I*, 388 F. Supp. 3d at 565; *Rhode Island I*, 393 F. Supp. 3d at 152; *Boulder I*, 405 F. Supp. 3d at 974; *San Mateo I*, 294 F. Supp. 3d at 939.

events "occur[ing] both on and off [a] federal enclave," jurisdiction will not lie unless the defendant "demonstrates that federal enclaves are the *locus* in which the claims arose." *Minnesota*, 2021 WL 1215656, at *11; *Balderas*, 454 F. Supp. 3d at 1146 ("partial occurrence on a federal enclave is insufficient to invoke federal jurisdiction" where enclaves "ma[de] up only a small fraction" of contaminated waterbodies at issue).

Defendants have not carried—and cannot carry— "th[eir] burden" here. *Minnesota*, 2021 WL 1215656, at *11. The City's Complaint does not mention any federal enclaves, much less concern any events that occurred on those lands. In arguing otherwise, Defendants once again mischaracterize the Complaint, positing that the City's claims "necessarily sweep[] in [oil and gas operations] that occur on military bases and other federal enclaves" because the "true aim" of this lawsuit is to "halt" Defendants' fossil-fuel production. NOR ¶ 172. But, of course, the Complaint does nothing of the sort. Instead, it holds Defendants accountable for their false and misleading advertising, and it merely seeks to stop Defendants from deceiving the City's consumers about the climate impacts of their products and businesses. "It would [therefore] require the most tortured reading of the Complaint[] to find [the federal-enclave] standard met here." *Honolulu*, 2021 WL 531237 at *8 (rejecting similar arguments in climate-deception case).

Nor can Defendants manufacture federal-enclave jurisdiction by vaguely asserting that some (unspecified) number of false and misleading advertisements were viewed by consumers on federal enclaves located within the City's borders. *See* NOR ¶ 173. Defendants must show that "most or all of the pertinent events occurred [on a federal enclave]," not just that "some" of them did. *Baltimore I*, 388 F. Supp. 3d 538, 564–65 (D. Md. 2019) (rejecting analogous arguments). Indeed, under Defendants' interpretation, federal-enclave jurisdiction would exist in "any case involving injuries that occur throughout a state, no matter how minor the injuries occurring on

36

federal enclaves are in relation to the claims at issue." *Connecticut*, 2021 WL 2389739, at *13. But courts have rightly rebuffed that absurd position, and instead "require[d] a more substantive and explicit relationship between the actual claims alleged and a specific federal enclave." *Minnesota*, 2021 WL 1215656, at *11. Anything less "would amount to a sweeping change to the balance between the jurisdiction of state and federal courts." *Connecticut*, 2021 WL 2389739.

## VIII.   THERE IS NO FRAUDULENT JOINDER.

Defendants' assertion of diversity jurisdiction rests on an outlandish—and unsupported—assertion that the City fraudulently joined the in-state Defendant ExxonMobil Oil Company ("EMOC"). *See* NOR ¶¶ 176–91. Defendants' speculations of fraud here—based solely on the fact that EMOC was not a defendant in the City's previous case—are both unsubstantiated and implausible. *See also, e.g.*, *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 704 ("Exxon's allegations that [State Attorney Generals'] investigations have an improper purpose are implausible.").

> In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.

*Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). Notably, Defendants do not allege that the City cannot state a cause of action against EMOC, a standard this Court and the Second Circuit have applied "rather strictly." *In re Fosamax Prods. Liab. Litig.*, No. 09-cv-4061, 2009 WL 3109832, at *2 (S.D.N.Y. Sept. 28, 2009). Instead, Defendants rely solely on rote speculation of "outright fraud." NOR ¶¶ 179–80. Resolving all factual and legal issues in the City's favor, as the Court must, Defendants have failed to carry their "heavy burden." *Pampillonia*, 138 F.3d at 461.

Defendants cite a single out-of-circuit case involving the "outright fraud" path to fraudulent joinder. *See* NOR ¶ 180 (citing *Rodriguez v. Casa Chapa S.A. de C.V.*, 394 F. Supp. 2d 901, 908 (W.D. Tex. 2005)). The peculiar facts of that case warrant elucidating. In *Rodriguez*, two brothers were traveling in a vehicle that collided with a delivery truck owned by a Mexican corporation. *Id.* at 903. One brother was driving and the other was a passenger; the driver died in the accident. *Id.* The brothers' families sued the Mexican corporation and the driver's estate; the father of the two brothers *appeared both as a plaintiff* in his individual capacity, *and as a defendant* as administrator of the driver's estate; the father was represented by the same attorneys as both a plaintiff and defendant. *Id.*

In denying a motion to remand, the court found actual fraud in the pleading of jurisdictional facts, including "lying to defendants" about the representation of the probate estate defendant. *Id.* at 908 (although the plaintiffs had represented to the Mexican corporation defendant that the driver's father was the administrator of the estate, in reality no attempt was made to have the father appointed administrator until after the case was removed to federal court). Critically, the court found that the plaintiffs "had no real interest in gaining a judgment against the Estate," as they never sought discovery from the estate and never sought default judgment after the estate failed to answer the complaint. *Id.* The court determined that conduct rose to the level of actual fraud and thus held the estate's joinder to defeat diversity was fraudulent. *Id.*

Defendants have not suggested that the City made a misrepresentation in this case that is in any way comparable to those seen in *Rodriguez*—nor could they. The action before this Court asserts statutory consumer protection claims against different parties, for different conduct, and seeking different relief from the City's prior common law tort case. Defendants concede the second path to fraudulent joinder by failing to offer any argument—let alone clear and convincing

38

evidence—that there is no possibility the City can state a claim against EMOC. Moreover, courts in this circuit have rejected assertions of fraudulent joinder even in extreme cases where plaintiffs withdrew an already-filed suit and filed a new one with identical causes of action adding diversity-destroying defendants "against whom plaintiffs admittedly cannot yet frame a complaint." *Moran v. Cont'l Cas. Co.*, No. 1:01-CV-1008, 2001 WL 1717214, at *4 (N.D.N.Y. Nov. 16, 2001). "Even assuming . . . that plaintiffs' purpose in withdrawing the first action and commencing this action was to include non-diverse defendants[,] this conduct would not establish fraudulent joinder absent clear and convincing evidence that there is no possibility that plaintiffs can state claims against them." *Id* at *3. "[A]part from fraud, the plaintiff's motive in joining the non-diverse party is irrelevant, so long as the claim against that party is colorable." *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006). The City's allegations against EMOC clearly meet this threshold, and Defendants do not suggest otherwise.[13] Specifically, the City alleges that EMOC, a New York-based corporation, has engaged in conduct that violates the CPL by, among other things, deceptively marketing and selling gasoline at its branded service stations in the City. *See* Complaint ¶ 11(d)–(l). Accordingly, the Court should reject Defendants' fraudulent-joinder challenge and deny removal on the basis of diversity jurisdiction.

## IX.   THIS CASE IS NOT REMOVABLE UNDER CAFA.

Equally frivolous is Defendants' invocation of CAFA jurisdiction. This lawsuit does not qualify as a "class action" within the meaning of the statute, and in contending otherwise, Defendants advance arguments that have been squarely rejected by the Second Circuit and six other courts of appeals.

---

[13] Defendants' citation to *Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 32 (D.D.C. 2008), is inapposite. NOR ¶ 185. The legal standard for establishing veil piercing by the alter ego theory at summary judgment says nothing about the fraudulent joinder standard at the pleading stage, i.e. whether Defendants have shown by clear and convincing evidence that there is no possibility that plaintiffs can state a claim against EMOC. *Pampillonia*, 138 F.3d at 461.

CAFA applies only to "class action[s]," which the statute defines as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or *similar* State statute or rule of judicial procedure." 28 U.S.C. § 1332(d)(1)(B) (emphasis added). In applying this similarity test, courts examine the particular law under which the case was filed and ask whether that law "imposes any of the familiar hallmarks of Rule 23 class actions; namely, adequacy of representation, numerosity, commonality, typicality, or the requirement of class certification." *Purdue Pharma*, 704 F.3d at 216. Although a "similar" state statute or rule need not contain every "condition[] and administrative aspect[] of Rule 23," *id.* at 217, it must "closely resemble[] Rule 23 . . . in substance or in essentials," *W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174 (4th Cir. 2011). At a bare minimum, the law that authorizes a plaintiff's suit must "provide a procedure by which a member of a class whose claim is typical of all members of the class can bring an action not only on his own behalf but also on behalf of all others in the class." *Purdue Pharma*, 704 F.3d at 217.

Defendants do not attempt to identify any overlap between the requirements for bringing a CPL claim and those for pursuing a Rule 23 class action. Nor could they because, "[p]rocedurally, Rule 23 and the [CPL] are entirely different beasts." *LG Display Co. v. Madigan*, 665 F.3d 768, 772 (7th Cir. 2011) (reaching similar conclusion about antitrust claims brought by the Illinois Attorney General on behalf of harmed residents). The CPL grants the City the power to sue for civil penalties and injunctive relief "[w]henever any person has engaged in [deceptive trade practices]." N.Y.C. Code § 20-703(d). Beyond that, the CPL does not impose any procedural requirements on the City's authority to bring CPL claims, much less any of "core requirements" for a Rule 23 class action. *See Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 833, 835 (6th Cir. 2020) (rejecting CAFA jurisdiction over a "representative action" brought under Michigan's Consumer Protection Act, even though the Act expressly labeled the action as a "class action").

40

More damaging still for Defendants' argument, the statute provides no mechanism for a class member to bring a "typical" claim on behalf of a class. *See Purdue Pharma*, 704 F.3d at 217 (describing this mechanism as the "minimum" requirement of a CAFA class action). Instead, the City is "authorized to file suit independently of any consumer complaints." *McGraw*, 646 F.3d at 176. Indeed, the City need not even "demonstrate standing through a representative injury" to bring a CPL claim, one of the most basic requirements of serving as a class representative. *Purdue Pharma*, 704 F.3d at 217; *see also* N.Y.C. Code § 20-703(e) ("To establish a cause of action under this section it need not be shown that consumers are being or were actually injured").

Rather than applying the Second Circuit's similarity test for CAFA actions, Defendants insist that CAFA applies simply because the City's CPL claims seek to protect the interests of its consumers. *See* NOR ¶¶ 195–96. But that line of argument is squarely foreclosed by the Second Circuit's decision in *Purdue Pharma*. There, Kentucky filed state-law claims against various pharmaceutical companies, alleging that the defendants violated its consumer protection statute (among others) by misleading consumers about the addiction risks of opioids. 704 F.3d at 210. In a bid to squeeze the lawsuit into CAFA's definition of a class action, the defendants insisted that the State was "acting, in effect, as a disguised class representative" because it had sued in its capacity as *parens patriae* and sought restitution for prescription costs incurred by injured consumers. *Id.* at 217. The Second Circuit disagreed. Declining the defendant's invitation to "look past the pleadings" and "deduce the true nature of this proceeding," the court instead focused on the statutes that authorized the State's claims. *Id.* at 217, 220. And because it concluded that none of these statutes "impose[d] any of the familiar hallmarks of Rule 23 class actions," the Second Circuit rejected the defendants' assertion of CAFA jurisdiction. *Id.* at 216.

Defendants, for their part, identify no case that even remotely supports their position that CAFA permits removal whenever a civil action protects or implicates the interests of consumers.[14] That comes as no surprise. Every circuit to consider that argument in analogous contexts has rejected it. *See Nessel*, 954 F.3d at 833; *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 799 (5th Cir. 2012), *rev'd on other grounds*, 571 U.S. 161 (2014); *LG Display*, 665 F.3d at 770–72; *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848–49 (9th Cir. 2011). And in every case where these or other fossil-fuel defendants have invoked CAFA as a basis for removing consumer protection claims targeting their climate deception, they have been rebuffed. *See Massachusetts*, 462 F. Supp. 3d at 51; *Minnesota*, 2021 WL 1215656, at *11.

Nor can Defendants salvage their assertion of CAFA jurisdiction by appealing to the statute's "legislative purposes." NOR ¶ 201. In passing CAFA, Congress was concerned primarily with ensuring federal-court review of class actions that spanned multiple states, raised issues of "national importance," and threatened to "adversely affect[] interstate commerce." Pub. L. No. 109-2, 119 Stat. 4 § 2 (2005). That prototypical CAFA action bears no resemblance to the City's CPL claims, which invoke New York City law to protect New York City consumers from false and misleading advertisements that Defendants directed at New York City residents in New York City. Instead, the City's claims focus on "primarily local matters" that CAFA has "reserve[d] to the States" out of respect for the Nation's "deeply-rooted principles of federalism." *McGraw*, 646 F.3d at 178; see also *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 354 F. Supp. 3d 1122, 1124 (N.D. Cal. 2019) ("[W]hen an action has been brought by a state or one of its officials or

---

[14] In passing, Defendants cite *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740 (7th Cir. 2013), and *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891 (8th Cir. 2017). Both cases are distinguishable, however, because they involved plaintiffs whose authority to bring suit depended on them being representatives in a prior class action. *See Addison Automatics*, 731 F.3d at 742; *Williams*, 845 F.3d at 900.

subdivisions, the need to resolve doubts against the exercise of federal jurisdiction is particularly

acute."). As a result, Defendants offer no reasonable basis for removing this case under CAFA.

## X.   DEFENDANTS' REMOVAL IS OBJECTIVELY UNREASONABLE.

The City requests that this Court award costs and expenses incurred by the City in

responding to Defendants' objectively unreasonable removal notice. *See* 28 U.S.C. § 1447(c).

Under Section 1447(c), a court may "require payment of just costs and any actual expenses,

including attorney fees, incurred as a result of the removal." Congress enacted that fee-shifting

provision to "deter removals sought for the purpose of prolonging litigation and imposing costs on

the opposing party." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). Generally, courts

award fees when "the removing party lacked an objectively reasonable basis for seeking removal."

*Id.* at 141. But even if a court can discern an objectively reasonable basis in the removal notice, it

may still award fees in its discretion, if its reasons for doing so are "faithful to the purposes of

awarding fees under Section 1447(c), which include disincentivizing actions that delay resolution

of the case, impose additional costs on both parties, and waste judicial resources." *CMGRP, Inc. v.

Agency for the Performing Arts, Inc.*, 689 F. App'x 40, 41 (2d Cir. 2017) (cleaned up); *see also

Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011) (same).

Here, Defendants' removal was objectively unreasonable. To begin, every ground for

removal is premised on a gross mischaracterization of the City's claims or the underlying law.

Throughout their removal notice, Defendants repeatedly insist that this lawsuit will regulate

greenhouse gas emissions, when it is apparent from the claims alleged and relief sought that this

action will not—and cannot—do anything of the sort. *See Kuperstein v. Hoffman-Laroche, Inc.*,

457 F. Supp. 2d 467, 474 (S.D.N.Y. 2006) (awarding fees where the defendant "mischaracterize[d]

the substance of the [Plaintiff's] Complaint"); *Owen v. Stokes*, No. 21-cv-01581, 2020 WL 127552,

at *2 (D. Nev. Jan. 10, 2020) (same), *aff'd*, No. 20-15129, 2021 WL 963774 (9th Cir. Mar. 15,

2021). Second Circuit case law squarely forecloses Defendants' attempts to remove on the basis of (1) federal common law, (2) First Amendment defenses, and (3) CAFA. All but one of their removal grounds—fraudulent joinder—has been uniformly rejected by courts around the country. And Defendants do not come close to carrying their "heavy burden" in a fraudulent-joinder challenge of showing by "clear and convincing evidence" that the City committed "outright fraud." *Pampillonia*, 138 F.3d at 461. Indeed, the only case they offer in support of fraudulent joinder is an out-of-circuit decision that is so plainly distinguishable that it begs the question: why did Defendants cite it at all?

Even if the Court could identify an objectively reasonable basis for removal, it should still award fees in light of the "unusual circumstances" presented here. *Calabro*, 650 F.3d at 166. Again, Defendants' mischaracterizations of the City's claims border on frivolity, and at a minimum, "reflects a willingness on [their] part to waste the time of this Court and of opposing counsel." *Kuperstein*, 457 F. Supp. 2d at 474. The removal notice also does not grapple at all with the "parade of recent opinions" rejecting many of the same arguments for removal raised by Defendants. *City of New York*, 993 F.3d at 93. Instead, Defendants opt for "the ostrich-like tactic of pretending that potentially dispositive authority against [their] contention[s] does not exist." *Moses v. Martin*, 360 F. Supp. 2d 533, 546 n.74 (S.D.N.Y. 2004) ("Courts do not approve [of that tactic]."). Indeed, Defendants even overlook on-point, binding precedent from the Second Circuit, such as *Empire I*, 396 F.3d 136 (federal common law) and *Purdue Pharma*, 704 F.3d 208 (CAFA). On top of all that, Defendants' removal notice requires this Court and the City to wade through hundreds of pages of exhibits in support of removal arguments that have uniformly been rejected by as many as twelve different courts and that, in any event, rest entirely on a mischaracterization of the Complaint.

In these circumstances "it would be unfair to require either [the City] or [its] counsel to absorb the cost of litigating the remand motion, which in no way advanced [the] case." *Greenidge v. Mundo Shipping Corp.*, 60 F. Supp. 2d 10, 12 (E.D.N.Y. 1999). And the Court should not "casually overlook[]" Defendants' efforts to "[r]ehash[] th[e] same issue[s] endlessly." *Wilson v. Ethicon Women's Health & Urology*, No. 2:14-CV-13542, 2014 WL 1900852, at *3 (S.D.W. Va. May 13, 2014) (awarding costs and fees due to improper removal). Nor should it let Defendants get away with "fail[ing] to address the governing law or accurately represent the factual allegations of the Complaint." *Kuperstein*, 457 F. Supp. 2d at 474. Numerous courts have called out Defendants for their mischaracterizations of the plaintiffs' claims in climate-deception cases. *See, e.g.*, *Minnesota*, 2021 WL 1215656, at *13 ("[T]he State's action here is far more modest than the caricature Defendants present."); *Honolulu*, 2021 WL 531237, at *1 ("The principal problem with Defendants' arguments is that they misconstrue Plaintiffs' claims."); *Baltimore I*, 388 F. Supp. 3d at 560 ("This argument rests on a mischaracterization of the City's claims."); *Boulder I*, 405 F. Supp. 3d at 969 ("Defendants mischaracterize Plaintiffs' claims."); *Massachusetts*, 462 F. Supp. 3d at 44 (criticizing "ExxonMobil's caricature of the complaint"). Yet Defendants continue to disregard these warnings, as evident by their distortions of the City's Complaint. This conduct must stop. The Court should therefore uphold the core purposes of Section 1447(c) by awarding fees that will disincentivize Defendants from taking future actions that "delay resolution of the case, impose additional costs on both parties, and waste judicial resources." *CMGRP*, 689 F. App'x at 41.

## CONCLUSION

Defendants' removal of this case was objectively unreasonable, as this Court plainly lacks subject-matter jurisdiction over the City's claims. The Court should therefore grant the Motion to Remand and award the City costs and fees pursuant to 28 U.S.C. § 1447(c).

Dated:  July 7, 2021                    Respectfully submitted,

                                        **GEORGIA PESTANA**
                                        **Acting Corporation Counsel of**
                                        **the City of New York**

                                        /s/ Hilary Meltzer
                                        Hilary Meltzer
                                          Chief, Environmental Law Division
                                        Alice R. Baker
                                           Assistant Corporation Counsel
                                        100 Church Street
                                        New York, New York 10007
                                        Tel: (212) 356-2072
                                        Email:  hmeltzer@law.nyc.gov
                                                   albaker@law.nyc.gov

                                        **SHER EDLING LLP**

                                         /s/ Matthew K. Edling
                                        Matthew K. Edling
                                        Victor M. Sher (*pro hac vice*)
                                        Michael H. Burger
                                        Katie H. Jones (*pro hac vice*)
                                        Quentin C. Karpilow (*pro hac vice* forthcoming)
                                        100 Montgomery St., Ste. 1410
                                        San Francisco, CA 94104
                                        Tel:    (628) 231-2500
                                        Fax:    (628) 231-2929
                                        Email:  matt@sheredling.com
                                                 vic@sheredling.com
                                                 michael@sheredling.com
                                                 katie@sheredling.com
                                                 quentin@sheredling.com

                                        *Attorneys for Plaintiff City of New York*

### CERTIFICATE OF SERVICE

I hereby certify that, on the 7th day of July, 2021, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

/s/ Matthew K. Edling
Matthew K. Edling