# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK,

      Plaintiff,

    vs.

EXXON MOBIL CORPORATION,
EXXONMOBIL OIL CORPORATION,
ROYAL DUTCH SHELL PLC, SHELL OIL
COMPANY, BP P.L.C., BP AMERICA INC.,
and AMERICAN PETROLEUM INSTITUTE,

      Defendants.

Case Number: 1:21-CV-04807-VEC-SDA

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND TO STATE COURT

## TABLE OF CONTENTS

I.    **INTRODUCTION** ............................................................................................ **1**

II.   **THERE IS NO "OUTRIGHT FRAUD."** ................................................... **2**

III.  **THIS CASE DOES NOT "ARISE UNDER" FEDERAL LAW.** ................. **5**

     A.   Federal common law does not provide a basis for removal. ......................... 5

         1.   The City's claims do not "implicate" federal common law. ................... 5

         2.   Neither the artful-pleading doctrine nor *Grable* apply .......................... 10

            a.   Defendants cannot satisfy the artful-pleading doctrine. .................... 11

            b.   Defendants cannot satisfy the requirements of *Grable*. .................... 14

     B.   First Amendment defenses do not provide a basis for removal. ................... 15

IV.  **THERE IS NO FEDERAL OFFICER REMOVAL JURISDICTION.** ......... **16**

     A.   There is no connection between Defendants' fossil fuel production activities and the deceptive advertising and sales conduct in this case. ..................... 16

     B.   Defendants have not satisfied the "acting under" or "colorable federal defense" elements either. ........................................................................................ 19

V.   **THIS CASE IS NOT REMOVABLE UNDER THE OUTER CONTINENTAL SHELF LANDS ACT.** ............................................................................... **19**

VI.  **FEDERAL ENCLAVE JURISDICTION DOES NOT EXIST** ..................... **22**

VII. **THIS CASE IS NOT REMOVABLE UNDER CAFA.** ............................... **23**

VIII.**DEFENDANTS' REMOVAL IS OBJECTIVELY UNREASONABLE.** ....... **25**

**CONCLUSION** ............................................................................................... **25**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*30 Clinton Place Owners Inc. v. City of New Rochelle*,
No. 13-CV-3793(VB), 2014 WL 890482 (S.D.N.Y. Feb. 27, 2014) ........................................ 16

*Allstate Ins. Co. v. Ace Sec. Corp.*,
No. 11 CIV. 1914 (LBS), 2011 WL 3628852 (S.D.N.Y. Aug. 17, 2011) ............................... 13

*B.N. ex rel. Novick v. Bnei Levi, Inc.*,
No. 12–CV–5057, 2013 WL 168698 (E.D.N.Y. Jan. 15, 2013) ................................................ 4

*Badilla v. Midwest Air Traffic Control Serv., Inc.*,
__ F.4th __, 2021 WL 3477832 (2d Cir. Aug. 9, 2021) ........................................................... 17

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020) ................................................................................................... 18

*Battle v. Seibels Bruce Ins. Co.*,
288 F.3d 596 (4th Cir. 2002) ................................................................................................... 15

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
405 F. Supp. 3d 947 (D. Colo. 2019) .......................................................................... 1, 21, 22

*Board of Comm'rs v. Tenn. Gas Pipeline Co.*,
850 F.3d 714 (5th Cir. 2017) ................................................................................................... 15

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988) ................................................................................................................. 11

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004) ...................................................................................................... 4

*City & Cnty. of Honolulu v. Sunoco LP*,
No. 20-cv-00163-DKW, 2021 WL 531237 (D. Haw. Feb. 12, 2021) ............................. *passim*

*City of New York v. Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021) ............................................................................................. *passim*

*City of Oakland v. BP PLC*,
969 F.3d 895 (9th Cir. 2020) ............................................................................................ 2, 14

*Cnty. of San Mateo v. Chevron Corp.*,
294 F. Supp. 3d 934 (N.D. Cal. 2018) ............................................................................ 2, 17, 22

*Connecticut v. Exxon Mobil Corp.*,
No. 3:20-CV-1555 (JCH), 2021 WL 2389739 (D. Conn. June 2, 2021) .......................... *passim*

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) ................................................................................................... 21

ii

*Doe v. Princess Cruise Lines*,
   57 F.3d 1204 (11th Cir. 2011) ................................................................................................ 21

*Empire HealthChoice Assur., Inc. v. McVeigh*,
   396 F.3d 136 (2d Cir. 2005) ................................................................................... 11, 12, 15

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
   26 F.3d 563 (5th Cir. 1994) .................................................................................................. 20

*Fayet v. Target Corp.*,
   No. 20-CV-3191-LTS-KHP, 2021 WL 706332 (S.D.N.Y. Feb. 22, 2021) ............................... 2

*Federated Department Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981) .............................................................................................................. 13

*Fracasse v. People's United Bank*,
   747 F.3d 141 (2d Cir. 2014) ................................................................................ 10, 12, 14, 15

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
   463 U.S. 1 (1983) ............................................................................................................... 5, 12

*Gondolfo v. Town of Carmel*,
   No. 20-CV-9060 (CS), 2021 WL 431148 (S.D.N.Y. Feb. 8, 2021) ........................................ 12

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005) ....................................................................................................... *passim*

*In re Briscoe*,
   448 F.3d 201 (3d Cir. 2006) .................................................................................................... 3

*In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Defender Ass'n of
   Philadelphia*,
   790 F.3d 457 (3d Cir. 2015) .................................................................................................. 18

*In re Deepwater Horizon*,
   745 F.3d 157 (5th Cir. 2014) ................................................................................................. 20

*In re High-Tech Emp. Antitrust Litig.*,
   856 F. Supp. 2d 1103 (N.D. Cal. 2012) ................................................................................. 22

*In re MTBE Prods. Liab. Litig.*,
   388 F.3d 112 (2d Cir. 2007) .................................................................................................. 19

*In re Zyprexa Prods. Liab. Litig.*,
   No. 04–MD–01596, 2008 WL 4561628 (E.D.N.Y. Oct. 10, 2008) ........................................... 4

*Isaacson v. Dow Chem. Co.*,
   517 F.3d 129 (2d Cir. 2008) .................................................................................................. 17

*Jefferson Cnty. Ala. v. Acker*,
   527 U.S. 423 (1999) .............................................................................................................. 16

*Latiolais v. Huntington Ingalls, Inc.*,
   951 F.3d 286 (5th Cir. 2020) ........................................................................................... 18, 21

iii

*Lorillard Tobacco Co. v. Reilly*,
   533 U.S. 525 (2001) ............................................................................................ 15

*Maracich v. Spears*,
   570 U.S. 48 (2013) .............................................................................................. 21

*Marcus v. AT&T Corp.*,
   138 F.3d 46 (2d Cir. 1998) ............................................................................ 12, 13

*Massachusetts v. Exxon Mobil Corp.*,
   462 F. Supp. 3d 31 (D. Mass. 2020) ..................................................... 1, 5, 6, 17

*Mayor & City Council of Baltimore v. BP P.L.C.*,
   388 F. Supp. 3d 538 (D. Md. 2019) ................................................................ 1, 22

*Mayor & City Council of Baltimore v. BP P.L.C.*,
   952 F.3d 452 (4th Cir. 2020) ........................................................................... 1, 17

*Mecom v. Fitzsimmons Drilling Co.*,
   284 U.S. 183 (1931) .............................................................................................. 4

*Meer Enters., LLC v. Kocak*,
   No. 18 CIV. 00006 (JFK), 2018 WL 1901478 (S.D.N.Y. Apr. 20, 2018) ................ 12

*Minnesota v. Am. Petroleum Inst.*,
   No. CV 20-1636 (JRT/HB), 2021 WL 1215656 (D. Minn. Mar. 31, 2021) ...................... *passim*

*N.J. Carpenters Vacation Fund v. HarborView Mortg. Loan*,
   581 F. Supp. 2d 581 (S.D.N.Y. 2008) ................................................................... 25

*New Mexico ex rel. Balderas v. Monsanto Co.*,
   454 F. Supp. 3d 1132 (D.N.M. 2020) .................................................................. 22

*Newton v. Cap. Assur. Co.*,
   245 F.3d 1306 (11th Cir. 2001) ............................................................................ 15

*Palkow v. CSX Transp., Inc.*,
   431 F.3d 543 (6th Cir. 2005) ............................................................................... 13

*Pampillonia v. RJR Nabisco, Inc.*,
   138 F.3d 459 (2d Cir. 1998) ............................................................................... 2, 3

*Parker v. Blauvelt Volunteer Fire Co.*,
   93 N.Y.2d 343 (1999) ............................................................................................ 4

*Purdue Pharma L.P. v. Kentucky*,
   704 F.3d 208 (2d Cir. 2013) ................................................................................. 24

*Rhode Island v. Chevron Corp.*,
   393 F. Supp. 3d 142 (D.R.I. 2019) .................................................................... 2, 22

*Rhode Island v. Chevron Corp.*,
   979 F.3d 50 (1st Cir. 2020) .............................................................................. 2, 17

*Rivet v. Regions Bank of La.*,
    522 U.S. 470 (1998) ................................................................................................ 12, 13

*Rodriguez v. Casa Chapa S.A. de C.V.*,
    394 F. Supp. 2d 901 (W.D. Tex. 2005) ............................................................................ 3

*Romano v. Kazacos*,
    609 F.3d 512 (2d Cir. 2010) ................................................................................... 12, 13

*Shanahan v. Kolmar Labs., Inc.*,
    No. 18-CV-8317 (JMF), 2019 WL 935164 (S.D.N.Y. Feb. 26, 2019) ........................... 3

*Song v. Charter Commc'ns, Inc.*,
    No. 17CV325 JM (JLB), 2017 WL 1149286 (S.D. Cal. Mar. 28, 2017) ....................... 25

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014) ......................................................................................... 4

*Tokhtaman v. Human Care, LLC*,
    No. 18-CV-5907 (VEC), 2018 WL 5447543 (S.D.N.Y. Oct. 29, 2018) ........................ 15

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
    871 F.3d 791 (9th Cir. 2017) ....................................................................................... 21

*Watson v. Phillip Morris Cos.*,
    551 U.S. 143 (2007) .............................................................................................. 16, 19

*Zschernig v. Miller*,
    389 U.S. 429 (1968) ................................................................................................... 10

**Statutes**

28 U.S.C. § 1332(d)(1)(B) ................................................................................................. 23

28 U.S.C. § 1442(a) .................................................................................................... 16, 17

43 U.S.C. § 1349(b)(1) ............................................................................................... 19, 20

**NYC Administrative Code**

NYC Code § 20-700 ............................................................................................................ 8

NYC Code § 20-701(a) ................................................................................................... 8, 9

NYC Code § 20-703(e) ...................................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 23 ............................................................................. 23, 24

**Other Authorities**

14C Charles Alan Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE
    § 3722.1 (4th ed. 2021) .............................................................................................. 13

BLACK'S LAW DICTIONARY (11th ed. 2019) ........................................................................ 3

## I.     INTRODUCTION

Defendants cannot justify their removal based on the *actual* allegations in the Complaint, so they try to rewrite the City's claims. As in other climate deception cases, Defendants "seize[] on a few lines here and there in the complaint . . . [and take those lines] out of context," and then twist them into an imaginary cause of action that will purportedly halt global fossil fuel production. *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 46 (D. Mass. 2020) ("*Massachusetts*").[1] In reality, the City merely alleges that Defendants violated its Consumer Protection Law ("CPL") by inundating New York City consumers with false and misleading statements about the climate impacts of Defendants' products and businesses. *See* Dkt. 1-5 (Ex. 5), Summons and Complaint ("Compl.") ¶¶ 1–9, 76–100. As evident from the face of the Complaint, the conduct that triggers Defendants' liability is their deceptive advertising, not their sale or production of fossil fuels. This lawsuit therefore cannot "curb greenhouse gas emissions," "suppress fossil fuel sales," "promote the City's preferred energy mix," "supplant federal regulation of the oil and gas industry," or "hold [Defendants] . . . responsible for global climate change," to name just a few of the mischaracterizations that litter the pages of Defendants' opposition brief. *See* Dkt. 47, Defs.' Opp. to Pl.'s Mot. to Remand ("Opp.") 8, 18, 22, 24, 39, 41. All the City can or seeks to do here is penalize Defendants for violating the CPL.

---

[1] *See also, e.g.*, *City & Cnty. of Honolulu v. Sunoco LP*, No. 20-cv-00163-DKW, 2021 WL 531237, at *1 (D. Haw. Feb. 12, 2021) ("*Honolulu*"), *appeal filed*, No. 21-15318 (9th Cir. July 15, 2021) ("The principal problem with Defendants' arguments is that they misconstrue Plaintiffs' claims."); *Connecticut v. Exxon Mobil Corp.*, No. 3:20-CV-1555 (JCH), 2021 WL 2389739, at *13 (D. Conn. June 2, 2021), *appeal filed*, No 21-1446 (2d Cir. June 8, 2021) (rejecting ExxonMobil's "characterization of Connecticut's claims as targeting pollution"); *Minnesota v. Am. Petroleum Inst.*, No. CV 20-1636 (JRT/HB), 2021 WL 1215656, at *13 (D. Minn. Mar. 31, 2021) ("[T]he State's action here is far more modest than the caricature Defendants present."); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 560 (D. Md. 2019) ("*Baltimore I*") ("This argument rests on a mischaracterization of the City's claims."), *aff'd*, 952 F.3d 452, 467 n.10 (4th Cir. 2020) ("*Baltimore II*") ("But that is not how Baltimore has framed its claim."), *vacated and remanded on other grounds*, 141 S. Ct. 1532 (2021) ("*Baltimore III*"); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 969 (D. Colo. 2019) ("*Boulder I*") ("Defendants mischaracterize Plaintiffs' claims."), *aff'd in part, appeal dismissed in part*, 965 F.3d 792 (10th Cir. 2020) ("*Boulder II*"), *vacated and remanded on other grounds*, No. 20-783 (U.S. May 24, 2021).

1

Accordingly, this Court should disregard Defendants' "tortured reading of the Complaint[]." *Honolulu*, 2021 WL 531237, at *8. Once it does, it can easily reject removal jurisdiction, just as four appellate courts and eight district courts have done in other cases targeting climate deception.[2] The Court should remand this case to state court and award the City costs and fees for the time and resources spent rehashing arguments Defendants have litigated and lost in twelve other courts.

## II.    THERE IS NO "OUTRIGHT FRAUD."

Defendants rely on rank speculation to invoke the fraudulent joinder doctrine, positing that the City has "no real interest in gaining a judgment against" defendant ExxonMobil Oil Corporation ("EMOC"). Opp. 10. They cannot satisfy their "heavy burden" to show "outright fraud" by "clear and convincing evidence." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).

The Second Circuit recognizes two paths by which a defendant can prove fraudulent joinder: (1) by showing there has been "outright fraud committed in the pleadings," or (2) by showing "there is no possibility based on the pleadings that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* Defendants expressly disavow the second path—and for good reason. When evaluating for fraudulent joinder, federal courts must apply the pleading standards of the forum state. *See Fayet v. Target Corp.*, No. 20-CV-3191-LTS-KHP, 2021 WL 706332, at *5 (S.D.N.Y. Feb. 22, 2021). And the City's allegations against EMOC easily clear New York's pleading standard, which is "more lenient" than its federal counterpart and which "requires only that a complaint plead facts with sufficient particularity to give the court and parties notice of the transactions [or] occurrences . . . intended to be proved and the material elements of each cause of

---

[2] *See supra* n.1; *see also Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) ("*San Mateo I*"), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020) ("*San Mateo II*"), *reh'g en banc denied* (Aug. 4, 2020), *vacated and remanded on other grounds*, No. 20-884 (U.S. May 24, 2021); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020) ("*Oakland II*"), *cert. denied*, No. 20-1089 , 2021 WL 2405350 (June 14, 2021); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019) ("*Rhode Island I*"), *aff'd in part, appeal dismissed in part*, 979 F.3d 50 (1st Cir. 2020) ("*Rhode Island II*"), *vacated and remanded on other grounds*, No. 20-900 (U.S. May 24, 2021).

2

action." *Shanahan v. Kolmar Labs., Inc.*, No. 18-CV-8317 (JMF), 2019 WL 935164, at *1 (S.D.N.Y. Feb. 26, 2019) (cleaned up). Here, the City alleges that EMOC markets gasoline to City consumers, makes false and misleading statements about the climate impacts of its products, and is therefore subject to CPL liability for deceptive trade practices. *See* Compl. ¶¶ 11(d)–(l), 31, 76–92. Because these allegations plainly state a claim under New York law, Defendants rightly concede that they cannot satisfy the no-possibility prong of fraudulent joinder.

They come nowhere close, however, to meeting the outright-fraud prong. To begin, Defendants cite no case in this circuit applying or illuminating the "outright fraud" standard beyond *Pampillonia*'s rule statement, and the City is aware of none. Defendants misread the only "outright fraud" case on which they rely, *Rodriguez v. Casa Chapa S.A. de C.V.*, 394 F. Supp. 2d 901 (W.D. Tex. 2005). In *Rodriguez*, the court found fraudulent joinder because (1) the plaintiffs had lied "to establish a putative party as a 'strawman," (2) the same attorney represented the plaintiffs and the fraudulently joined defendant, and (3) there was "overwhelming" evidence that the plaintiffs "had no real interest" in gaining a judgment against that defendant, including the plaintiffs' failure to serve any discovery on the fraudulently joined defendant and failure to seek default judgment after the defendant failed to answer. *Id.* at 908–09.

*Rodriguez* confirms that the "outright fraud" standard requires "actual fraud," which *Black's Law Dictionary* (11th ed. 2019) defines as: "A concealment or false representation through an intentional or reckless statement or conduct that injures another who relies on it in acting." Defendants concede as much, *see* Opp. 14, but offer no evidence of falsehood in the pleadings here.[3]

---

[3] Defendants' citation to another out-of-circuit case, *In re Briscoe*, 448 F.3d 201, 219–20 (3d Cir. 2006), to support the idea that a court should explore a case's context for "indicia of fraud" is inapposite, both because that phrase never appears in that case and because the case was decided under the "no possible claim" route that Defendants have disavowed here. *See id.* at 219 (denying mandamus where district court found fraudulent joinder because "there could be no debate that the claims against [non-diverse defendants] are time-barred as a matter of law").

Instead, Defendants speculate on the City's subjective motivation in joining EMOC. But even if true, "proof of this subjective motive is insufficient to establish fraudulent joinder." *B.N. ex rel. Novick v. Bnei Levi, Inc.*, No. 12–CV–5057, 2013 WL 168698, at *3 n.4 (E.D.N.Y. Jan. 15, 2013) (citing *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 189 (1931) ("[T]he motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined.")); *see also In re Zyprexa Prods. Liab. Litig.*, No. 04–MD–01596, 2008 WL 4561628, at *3 (E.D.N.Y. Oct. 10, 2008).

Finally, Defendants cite no case suggesting that the availability of a *res judicata* defense constitutes evidence of outright fraud. Defendants' argument that *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021) ("*City of New York II*"), bars this case also contradicts their assertion that they are not relying on the "no possibility of proving a claim" path to fraudulent joinder; if *res judicata* actually barred the City's claims, there would be no possibility of stating a claim. *See, e.g.*, *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302, 303 (2d Cir. 2004) (finding no fraudulent joinder under the "no possibility" standard based on a *res judicata* defense). In any event, *res judicata* does not apply here where the two suits name different defendants, allege different causes of action, target different types of misconduct, and seek different relief.[4] Rather than the "clear and convincing evidence" necessary to prove "outright fraud," Defendants offer only conjecture. The Court must reject Defendants' invitation to find fraudulent joinder.

---

[4] Defendants fail to identify or apply the proper standard, which in any event is not met here. *See Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347 (1999) ("Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action."). While the City's prior case sought damages for the effects of climate change on City infrastructure, the statutory consumer protection claims here are rooted in deceptive advertising and marketing within the three-year statute of limitations period based on Defendants' greenwashing advertising overstating their investments in clean energy products and falsely portraying their fossil fuel products as environmentally friendly. To the extent any of these promotional campaigns were in existence before 2018, that fact alone does not bar the present case, which is based on different conduct giving rise to different causes of action. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) ("[A] claim arising subsequent to a prior action is not barred by *res judicata* even if the new claim is premised on facts representing a continuance of the same course of conduct.").

## III.   THIS CASE DOES NOT "ARISE UNDER" FEDERAL LAW.

Defendants had no reasonable basis for invoking arising-under jurisdiction, and their opposition brief confirms as much. In arguing that federal common law converts the City's CPL claims into federal ones for jurisdictional purposes, Defendants mischaracterize the Complaint, depart from Second Circuit precedent, and stretch the artful-pleading doctrine beyond recognition.

More baseless still are Defendants' efforts to transform a First Amendment defense into a jurisdictional hook. Under the well-pleaded complaint rule, a federal defense cannot give rise to federal subject-matter jurisdiction. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983). Defendants ignore that black letter law, as well as decisions from courts in this Circuit rejecting analogous attempts to remove state law claims on First Amendment grounds. Accordingly, this Court should join the "fleet" of judicial decisions holding that climate deception lawsuits do not arise under federal law. *City of New York II*, 993 F.3d at 94.

### A.   Federal common law does not provide a basis for removal.

Defendants' theory of federal-common-law removal fails for at least two reasons. *See* Dkt. 38, Pl.'s Mem. in Support of Mot. to Remand ("Mot.") 6–22. First, Defendants cannot force this lawsuit into the narrow body of federal common law created by *City of New York II*. Second, even if federal common law applied here, it would not provide a basis for arising-under jurisdiction. In response, Defendants offer nothing more than distortions of the Complaint, inapposite cases, and arguments that they have been uniformly rejected by courts around the country. *See supra* n.2.

### 1.   The City's claims do not "implicate" federal common law.

*Massachusetts* and *Minnesota* are on all fours with this lawsuit. In those cases, as here, the plaintiffs brought consumer protection claims against fossil fuel companies, alleging that the defendants made false and misleading statements about the climate impacts of their products. *See Massachusetts*, 462 F. Supp. 3d at 38; *Minnesota*, 2021 WL 1215656, at *1. And as here, the

defendants insisted that federal common law "governed." *See Massachusetts*, 462 F. Supp. 3d at 41; *Minnesota*, 2021 WL 1215656, at *4. The district courts rightly rejected that bid to radically expand federal common law beyond areas of uniquely federal interest, observing that claims for deceptive advertising vindicate core state interests in "ensuring that citizens have access to accurate information in the marketplace." *Minnesota*, 2021 WL 1215656, at *5; *see also Massachusetts*, 462 F. Supp. 3d at 43–44. The courts also correctly rebuffed the defendants' attempts to recast those quintessentially state-law claims as actions to stop or abate interstate pollution. *See id.* That reasoning is consistent with Second Circuit precedent, and it compels the same conclusion here.

Defendants ignore these on-point decisions and instead rely inappropriately on *City of New York II*. In that case, the Second Circuit applied federal common law because it found that the City's claims for nuisance and trespass would "regulate cross-border emissions" by imposing "strict liability" on the lawful production and sale of fossil fuels. *City of New York II*, 993 F.3d at 93. But Defendants here would *not* need to "cease global [fossil fuel] production altogether" in order to avoid "ongoing liability" under the CPL because the conduct that triggers Defendants' liability is their false and misleading statements about the climate impacts of their products and businesses. *See City of New York II*, 993 F.3d at 93; Compl. ¶¶ 76–92. Defendants simply need to stop making false and misleading statements to the City's consumers to prevent future liability. *See* Compl. 53 (Relief Sought).

Nothing in *City of New York II*, moreover, suggests that federal common law applies here simply because the *subject matter* of Defendants' misleading advertisements concerns the climate impacts of their fossil-fuel products and businesses. To the contrary, the Second Circuit held that *City of New York II* was "no different" from the "unbroken string of cases [that] ha[ve] applied federal law to disputes *involving interstate air pollution*." 993 F.3d at 91–92 (emphasis added). And

as the City documented in its remand motion, that unbroken string consisted *only* of lawsuits that had the purpose and effect of regulating out-of-state pollution. *See* Mot. 10 n.4.

Indeed, the City's CPL claims fundamentally differ from those asserted in *City of New York II* along every relevant dimension:

- **Harms:** In *City of New York II*, the alleged harms were climate-change impacts on municipal infrastructure and services. *See City of New York II*, 993 F.3d at 86. Here, the asserted injury is the deprivation of information that is material to consumer purchasing decisions. Compl. ¶¶ 8, 83–84, 91–92, 99–100.[5]

- **Remedies:** In *City of New York II*, the complaint requested "compensatory damages for the past and future costs of climate-proofing [the City's] infrastructure and property," or alternatively "an injunction to abate the public nuisance and trespass. *See* 993 F.3d at 88. Here, the Complaint seeks (1) civil penalties for each false and misleading statement made by Defendants in violation of the CPL; and (2) equitable relief to stop Defendants from continuing their greenwashing campaigns in the City. *See* Compl. p. 53.

- **Liability and Limitations:** In *City of New York II*, "the City intend[ed] to hold the [defendants] liable . . . for the effects of emissions made around the global over the past several hundred years." 993 F.3d at 92. Here, the City intends to hold Defendants liable for false and misleading advertising made to its consumers during the CPL's statute of limitations period. *See* Compl. ¶¶ 76–100.

- **Geographic Scope:** In *City of New York II*, the Second Circuit found that the claims reached "conduct occurring simultaneously across just about every jurisdiction on the planet." 993 F.3d at 92. Here, the CPL claims reach only those false and misleading statements that Defendants have "directed at NYC consumers." *E.g.*, Compl. ¶ 6.

Defendants' insistence that *City of New York II* governs the City's CPL claims here is a feeble attempt to pound a square peg into a round hole.

Rather than arguing *City of New York II* applies to the CPL claims that the City *actually* pleaded in the Complaint, Defendants try to invent a new claim for pollution curtailment based on a handful of allegations concerning their *knowledge* of climate change and the *materiality* of their greenwashing campaigns to consumers. *See* Opp. 18. "This is a bridge too far." *Minnesota*, 2021 WL 1215656, at *5 (rejecting analogous attempts "to weave a new claim for interstate pollution out

---

[5] To prevail on its CPL claims, the City need not "show[] that consumers are actually being or were actually injured" by Defendants' deceptive trade practices. NYC Code § 20-703(e).

of" a complaint for climate deception). Under any fair reading of the Complaint, the conduct that triggers Defendants' liability is their misleading statements about the climate impacts of their products and investments. *See* Compl. ¶¶ 76–100. Under *City of New York II*'s own logic, then, the City's claims here cannot "suppress fossil fuel sales" or "curb greenhouse gas emissions." Opp. 18.

Defendants' remaining arguments are equally meritless. In a passing footnote, Defendants insist that the Complaint seeks to hold them liable merely for selling fossil fuel products. *See* Opp. 18 n.11. But the Complaint does not—and, indeed, cannot—do anything of the sort. The CPL prohibits a defendant from "engag[ing] in any deceptive or unconscionable trade practice in the sale . . . of any consumer goods." NYC Code § 20-700. The sale of fossil-fuel products could not, by itself, trigger liability under the CPL; liability attaches to a defendant's use of a deceptive trade practice ("[a]ny false, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind") or an unconscionable trade practice. *Id.* § 20-701(a).

Even if the Complaint could somehow be read as imposing strict liability on fossil-fuel sales, the City's claims would still fall outside the federal common law created in *City of New York II*. The Complaint tethers Defendants' liability to false and misleading statements "directed at NYC consumers." Compl. ¶¶ 81, 90, 91(a), 98, 99(a). Given this geographic limitation, any regulatory effects that might flow from this lawsuit will be concentrated within New York City. Indeed, to eliminate ongoing liability, Defendants need only stop flooding *the City* with their deceptive greenwashing advertisements. Nothing in this lawsuit prevents them from continuing those same campaigns in other states or even elsewhere in New York State. Plainly, then, this lawsuit bears no resemblance to the "sprawling case" considered in *City of New York II*, 993 F.3d at 92.

Contrary to Defendants' conclusory assertions, moreover, this action will not "upset" any "balance" struck by the federal government "between the prevention of global warming, . . . energy

production, economic growth foreign policy, and national security." Opp. 19–20 (cleaned up). In its motion, the City explained why the international treaties and policy statements cited in the removal notice have nothing to do with holding private companies liable for deceptively advertising fossil fuel products in New York City. *See* Mot. 13. Tellingly, Defendants offer no response in their opposition brief. Instead, they speculate that this lawsuit will "conflict[]" with federal energy policy because it will require "the Court to decide whether Defendants' investments in alternative energy sources are, in fact, 'too small' relative to their production of fossil fuel products." Opp. 20. But that purported conflict is illusory. To determine whether Defendants' clean energy advertisements violated the CPL, a factfinder will simply need to decide whether those advertisements created the misleading impression that Defendants invested more in clean energy resources than they actually did. That determination does not depend at all on what the federal government believes is the "right balance" between dirty and clean fuels. *Id.* Indeed, even if the government expressly endorsed Defendants' portfolio of energy investments, that endorsement would not imply that the government approved of Defendants' efforts to exaggerate the size of its clean energy investments in the minds of New York City consumers. *See* NYC Code § 20-701(a) (deceptive trade practices include the use of "exaggeration, innuendo, or ambiguity as to a material fact").

For the same reasons, this lawsuit does not conflict with any federal policies on natural gas, biofuels, or carbon capture. *See* Opp. 25. The Complaint alleges that Defendants violated the CPL by (1) portraying natural gas as "cleaner" and "sustainable," while failing to disclose that fuel's lifecycle emissions in their entirety, *see, e.g.*, Compl. ¶ 36; (2) advertising biofuels as "clean, cheap, and capable of mitigating climate change," while concealing that "these fuels release significant amounts of greenhouse gases and that they are currently not scalable for mass production," *see, e.g.*, *id.*; and (3) touting their carbon capture technologies, while failing to disclose that they capture

a negligible amount of their emissions each year, *see id.* ¶ 50. None of those allegations challenges the federal government's views on whether or how these various technologies should be deployed to meet the climate crisis. Instead, to determine whether Defendants' advertisements about gas, biofuels, and carbon capture were false or misleading, a factfinder would simply need to compare what Defendants said with what they omitted. As a result, nothing in this lawsuit concerns "the federal government's stance in global climate negotiations," Opp. 20, much less justifies the application of federal common law based on foreign policy concerns.[6]

### 2.      Neither the artful-pleading doctrine nor *Grable* apply.

Even if federal common law somehow applied here, it would not convert the City's municipal law claims into federal ones for purposes of arising-under jurisdiction. The Second Circuit has identified "three situations . . . in which a complaint that does not allege a federal cause of action may nonetheless 'arise under' federal law": (1) where Congress expressly authorizes removal of the action, (2) where the complete-preemption doctrine applies, or (3) where the requirements of *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005), are satisfied. *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014). Defendants cannot create a fourth situation out of federal common law or the artful-pleading doctrine. Nor can they satisfy *Grable* based on a conclusory analysis that ignores all the City's counterarguments and cited authorities. Regardless whether federal common law "pre-empt[s] and replace[s]" the City's CPL claims, *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988), that is

---

[6] In passing, Defendants cite *Zschernig v. Miller*, 389 U.S. 429, 430 (1968). But that decision simply underscores the daylight between this lawsuit and one that is actually governed by the federal common law of foreign affairs. In *Zschernig*, the Supreme Court invalidated an Oregon probate statute that prevented inheritance by citizens of Communist countries, observing that the statute made "judicial criticism of [these] nations" "unavoidable." *Id.* at 440–41. Here, by contrast, the City's CPL claims are focused entirely on the false and misleading statements made by private entities to New York consumers.

a defense that does not confer arising-under jurisdiction on this Court. Every court to consider the question in other climate deception cases has reached the same conclusion. *See supra* n.2.

### a.    Defendants cannot satisfy the artful-pleading doctrine.

Defendants argue that a state-law claim arises under federal law for jurisdictional purposes whenever that claim is preempted by federal common law. *See* Opp. 23. But the Second Circuit squarely foreclosed that argument in *Empire HealthChoice Assur., Inc. v. McVeigh*, where it unambiguously stated: "even in cases in which [the test for federal common law] is satisfied, courts must still ask the secondary question of whether the federal common law issue appears on the face of the plaintiff's well-pleaded complaint." 396 F.3d 136, 143 n.4 (2d Cir. 2005). To conclude otherwise would "conflate[] the preemption and jurisdiction analysis," and "giv[e] short shrift to the well-pleaded complaint rule." *Id.* at 142.

Defendants cannot overcome *Empire*'s unanimous[7] and unequivocal rejection of their federal-common-law theory of arising-under jurisdiction. They therefore ignore it, focusing instead on an earlier passage of the opinion in which the Second Circuit noted the undisputed point that claims affirmatively pleaded under federal common law arise under federal law. *See* Opp. 23; *see also Empire*, 396 F.3d at 140. But that statement lends no support to Defendants' removal of the City's claims, all of which are pleaded under municipal law. Pivoting again, Defendants try to distinguish *Empire* by drawing a distinction between pre-existing and newly created bodies of federal common law. *See* Opp. 23. Old or new, however, federal common law has the same jurisdictional effects under the timeless well-pleaded complaint rule: unless federal common law

---

[7] *See id.* at 150 (Sacks, J., concurring) (agreeing that, even if a case satisfied the test for federal common law, that would provide to subject-matter jurisdiction only "if th[e] litigant's well-pleaded complaint arises under federal law"); *id.* at 154 (Raggi, J., dissenting) (agreeing that where a "complaint pleaded claims under only state law," "federal common law . . . was not a ground for removal of those state claims to federal court").

appears on the face of the well-pleaded complaint, it is a federal defense that cannot support removal jurisdiction. *See Empire*, 396 F.3d at 142; *see also Franchise Tax Bd.*, 463 U.S. at 14.

To salvage their theory of federal-common-law removal, Defendants invoke the artful-pleading doctrine. But the District of Connecticut rejected identical arguments to remove state-law consumer protection claims for climate deception, and rightly so. *See Connecticut*, 2021 WL 2389739, at *10. The artful-pleading doctrine does not authorize a free-floating inquiry into "the real nature" a plaintiff's claims, as Defendants suggest. Opp. 21. And it does not represent a *fourth* "situation[] . . . in which a complaint that does not allege a federal cause of action may nonetheless 'arise under' federal law," apart from complete preemption, *Grable*, or express congressional authorization. *Fracasse*, 747 F.3d at 144. To the contrary, the Supreme Court, the Second Circuit, and courts in this District have all treated the artful-pleading doctrine as a shorthand for one or more of the three recognized situations in which a state-law claim arises under federal law. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (equating the artful-pleading doctrine with complete preemption); *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) (equating the doctrine with complete preemption and express congressional authorization); *see also Gondolfo v. Town of Carmel*, No. 20-CV-9060 (CS), 2021 WL 431148, at *3 (S.D.N.Y. Feb. 8, 2021); *Meer Enters., LLC v. Kocak*, No. 18 CIV. 00006 (JFK), 2018 WL 1901478, at *3 (S.D.N.Y. Apr. 20, 2018).

Overlooking this authority, Defendants rely on outdated or inapposite cases that lend no support to their unbounded reading of the artful-pleading doctrine. First, they cite *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998). But *Marcus* rejected the removing party's efforts to use federal common law to "convert [the plaintiff's] state law causes of action into ones 'arising under' federal law." *Id.* at 53. In analyzing both federal common law and the defendant's other asserted grounds

for removal, moreover, the Second Circuit did *not* engage in a freewheeling inquiry into the "the real nature" of the state-law complaint, as Defendants urge this Court to do. Opp. 21. Instead, the panel applied the complete-preemption doctrine and a precursor to the *Grable* test. *See Marcus*, 138 F.3d at 53–55 (federal common law did not completely preempt state-law claims); *id.* at 55–56 (breach of warranty claim "necessarily raise[d] a substantial federal question" about a federal tariff). *Marcus* confirms that the artful-pleading doctrine does not create new situations where state-law claims can arise under federal law, but rather refers to existing ones.[8]

Defendants also try to defend their reliance on the second footnote in *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981), insisting that this footnote sanctions their untethered analysis into the "real nature" of the City's municipal-law claims, Opp. 21. In *Rivet*, however, the Supreme Court expressly "confine[d] [that footnote] to its specific context," calling it an "enigmatic" and "marginal comment" that had "caused considerable confusion in the circuit courts." 522 U.S. at 472, 478 (cleaned up). Courts and commentators alike have recognized that *Rivet* "[d]elivered the coup de grace" to *Moitie*'s second footnote. 14C Charles Alan Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE § 3722.1 (4th ed. 2021); *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 551 (6th Cir. 2005). This Court should reach the same conclusion here.

Finally, Defendants suggest that *City of New York II* endorsed their expansive interpretation of the artful-pleading doctrine. *See* Opp. 16. It did no such thing. Although the Second Circuit colloquially referred to "artful pleading," *City of New York II*, 993 F.3d at 97, it did not purport to expand the *jurisdictional* doctrine of artful pleading beyond the narrow boundaries that it set in *Romano*, 609 F.3d at 519 (equating the doctrine with complete preemption and express

---

[8] Even if *Marcus* could be read as endorsing a broader vision of the artful-pleading doctrine, the Second Circuit has since "limited the application of [that] doctrine" to complete preemption and statutes that expressly authorize removal of a plaintiff's claims. *Allstate Ins. Co. v. Ace Sec. Corp.*, No. 11 CIV. 1914 (LBS), 2011 WL 3628852, at *7 (S.D.N.Y. Aug. 17, 2011) (citing *Romano*, 609 F.3d at 519).

congressional authorization). To the contrary, *City of New York II* disavowed addressing any jurisdictional questions, expressly declining to decide whether the defendants' federal-common-law preemption defense created federal question jurisdiction under the "heightened standard unique to the removability inquiry." 993 F.3d at 94. Defendants cannot use *City of New York II* to hide from the "fleet" of climate-deception cases in which courts have held that "federal [common law] preemption does not give rise to a federal question for purposes of removal." 993 F.3d at 94.

> **b.      Defendants cannot satisfy the requirements of *Grable*.**

As their final volley, Defendants try to manufacture *Grable* jurisdiction by misconstruing the Complaint, ignoring counterpoints in the City's remand motion, and pretending they have not lost the same *Grable* arguments in numerous other courts. *See supra* n.2. These failed efforts only reinforce the unreasonableness of removing this case based on *Grable* jurisdiction.

To carry their burden under *Grable*, Defendants must show that the City's municipal-law action (1) "necessarily raise[s]" (2) a "substantial" and "actually disputed" federal issue that is (3) "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Fracasse*, 747 F.3d at 144 (cleaned up). But revealingly, Defendants cannot argue any of these prongs without mischaracterizing the Complaint. *See, e.g.*, Opp. 24 ("The City's allegations attempt to countermand federal energy and environmental policy."). On that basis alone, this Court can and should reject *Grable* jurisdiction.

But even putting aside Defendants' dogged attempts to recast the Complaint, all of their *Grable* arguments fail on their own terms:

1.   **Necessarily Raised**: Because the City can state its *prima facie* case without referencing any federal law, no federal issue is an "essential element" of the City's CPL claims. *Grable*, 545 U.S. at 315. Defendants raise—at most—affirmative federal defenses when they contend that this municipal-law action "implicates" or "conflicts" with federal common law or federal policies. *See Oakland II*, 969 F.3d at 906–07 (defendants in climate-deception case could not satisfy *Grable* merely by alleging that the "state-law

14

claim implicates a variety of 'federal interests,' including energy policy, national security, and foreign policy"); *see also Tokhtaman v. Human Care LLC*, No. 18-cv-5907 (VEC), 2018 WL 5447543, *2 (S.D.N.Y. Oct. 29, 2018) ("Regardless of whether a court will 'necessarily' need to determine an issue, if the issue must be affirmatively raised by the defendant, then it is an affirmative defense, not an essential element of the plaintiff's claim.").[9]

2. **Substantial Federal Issue**: Defendants fail to show that any of their purported federal issues are "substantial" within the meaning of *Grable*. Instead, they offer a conclusory, two-sentence analysis that cites no supporting law from this Circuit; responds to none of the counterpoints or authorities raised in the City's remand motion; and references— without any explanation—*Board of Commissioners v. Tennessee Gas Pipeline Co.*, a Fifth Circuit case that bears no resemblance to the City's lawsuit. 850 F.3d 714, 724 (5th Cir. 2017) (federal regulatory scheme "provid[ed] the underlying legal basis for [state-law] causes of action").

3. **Federal-State Balance**: Defendants offer an equally conclusory analysis of *Grable*'s third requirement that makes no attempt to grapple with the arguments or case law cited in the City's remand motion, and that offers no support for its assertion that federal courts are traditional fora for "advertising" claims, Opp. 25, which they plainly are not, *see Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001) (identifying "advertising" as "a field of traditional state regulation" (cleaned up)).

As a result, Defendants fall far short of showing that this lawsuit is one of the "extremely rare" cases that satisfies *Grable*'s strict requirements. *Fracasse*, 747 F.3d at 144.

## B. First Amendment defenses do not provide a basis for removal.

In its remand motion, the City explained why Defendants cannot satisfy any of *Grable*'s requirements based on their purported First Amendment defenses. *See* Mot. 22-24. It identified a long list of cases from this Circuit rejecting analogous attempts to manufacture federal subject-matter jurisdiction out of the constitutional protections guaranteed to defendants by the First Amendment. *Id.* at 22. It distinguished all of the cases cited in Defendants' removal notice, showing that none of them suggested—much less held—that a defendant's First Amendment rights could convert state-law claims into federal ones for purposes of arising-under jurisdiction. *Id.* at 23. And

_____

[9] Defendants continue to cite—without explanation or analysis—*Newton v. Cap. Assur. Co.*, 245 F.3d 1306 (11th Cir. 2001), and *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596 (4th Cir. 2002). But as the City noted in its motion to remand, those two cases cannot override the Second Circuit's controlling decision in *Empire*, and in any event, they are both distinguishable on their facts. *See* Mot. 18 n.7.

it noted that another court in this Circuit already rebuffed all of Defendants' arguments in a consumer protection action for climate deception. *Connecticut*, 2021 WL 2389739, at *10.

Defendants' opposition brief responds to none of this. *See* Opp. 42–43. Instead, it repeats the same arguments made in its removal notice, relies on the same inapposite cases, and fails to address any of the City's arguments or authorities. That rote repetition all but concedes that Defendants lacked a reasonable basis for removing this case on First Amendment grounds. *Cf. 30 Clinton Place Owners Inc. v. City of New Rochelle*, 2014 WL 890482, at *1, n.1 (S.D.N.Y. Feb. 27, 2014) ("A plaintiff . . . concedes a defendant's arguments by his failure to respond to them.").

## IV.   THERE IS NO FEDERAL OFFICER REMOVAL JURISDICTION.

Continuing their sleight-of-hand to convince the Court that the City's consumer protection claims involve liability for "fossil fuel production activities," Opp. 27, Defendants argue that their leasing of federal lands for exploration and drilling and other production of fossil fuels renders them federal officers entitled to federal jurisdiction. But to establish federal officer removal, Defendants must show that they were acting under a federal officer's authority, that there exists "a nexus" between the allegations in the complaint and the conduct undertaken at the behest of a federal official, and that they have a "colorable federal defense." *Jefferson Cnty. Ala. v. Acker*, 527 U.S. 423, 431 (1999); 28 U.S.C. § 1442(a). Defendants fail all three points.

### A.   There is no connection between Defendants' fossil fuel production activities and the deceptive advertising and sales conduct in this case.

Federal officer jurisdiction arises only where Defendants show they were "acting under" federal officers in "carrying out the 'act[s]' *that are the subject of the petitioner's complaint.*" *Watson v. Phillip Morris Cos.*, 551 U.S. 143, 147 (2007) (quoting 28 U.S.C. § 1442) (emphasis added). While Defendants' argument "may have the flavor of federal officer involvement in [their] business . . . that mirage only lasts until one remembers what [the City] is alleging," *Rhode Island*

16

*II*, 979 F.3d at 59–60: that Defendants' misleading advertising and marketing to New York City consumers violated the City's consumer protection statute. Every court to consider the issue in analogous consumer protection and other climate deception cases has rejected Defendants' gambit to base federal officer jurisdiction on conduct unrelated to the cases. *See Connecticut*, 2021 WL 2389739, at *11–12; *Massachusetts*, 462 F. Supp. 3d at 47; *Minnesota*, 2021 WL 1215656, at *9; *Rhode Island II*, 979 F.3d at 59–60; *Baltimore II*, 952 F.3d at 467; *San Mateo I*, 294 F. Supp. 3d at 939.

Defendants are wrong that the Court can disregard the City's consumer protection claims and instead "credit defendants' theory of the case." Opp. 28. The "for or relating to" requirement of 28 U.S.C. § 1442(a)(1) does not give Defendants license to contort the City's claims into something they are not. *See Honolulu*, 2021 WL 531237, at *7 ("[I]f Defendants had it their way, they could assert any theory of the case, however untethered to the claims of Plaintiffs, because this Court must 'credit' that theory."); *Minnesota*, 2021 WL 1215656, at *5. Rather, Defendants must show that the "acts for which they are being sued occurred *because of* what they were asked to do by the government." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008).

Defendants' assertion that they satisfy the broader "connected or associated with" standard adopted in other circuits is also unavailing. The Second Circuit has not adopted this standard in any case since the 2011 amendments and has emphasized that the "causal connection" is satisfied "if the challenged act 'occurred while defendants were performing their official duties.'" *See Badilla v. Midwest Air Traffic Control Serv., Inc.*, __ F.4th __, 2021 WL 3477832, at *7 (2d Cir. Aug. 9, 2021) (quoting *Isaacson*, 517 F.3d at 137–38). Regardless, Defendants' connection showing falls short even under the more relaxed standard. *See Minnesota*, 2021 WL 1215656, at *9. Put simply: Defendants fail to identify even a single instance where the government exercised control over

17

Defendants' advertising or marketing of their fossil fuel products, and provide "no explanation as to how the allegedly deceptive statements that form the basis of [the City's] consumer protection claims have any causal connection to the production of fossil fuels for or under the direction of the federal government." *Connecticut*, 2021 WL 2389739, at *11. That omission is fatal.

The cases Defendants cite do not allow defendants to rely on a fabricated theory of the case. In *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) (en banc), the plaintiff alleged his former employer—a contractor hired "to build and refurbish naval vessels"—"negligently failed to warn him about asbestos," and that he contracted mesothelioma as a result. 951 F.3d at 289–90. The employer's pertinent contracts with the Navy "required asbestos," under detailed "government plans and specifications." *Id.* at 289. The court held that the connection element for removal was satisfied because "the charged conduct" (*i.e.*, the employer's failure to warn about asbestos) was "connected with the installation of asbestos during the refurbishment" of naval ships, which it performed "pursuant to directions of the U.S. Navy." *Id.* at 296. That connection between the employer's misconduct and "an act pursuant to a federal officer's directions" is far more direct than the attenuated relationship between the charged conduct here and Defendants' various unrelated interactions with the government. *See id.*; *see also* Mot. 28–29 (distinguishing *Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), and *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia*, 790 F.3d 457 (3d Cir. 2015), both of which involved direct government control over the conduct at issue).

Additionally, much of the conduct Defendants rely on as a basis for federal officer jurisdiction predates the City's allegations and is therefore irrelevant. "Critical under the [federal officer] statute is to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon." *In re MTBE Prods. Liab. Litig.*, 388 F.3d 112, 124–

18

25 (2d Cir. 2007). Defendants' distant historical conduct—dating back to World War II—has no bearing on the City's CPL claims based on Defendants' recent advertising to City consumers.

> **B.**     **Defendants have not satisfied the "acting under" or "colorable federal defense" elements either.**

Although the Court need reach no further than the connection element to find federal officer jurisdiction lacking, Defendants fail to meet the statute's other two requirements. Defendants seek a hook for federal officer jurisdiction in everything from World War II policies to commercial mineral leases on the Outer Continental Shelf ("OCS"). But *Watson* makes clear that contractors "act under" federal officers only where they have an "unusually close" relationship. 551 U.S. at 153. None of Defendants' identified relationships involve the requisite level of "subjection, guidance, or control" by a federal officer. *Id.* at 143.

Defendants try to diminish the on-point authority from the First, Fourth, Ninth, and Tenth Circuits by pointing to the additional evidence submitted with the Notice of Removal here. Opp. 32. But other courts have not been persuaded that padding the record could lead to a different outcome, and Defendants fail to connect any of their asserted federal conduct to the advertising and consumer-focused conduct here. *See Honolulu*, 2021 WL 531237, at *4, *5 (finding that defendants "have merely rearranged the deck chairs" as to the "acting under" element, despite Defendants being "undaunted" by controlling precedent and providing "substantial additional evidence").

Finally, each of the federal defenses Defendants raises relies entirely on Defendants' mischaracterization of the Complaint as attacking fossil fuel production or protected speech. These theories of the case are not credible and do not render the defenses "colorable."

## V.     THIS CASE IS NOT REMOVABLE UNDER THE OUTER CONTINENTAL SHELF LANDS ACT.

The Second Circuit has not defined the scope of jurisdiction granted by the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1). But Defendants' arguments fail

even under a maximally broad reading of the Fifth Circuit's two-part jurisdictional test. *See In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014).

*First*, Defendants cannot show that "the activities that caused the injury constituted an 'operation' 'conducted on the [OCS] that involved the exploration and production of minerals." *Deepwater Horizon*, 745 F.3d at 163. Here, the alleged injury is the deprivation of information that is material to New York City consumers. *See* Compl. ¶ 8. And the cause of that injury is Defendants' greenwashing campaigns, which misrepresent that climate benefits of their fossil-fuel products and overstate their businesses' investments in clean energy resources. *See id.*; *see also id.* ¶¶ 76–100. Defendants do not contend that any part of those deceptive advertising campaigns took place on the OCS, much less qualified as an "operation" within the meaning of OCS. *See EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir. 1994) ("[T]he term 'operation' contemplated the doing of some physical act on the OCS."). There is therefore no jurisdiction under OCSLA.

*Second*, Defendants cannot show that "th[is] case 'arises out of, or in connection with' [an] operation" on the OCS. *Deepwater Horizon*, 745 F.3d at 163. As Defendants' own citations confirm, *see* Opp. 37, this second prong of the Fifth Circuit's jurisdictional test requires "a 'but-for' connection" between the OCS operation and a plaintiff's cause of action. *Deepwater Horizon*, 745 F.3d at 163 ("Even though one can hypothesize a 'mere connection' between the cause of action and the OCS operation too remote to establish federal jurisdiction, this court deems § 1349 *to require* only a 'but-for' connection." (emphasis added)). No such connection exists between the City's CPL claims and Defendants' OCS activities. Regardless whether Defendants source 0% or 100% of their fossil-fuel products from the OCS, the alleged CPL violations at issue here are limited to misrepresenting the climate impacts of their products and businesses to New York City consumers.

Departing from OCSLA case law, Defendants argue that the Fifth Circuit's but-for test is inconsistent with the statute's use of the phrase "in connection with." *See* Opp. 37 (citing *Latiolais*, 951 F.3d at 292, a federal-officer-removal case). Not so. Phrases such as "in connection with" or "relate to" are "essentially 'indeterminate' because connections, like relations, stop nowhere." *Maracich v. Spears*, 570 U.S. 48, 59 (2013) (cleaned up). Accordingly, courts must supply "a limiting principle," *id.*, and they have often done so by reading in a but-for causation standard. Indeed, just this year, the Second Circuit held that a plaintiff's ERISA claims did not "relate to" his employment because "none of the facts relevant to the merits of [the plaintiff's] claims against [the defendant] relates to his employment." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 180 (2d Cir. 2021); *see also United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017) (lawsuit did not "'arise out of' or 'relate to' a contractual or employment relationship" because "even if [the plaintiff] had never been employed by defendants, . . . she would still be able to bring a suit against them for presenting false claims to the government"); *Doe v. Princess Cruise Lines*, 57 F.3d 1204, 1219 (11th Cir. 2011) (plaintiff's state-law tort claims "did not relate to, arise out of, or . . . connect with [her] crew agreement" because defendant "could have engaged in that tortious conduct even in the absence of any contractual or employment relationship"). In any event, Defendants fail even their own made-up test for OCSLA jurisdiction because no OCS "operation[] *contribute[d]* to the injuries alleged." Opp. 36. Again, Defendants did not deceive the City's consumers by producing oil on the OCS. They misled consumers by misrepresenting the climate impacts of their products in their advertisements.

Nor can Defendants save their doomed theory of OCSLA jurisdiction with the "highly speculative" argument that relief in this lawsuit will impair OCS production activities. *Minnesota*, 2021 WL 1215656, at *10; *Boulder I*, 405 F. Supp. 3d at 979. Like most of their arguments, that

speculation rests on a mischaracterization of the Complaint. *See* Opp. 37 ("The City's goal in this lawsuit is to force Defendants to stop or substantially curtail fossil fuel extraction and production . . . ."). Defendants do not identify an OCS impact resulting from the *actual* relief requested in the Complaint, namely: (1) civil penalties for each deceptive representation made to New York City consumers in violation of the CPL, and (2) injunctive relief to stop Defendants' greenwashing campaigns in New York City. That is because there is none. This Court should therefore reject OCSLA jurisdiction, just as every court has done in other climate deception cases.[10]

## VI.    FEDERAL ENCLAVE JURISDICTION DOES NOT EXIST.

Defendants do not discuss the standard for determining whether enclave jurisdiction exists, and do not dispute the City's description of that standard in its Motion: enclave jurisdiction exists in "limited circumstances," "when all or most of the pertinent events occurred" within a federal enclave, *Baltimore I*, 388 F. Supp. 3d at 565, and "the locus in which the claim arose is the federal enclave itself," *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d at 1125–26. Defendants likewise do not dispute that the "*partial* occurrence" of unlawful conduct "on a federal enclave is insufficient to invoke federal jurisdiction," at least where that conduct "ma[kes] up only a small fraction" of the alleged claim. *See New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1146 (D.N.M. 2020) (emphasis added). Defendants' arguments instead ask the Court to adopt the opposite conclusion and find enclave jurisdiction on the theory that (1) some unspecified portion of the Defendants' fossil fuel production—not mentioned in the Complaint and not the basis for liability—occurred on federal land, and (2) the relief the City seeks might affect Defendants' future

---

[10] *See Connecticut*, 2021 WL 2389739, at *12; *Minnesota*, 2021 WL 1215656, at *10; *San Mateo I*, 294 F. Supp. 3d at 938–39; *Boulder I*, 405 F. Supp. 3d at 978–79; *Rhode Island I*, 393 F. Supp. 3d at 151–52; *Baltimore I*, 388 F. Supp. 3d at 566; *Honolulu*, 2021 WL 531237, at *3.

operations on federal land. Neither of those arguments show that the City's claims *arose on* a federal enclave, and there is thus no jurisdiction.

Defendants' first argument, that the City's Claims "necessarily swee[p] in those operations that occur on military bases and other federal enclaves," Opp. 38, only proves the point. They do not dispute that the Complaint never mentions federal enclave lands, *see* Mot. 36, and instead double down on their mischaracterization of the Complaint as seeking relief for emissions from production activities. As explained in the City's Motion and repeated here, the City's Complaint targets Defendants' "false and misleading advertising," *id.*, and Defendants do not contend that alleged conduct has any relationship with their activities on federal enclaves. Defendants' calamitous warning that the City's Complaint "seeks to reduce or eliminate altogether consumers' demand for and use of fossil fuel products and thereby halt Defendants' extraction, production, and sale of the same," Opp. 39, is as irrelevant as it is outlandish. Even if the City's intent in this suit were to end all global demand for fossil fuels for all time (it certainly is not), that has nothing to do with whether the actual conduct complained of—let alone the "locus" of the City's claims—arose on federal enclave lands. Defendants cite no authority to support this argument, and there is none. Defendants' secondary argument that the claims arise on federal enclaves because "internet statements obviously *reach* federal enclaves" is frivolous, and Defendants cite no authority to support it either. Opp. 39 (emphasis added). The question before the Court is not whether Defendants' allegedly misleading statements might have reached federal enclaves; it is whether the *City's claims* arose on those federal enclaves. For the reasons already explained, they do not.

## VII.    THIS CASE IS NOT REMOVABLE UNDER CAFA.

Defendants' continued reliance on CAFA removal jurisdiction is unsupportable, and Defendants still do not attempt to demonstrate that the statute's requirements are satisfied. To reiterate, CAFA removal is appropriate where the complaint is "filed under" a "State statute or rule

of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action" that is "similar" to Federal Rule of Civil Procedure 23. 28 U.S.C. § 1332(d)(1)(B). A state statute or rule is "similar" to Rule 23 if imposes at least some of "the familiar hallmarks of Rule 23 class actions; namely, adequacy of representation, numerosity, commonality, typicality, or the requirement of class certification." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 216 (2d Cir. 2013). To be "similar," the statute under which the plaintiff's claim was filed "must, at a minimum, provide a procedure by which a *member of a class* whose claim is *typical* of all members of the class can bring an action not only on his own behalf but also *on behalf of all others in the class*." *Id.* at 217 (emphasis added). Defendants do not attempt to argue that the CPL bears any resemblance to Rule 23. None of those factors are present, and the Court's inquiry can end there.

Defendants seek to distinguish *Purdue Pharma* in a footnote, arguing that it only applies to *parens patriae* suits brought by a State, which the City's case is not. Opp. 41 n.25. But *Purdue Pharma* did not hold that *parens patriae* suits are not class actions in a vacuum; it did so by applying the test that Defendants studiously ignore here, and finding that the attorney general plaintiff in that case was not a "class representative" acting "on behalf of similarly-situated plaintiffs," and was not required to allege or prove that it was "a member of the class whose claim would be typical of the claims of the class members." 704 F.3d at 217. The City's claims are not *parens patriae* claims, but the same analysis applies: the City is not a member of a class and is not seeking to vindicate the rights of similarly-situated class members. *Purdue Pharma* remains on point.

The cases Defendants rely on are facially inapposite. In *Song v. Charter Commc'ns, Inc.*, No. 17CV325 JM (JLB), 2017 WL 1149286 (S.D. Cal. Mar. 28, 2017), an individual consumer brought breach of contract and unfair competition claims against cable television providers and expressly alleged that the claims were brought "not only for his benefit but also for the benefit of

millions of California consumers" who allegedly suffered the same injuries as the plaintiff. *Id.* at *1. The defendants removed "[b]ased on that allegation," *id.*, and the plaintiff never moved to remand. Instead, in a footnote to his opposition to the defendants' motion to compel arbitration, the plaintiff contended that "although he ha[d] yet to challenge subject matter jurisdiction, he 'reserves his right to address jurisdictional issues at a later time.'" *Id.* at *1 n.1. With no argument before it, the Court found that the notice of removal sufficiently alleged jurisdiction but provided no analysis. *See id.* The decision in *N.J. Carpenters Vacation Fund v. HarborView Mortg. Loan Tr. 2006-4*, 581 F. Supp. 2d 581 (S.D.N.Y. 2008), is even less relevant. The plaintiff there expressly brought a "putative class action" in state court alleging violations of federal securities law. *Id.* at 582. The plaintiff never argued the case was not a class action, and instead argued that remand was required by the 1933 Securities Act's anti-removal provision, 15 U.S.C. § 77v. *See id.* The court held that CAFA "trumps" that anti-removal provision and denied remand. *Id.* at 590. That case, like *Song*, has nothing to do with this one.

## VIII.   DEFENDANTS' REMOVAL IS OBJECTIVELY UNREASONABLE.

The Defendants' arguments remain objectively unreasonable for the reasons stated in the City's motion and further developed here. Every court that has considered defendants' arguments has rejected them, time and again, in courts across the country. *See* Mot. 1 n.1, 45. The court in *Connecticut* declined to award the State fees "with some reservation" given "that multiple district courts have rejected similar arguments for removal," 2021 WL 2389739, at *15, and expressly found that *City of New York II* did not cast doubt on any of those outcomes. The law has not changed, and there is no objectively reasonable basis to believe the City's claims would be removable. The Court can shed any reservations at this point and award the City its costs and fees.

## CONCLUSION

This Court lacks jurisdiction here and should grant the City's Motion to Remand.

Dated:  September 6, 2021

Respectfully submitted,

**GEORGIA PESTANA**
**Corporation Counsel of**
**the City of New York**

_/s/ Hilary Meltzer_
Hilary Meltzer
  Chief, Environmental Law Division
Alice R. Baker
Nathan Taylor
  Assistants Corporation Counsel
100 Church Street
New York, New York 10007
Tel: (212) 356-2072
Email:  hmeltzer@law.nyc.gov
             albaker@law.nyc.gov
             ntaylor@law.nyc.gov

**SHER EDLING LLP**

_/s/ Matthew K. Edling_
Matthew K. Edling
Victor M. Sher (_pro hac vice_)
Michael Burger
Katie H. Jones (_pro hac vice_)
Quentin C. Karpilow (_pro hac vice_ forthcoming)
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
Tel:    (628) 231-2500
Fax:   (628) 231-2929
Email: matt@sheredling.com
            vic@sheredling.com
            michael@sheredling.com
            katie@sheredling.com
            quentin@sheredling.com

_Attorneys for Plaintiff City of New York_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 6th day of September, 2021, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

*/s/ Matthew K. Edling*
Matthew K. Edling
