## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CITY OF NEW YORK, | |
| Plaintiff, | |
| vs. | Case Number: 1:21-CV-04807-VEC-SDA |
| EXXON MOBIL CORPORATION, EXXONMOBIL OIL CORPORATION, ROYAL DUTCH SHELL PLC, SHELL OIL COMPANY, BP P.L.C., BP AMERICA INC., and AMERICAN PETROLEUM INSTITUTE, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S RENEWED MOTION TO REMAND TO STATE COURT

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................ 1

II.  BACKGROUND .................................................................................. 3

    A.  The Complaint ............................................................................ 3

    B.  Procedural History ...................................................................... 4

III.  LEGAL STANDARDS ...................................................................... 5

IV.  FEDERAL COMMON LAW PROVIDES NO BASIS FOR REMOVAL. .................. 5

    A.  *Connecticut* forecloses removal under federal common law. ......................................... 5

    B.  Defendants' assertion of complete preemption is untimely. ..................................... 7

    C.  Federal common law does not completely preempt the City's claims. ........................... 9

        1.  Federal common law cannot completely preempt state law unless Congress explicitly says so. .......................................... 9

        2.  No body of federal common law preempts the City's claims. ............................ 11

            a.  The federal common law of interstate pollution does not apply. ...................... 11

            b.  The federal common law of foreign affairs does not apply. .......................... 14

            c.  The Court should not expand federal common law to encompass the City's claims. .................................. 16

    D.  Federal common law does not supply the City with a federal remedy. ......................... 16

V.  FEDERAL OFFICER REMOVAL DOES NOT APPLY. ............................................. 17

VI.  FEDERAL ENCLAVE JURISDICTION DOES NOT EXIST ....................................... 20

VII.  FIRST AMENDMENT DEFENSES PROVIDE NO BASIS FOR REMOVAL. ....... 23

VIII.  THERE IS NO FRAUDULENT JOINDER. ......................................................... 26

IX.  THIS CASE IS NOT REMOVABLE UNDER CAFA. ............................................. 30

X.  DEFENDANTS' CONTINUED OPPOSITION TO REMAND IS OBJECTIVELY UNREASONABLE. ............................................................. 34

XI.  CONCLUSION .................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*,
 731 F.3d 740 (7th Cir. 2013) ................................................................. 32

*Am. Elec. Power Co. v. Connecticut*,
 564 U.S. 410 (2011) ................................................................. 11, 12

*Am. Ins. Ass'n v. Garamendi*,
 539 U.S. 396 (2003) ................................................................. 15

*Sotheby's Inc. v. Mod. Art Servs., Ltd.*,
 No. 10 CIV. 9032 RMB, 2011 WL 1642197 (S.D.N.Y. Apr. 21, 2011) ................. 10

*Banco Nacional de Cuba v. Sabbatino*,
 376 U.S. 398 (1964) ................................................................. 15

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
 25 F.4th 1238 (10th Cir. 2022) ................................................... *passim*

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
 405 F. Supp. 3d 947 (D. Colo. 2019) ............................................. 20, 22

*Beneficial Nat'l Bank v. Anderson*,
 539 U.S. 1 (2003) ................................................................. 11, 12

*Bernadin v. Am. Airlines, Inc.*,
 No. 08 CV 1774(NG)(VVP), 2009 WL 1910964 (E.D.N.Y. July 1, 2009) ................. 8

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
 373 F.3d 296 (2d Cir. 2004) ................................................ 11, 17, 28, 29

*Bronx Dough, LLC v. Dunkin' Donuts, Inc.*,
 No. 03 CIV.1398 DC, 2004 WL 112880 (S.D.N.Y. Jan. 23, 2004) ..................... 27

*Calabro v. Aniqa Halal Live Poultry Corp.*,
 650 F.3d 163 (2d Cir. 2011) ....................................................... 34

*California v. ARC Am. Corp.*,
 490 U.S. 93 (1989) ................................................................. 16

*Californians for Alternatives to Toxics v. N. Coast R.R. Auth.*,
 2012 WL 1610756 (N.D. Cal. May 8, 2012) .......................................... 17

*Carey v. Ripp*,
 No. 2:17-cv-04899(ADS)(SIL), 2018 WL 1135553 (E.D.N.Y. Feb. 28, 2018) ........... 24

*Castillo v. BJ's Wholesale Club*,
 645 F. Supp. 3d 85 (E.D.N.Y. 2022) ............................................... 28

*CBS Inc. v. Snyder*,
   762 F. Supp. 71 (S.D.N.Y. 1991) ............................................................................ 8

*Children's Vill. v. Greenburgh Eleven Teachers' Union Fed'n of Teachers, Local 1532*,
   867 F. Supp. 245 (S.D.N.Y. 1994) ......................................................................... 24

*City & Cnty. of Honolulu v. Sunoco LP*,
   39 F.4th 1101 (9th Cir. 2022) .............................................................. 2, 20, 21, 22

*City & Cnty. of Honolulu v. Sunoco LP*,
   No. 20-CV-00163-DKW-RT, 2021 WL 839439 (D. Haw. Mar. 5, 2021) ................. 2

*City & Cnty. of Honolulu v. Sunoco LP*,
   No. 20-CV-00163-DKW-RT, 2021 WL 531237 (D. Haw. Feb. 12, 2021) ........ 20, 22

*City of Annapolis v. BP P.L.C.*,
   2022 WL 4548226 (D. Md. Sept. 29, 2022) .................................................. 2, 23, 25

*City of Hoboken v. Chevron Corp.*,
   45 F.4th 699 (3d Cir. 2022) ............................................................................ *passim*

*City of Hoboken v. Exxon Mobil Corp.*,
   558 F. Supp. 3d 191 (D.N.J. 2021) ................................................................. 23, 30

*City of Milwaukee v. Illinois & Michigan*,
   451 U.S. 304 (1981) ............................................................................................... 12

*City of New York v. Chevron Corp.*,
   993 F.3d 81 (2d Cir. 2021) ............................................................................. *passim*

*City of Oakland v. BP P.L.C.*,
   2022 WL 14151421 (N.D. Cal. Oct. 24, 2022) ...................................... 2, 20, 23, 25

*City of Oakland v. BP PLC*,
   969 F.3d 895 (9th Cir. 2020) ............................................................................. 2, 25

*CMGRP, Inc. v. Agency for the Performing Arts, Inc.*,
   689 F. App'x 40 (2d Cir. 2017) ...................................................................... 34, 35

*Cnty. of San Mateo v. Chevron Corp.*,
   32 F.4th 733 (9th Cir. 2022) .............................................................. ..... 2, 20, 21

*Cnty. of San Mateo v. Chevron Corp.*,
   294 F. Supp. 3d 934 (N.D. Cal. 2018) .................................................................. 20

*Connecticut v. Exxon Mobil Corp.*,
   __F.4th__, No. 21-1446-CV, 2023 WL 6279941 (2d Cir. Sept. 27, 2023) ...... *passim*

*Connecticut v. Exxon Mobil Corp.*,
   No. 3:20-CV-1555 (JCH), 2021 WL 2389739 (D. Conn. June 2, 2021) ...... 20, 22, 23

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ............................................................................................... 15

*D.C. v. Exxon Mobil Corp.,*
  640 F. Supp. 3d 95 (D.D.C. 2022) ................................................................................... *passim*

*Dart Cherokee Basin Operating Co. v. Owens,*
  574 U.S. 81 (2014) ................................................................................................................ 33

*Delaware v. BP Am. Inc.,*
  578 F. Supp. 3d 618 (D. Del.) .......................................................................................... 9, 30

*Empire HealthChoice Assurance, Inc. v. McVeigh,*
  396 F.3d 136 (2d Cir. 2005) .......................................................................................... 10, 16

*Fax Telecommunicaciones Inc. v. AT&T,*
  138 F.3d 479 (2d Cir. 1998) ............................................................................................... 10

*Fayet v. Target Corp.,*
  No. 20-CV-3191-LTS-KHP, 2021 WL 706332 (S.D.N.Y. Feb. 22, 2021) .......................... 26

*Fla. Lime & Avocado Growers, Inc. v. Paul,*
  373 U.S. 132 (1963) ............................................................................................................ 16

*Fracasse v. People's United Bank,*
  747 F.3d 141 (2d Cir. 2014) ............................................................................................... 23

*Georgia v. Tennessee Copper Co.,*
  206 U.S. 230 (1907) ............................................................................................................ 12

*Greenidge v. Mundo Shipping Corp.,*
  60 F. Supp. 2d 10 (E.D.N.Y. 1999) .................................................................................... 35

*Hustler Mag., Inc. v. Falwell,*
  485 U.S. 46 (1988) .............................................................................................................. 25

*Illinois v. City of Milwaukee,*
  406 U.S. 91 (1972) .............................................................................................................. 12

*In re Assicurazioni Generali, S.P.A.,*
  592 F.3d 113 (2d Cir. 2010) ............................................................................................... 15

*In re Briscoe,*
  448 F.3d 201 (3d Cir. 2006) ............................................................................................... 29

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.,*
  511 F. Supp. 2d 742 (S.D. Tex. 2005) ................................................................................ 25

*In re Facebook, Inc., Consumer Privacy User Profile Litig.,*
  354 F. Supp. 3d 1122 (N.D. Cal. 2019) .............................................................................. 33

*In re Gen. Motors LLC Ignition Switch Litig.,*
  No. 14-MD-2543 (JMF), 2015 WL 3776385 (S.D.N.Y. June 17, 2015) ............................... 27

*Int'l Paper Co. v. Ouellette,*
  479 U.S. 481 (1987) ............................................................................................................ 12

iv

*Isaacson v. Dow Chem. Co.*,
  517 F.3d 129 (2d Cir. 2008) ................................................................. 20

*Jackson v. N.A.A.C.P.*,
  575 F. App'x 256 (5th Cir. 2014)........................................................... 8

*Kuklachev v. Gelfman*,
  600 F. Supp. 2d 437 (E.D.N.Y. 2009)..................................................... 3

*Kuperstein v. Hoffman-Laroche, Inc.*,
  457 F. Supp. 2d 467 (S.D.N.Y. 2006) .............................................. 34, 35

*Latiolais v. Huntington Ingalls, Inc.*,
  951 F.3d 286 (5th Cir. 2020).................................................................. 18

*LG Display Co. v. Madigan*,
  665 F.3d 768 (7th Cir. 2011).............................................................. 30, 32

*Lontz v. Tharp*,
  413 F.3d 435 (4th Cir. 2005)................................................................... 9

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001) ............................................................................. 16

*Lupo v. Hum. Affs. Int'l, Inc.*,
  28 F.3d 269 (2d Cir. 1994) ...................................................................... 8

*Marathon CRE 2018-FL1 Issuer, Ltd. v. 257-263 W 34th St. LLC*,
  No. 22 CIV. 1991 (KPF), 2023 WL 1815195 (S.D.N.Y. Feb. 7, 2023) ............... 27

*Marcus v. AT&T Corp.*,
  138 F.3d 46 (2d Cir. 1998) ......................................................... 2, 10, 11

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005) .............................................................................. 34

*Martin v. Petersen Health Operations*, LLC,
  No. 1:20-CV-1449, 2021 WL 4313604 (C.D. Ill. Sept. 22, 2021)............... 17

*Massachusetts v. Exxon Mobil Corp.*,
  462 F. Supp. 3d 31 (D. Mass. 2020) ................................................ *passim*

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  31 F.4th 178 (4th Cir. 2022)........................................................... *passim*

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  388 F. Supp. 3d 538 (D. Md. 2019) ................................................ 20, 22

*Michigan v. AmeriGas Partners, L.P.*,
  954 F.3d 831 (6th Cir. 2020) ................................................................. 31

*Milkovich v. Lorain J. Co.*,
  497 U.S. 1 (1990) ................................................................................. 25

*Minnesota v. Am. Petroleum Inst.*,
63 F.4th 703 (8th Cir. 2023) ............................................................................ *passim*

*Minnesota v. Am. Petroleum Inst.*,
No. CV 20-1636 (JRT/HB), 2021 WL 1215656 (D. Minn. Mar. 31, 2021) ...................... *passim*

*Missouri v. Illinois*,
200 U.S. 496 (1906) ............................................................................................ 12

*Moses v. Martin*,
360 F. Supp. 2d 533 (S.D.N.Y. 2004) .................................................................. 35

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) ............................................................................................ 25

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014) ............................................................................ 24

*Nat'l Rev., Inc. v. Mann*,
140 S. Ct. 344 (2019) .......................................................................................... 25

*New Jersey Carpenters Vacation Fund v. HarborView Mortgage Loan Trust 2006-4*,
581 F. Supp. 2d 581 (S.D.N.Y. 2008) .................................................................. 33

*New Jersey v. City of New York*,
283 U.S. 473 (1931) ............................................................................................ 12

*New York v. New Jersey*,
256 U.S. 296 (1921) ............................................................................................ 12

*North Dakota v. Minnesota*,
263 U.S. 365 (1923) ............................................................................................ 12

*Ortiz v. Tara Materials, Inc.*,
No. 21-CV-00373-AJB-AHG, 2021 WL 5982289 (S.D. Cal. Dec. 17, 2021) .......... 8

*Owen v. Stokes*,
No. 218CV01581GMNDJA, 2020 WL 127552 (D. Nev. Jan. 10, 2020) .................. 34

*Pampillonia v. RJR Nabisco, Inc.*,
138 F.3d 459 (2d Cir. 1998) .......................................................................... 26, 29

*Phila. Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986) ............................................................................................ 25

*Platkin v. Exxon Mobil Corp.*,
No. 22CV06733RKJBD, 2023 WL 4086353 (D.N.J. June 20, 2023) .................. 2, 20

*Polonetsky v. Better Homes Depot*,
97 N.Y.2d 46 (N.Y. 2001) ................................................................................ 23, 24

*Purdue Pharma L.P. v. Kentucky*,
704 F.3d 208 (2d Cir. 2013) ................................................................ 5, 30, 31, 32

*Qatar v. First Abu Dhabi Bank PJSC*,
  432 F. Supp. 3d 401 (S.D.N.Y. 2020) ............................................................ 24

*Republic of Philippines v. Marcos*,
  806 F.2d 344 (2d Cir. 1986) ............................................................................ 15

*Rhode Island v. Chevron Corp.*,
  393 F. Supp. 3d 142 (D.R.I. 2019) .............................................................. 9, 20

*Rhode Island v. Shell Oil Prods. Co.*,
  35 F.4th 44 (1st Cir. 2022) ...................................................................... *passim*

*Rodriguez v. Casa Chapa S.A. de C.V.*,
  394 F. Supp. 2d 901 (W.D. Tex. 2005) ....................................................... 29, 30

*Rodriguez v. Fed. Deposit Ins. Corp.*,
  140 S. Ct. 713 (2020) ...................................................................................... 16

*Rosenfeld v. Lincoln Life Ins. Co.*,
  239 F. Supp. 3d 636 (E.D.N.Y. 2017) ............................................................ 3, 27

*Schubarth v. Fed. Republic of Germany*,
  No. 14-CV-2140 (CRC), 2021 WL 7889662 (D.D.C. Jan. 25, 2021) ......................... 8

*Shanahan v. Kolmar Labs., Inc.*,
  No. 18-CV-8317 (JMF), 2019 WL 935164 (S.D.N.Y. Feb. 26, 2019) ...................... 26

*Solomon v. St. Joseph Hosp.*,
  62 F.4th 54 (2d Cir. 2023) ..................................................................... 9, 11, 17

*Solucorp Indus., Ltd. v. Goldstein*,
  No. 11 CV 5920(VB), 2011 WL 7101063 (S.D.N.Y. Nov. 17, 2011) ....................... 24

*Song v. Charter Commc'ns, Inc.*,
  No. 17CV325 JM (JLB), 2017 WL 1149286 (S.D. Cal. Mar. 28, 2017) .............. 32, 33

*Sullivan v. Am. Airlines, Inc.*,
  424 F.3d 267 (2d Cir. 2005) ............................................................................ 17

*TechnoMarine SA v. Giftports, Inc.*,
  758 F.3d 493 (2d Cir. 2014) ............................................................................ 28

*Tokhtaman v. Hum. Care, LLC*,
  No. 18-CV-5907 (VEC), 2018 WL 5447543 (S.D.N.Y. Oct. 29, 2018) .................... 24

*Troung v. Am. Bible Soc'y*,
  171 F. App'x 898 (2d Cir. 2006) ....................................................................... 24

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) ........................................................................... 29

*W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*,
  646 F.3d 169 (4th Cir. 2011) ....................................................................... 31, 33

*Whitaker v. Am. Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001) ........................................................................ 5

*Whitehurst v. 1199SEIU United Healthcare Workers E.*,
   928 F.3d 201 (2d Cir. 2019) ........................................................................ 9

*Williams v. Emps. Mut. Cas. Co.*,
   845 F.3d 891 (8th Cir. 2017) ..................................................................... 32

*Wilson v. Ethicon Women's Health & Urology*,
   2014 WL 1900852 (S.D.W. Va. May 13, 2014) ....................................... 35

*Wyant v. Nat'l R.R. Passenger Corp.*,
   881 F. Supp. 919 (S.D.N.Y. 1995) .......................................................... 7, 8

*Xiao Yang Chen v. Fischer*,
   6 N.Y.3d 94 (N.Y. 2005) ........................................................................... 28

**Statutes**

28 U.S.C. § 1331 ................................................................................................ 6

28 U.S.C. § 1332(d) ........................................................................................... 4

28 U.S.C. § 1332(d)(1)(B) ................................................................................ 30

28 U.S.C. § 1442(a)(1) ....................................................................................... 4

28 U.S.C. § 1446 ................................................................................................ 7

28 U.S.C. § 1453(b) ........................................................................................... 4

28 U.S.C. §1446(b)(1) ....................................................................................... 2

28 U.S.C. § 1653 ................................................................................................ 2

43 U.S.C. § 1349(b)(1) ....................................................................................... 4

**Rules**

F.R.C.P. Rule 23 ..................................................................................... 30, 31, 32

**Other Authorities**

New York City Administrative Code § 20-700 .................................................. 1

New York City Administrative Code § 20-701 ..................................... 3, 22, 24

New York City Administrative Code § 20-703(d)–(e) ..................................... 31

Pub. L. No. 109-2, 119 Stat. 4 § 2 (2005) ...................................................... 33

## I.       INTRODUCTION

The Court should grant the City of New York's renewed motion to remand this municipal-law action to New York state court. More than two years ago, the City sued Defendants (several oil-and-gas companies and their top trade association) for violating the City's Consumer Protection Law ("CPL"), New York City Administrative Code ("NYC Code"), §§ 20-700 *et seq.* As detailed in the Complaint, Defendants have systematically deceived the City's consumers by making false and misleading statements about the climate change impacts of their products and businesses. *See* Dkt. 1-5 (Ex. 5), Summons and Complaint ("Compl.") ¶¶ 1–9, 76–100. To redress these ongoing wrongs, the City seeks civil penalties and a court order enjoining Defendants from inundating the City with its deceptive greenwashing campaigns. *See id.* at 53 (relief sought).

There is no federal hook that allows Defendants to remove this municipal-law action to federal court. The Second Circuit's decision in *Connecticut v. Exxon Mobil Corp.*, __ F.4th__, No. 21-1446-CV, 2023 WL 6279941 (2d Cir. Sept. 27, 2023) ("*Connecticut*"), forecloses their principal removal theories based on federal common law, the federal-officer-removal statute, and the Outer Continental Shelf Lands Act ("OCSLA"). Their remaining arguments fare no better. Indeed, two of them (federal enclave jurisdiction and First Amendment jurisdiction) are so unmeritorious that they were *abandoned* on appeal in the *Connecticut* case. And all of them have been unanimously rejected by courts around the country. As it stands today, 15 district court judges have rebuffed analogous attempts to remove climate deception cases to federal court; seven appellate courts have affirmed those remand orders without dissent; and the United States Supreme Court has denied seven petitions for certiorari review of remand decisions in related lawsuits.[1]

---

[1] *See Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 1796 (2023); *Connecticut*, 2023 WL 6279941; *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 2483 (2023); *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795

As a result, Defendants come to this Court with a "batting average of .000," only to strike out again. *City & Cnty. of Honolulu v. Sunoco LP*, 2021 WL 839439, at *2 n.3 (D. Haw. Mar. 5, 2021). As they necessarily concede, *Connecticut* forecloses their theory of OCSLA jurisdiction. *See* Declaration of Katie Jones ("Jones Decl.") Ex. B. And Defendants cannot evade the Second Circuit's rejection of their federal-common-law theory of removal by converting it to a brand-new theory of complete preemption. Defendants are time-barred from adding new theories of removal. *See* 28 U.S.C. §§ 1446(b)(1), 1653. And in any event, their new theory fails on its merits because federal common law cannot completely preempt state law claims unless Congress expressly says so, *see Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998), and because the City's claims fall far outside any cognizable body of federal common law, *see, e.g.*, *Rhode Island*, 35 F.4th at 54–55.

*Connecticut* also forecloses federal officer removal, as the City's "case presents a total mismatch between the business practices that [Defendants] assert[] were subject to federal control and supervision ([their] actual production of fossil fuels) and the business practices of which [the City] complains (its marketing and public-relations campaigns to assuage consumers' fears about the environmental impacts of those fossil fuels)." 2023 WL 6279941, at *14. As for the removal grounds left unaddressed by *Connecticut*, federal enclave jurisdiction fails because Defendants' "deceptive marketing" and the City's "injuries . . . occurred *outside* federal enclaves." *Rhode Island*, 35 F.4th at 58. Defendants cannot manufacture *Grable* jurisdiction based on the First Amendment,

---

(2023); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1797 (2023); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2776 (2021); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023), *cert. filed*, No. 23-168 (U.S. Aug. 22, 2023); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020); *D.C. v. Exxon Mobil Corp.*, 640 F. Supp. 3d 95 (D.D.C. 2022), *appeal filed*, No. 22-7163 (D.C. Cir. Nov. 30, 2022); *City of Annapolis v. BP P.L.C.*, 2022 WL 4548226 (D. Md. Sept. 29, 2022), *appeal filed*, No. 22-2082 (4th Cir. Oct. 14, 2022); *City of Oakland v. BP P.L.C.*, 2022 WL 14151421 (N.D. Cal. Oct. 24, 2022), *appeal filed*, No. 22-16810 (9th Cir. Nov. 25, 2022); *City of Charleston v. Brabham Oil Co.*, No. 2:20-cv-03579-RMG (D.S.C. July 5, 2023), *appeal filed*, No. 23-1802 (4th Cir. Aug. 3, 2023) (Jones Decl. Ex. A); *New Jersey v. Exxon Mobil Corp.*, 2023 WL 4086353 (D.N.J. 2023).

which does "not extend federal jurisdiction" to every state-law claim involving speech on "matters of public concern." *Hoboken*, 45 F.4th at 709. The City's lawsuit cannot qualify as a "class action" under the Class Action Fairness Act ("CAFA") because the City pleaded its claims under a local law that has none of "the defining characteristics of Rule 23" of the Federal Rules of Civil Procedure. *Minnesota*, 63 F.4th at 717. Finally, Defendants do not offer any evidence—much less "clear and convincing evidence"—that the City has committed "outright fraud" in its pleadings, rendering their fraudulent-joinder challenge frivolous. *Rosenfeld v. Lincoln Life Ins. Co.*, 239 F. Supp. 3d 636, 639 (E.D.N.Y. 2017) (cleaned up).

The Court should therefore remand this case to state court. And because Defendants' removal of the City's lawsuit was objectively unreasonable, it should also award the City costs and fees for the time and resources spent relitigating jurisdictional theories that have been rejected by the Second Circuit and nearly two dozen other courts in similar climate deception cases.

## II.    BACKGROUND

### A.    The Complaint

On April 22, 2021, the City sued Defendants in New York state court, alleging claims exclusively under the CPL. *See* Compl. ¶¶ 76–100. As sole enforcer of that statute, the City is charged with protecting New York consumers from "deceptive trade practices," which include any representation made "in connection with" the sale of consumer goods or services that has "the capacity, tendency or effect of . . . deceiving or misleading consumers." NYC Code § 20-701; *see also Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009) (City is sole enforcer). The City exercises that unique enforcement power here to stop Defendants from deceiving the City's consumers about the climate impacts of their products and businesses.

As detailed in the Complaint, Defendants have engaged in relentless greenwashing

campaigns that continue to this day. *See, e.g.*, Compl. ¶¶ 1–9. Recognizing that consumers want to reduce their carbon footprint and combat climate change, Defendants promote their gasoline products as "cleaner" and "emissions-reducing," yet they fail to disclose the fact that those same products are leading drivers of climate change. *See id.* ¶¶ 26–33. As a result, consumers are left with the false impression that purchasing Defendants' fossil fuel products will help combat climate change when, in fact, the environmental benefits are a mirage.

Defendants also falsely portray themselves as corporate leaders in the fight against climate change, knowing that they can sell more products if they are viewed as environmentally responsible. *See id.* ¶¶ 18–25. Each day, they bombard City consumers with newspaper ads, social media posts, and other promotional materials that trumpet their supposed investments in climate friendly technologies and energy, such as solar, wind, and battery storage. *See id.* ¶¶ 34–75. But Defendants fail to disclose that those investments constitute a negligible percentage of their total business, that many of their so-called "clean" energy projects contribute substantially to climate change, and that they plan to dramatically ramp up fossil fuel production in the coming years. *See id.*

That ongoing deception of the City's consumers must stop. Accordingly, the City seeks civil penalties for Defendants' CPL violations, and injunctive relief to prevent Defendants from blitzing the City with their deceptive advertisements. *See id.* at 53.

### B.    Procedural History

On May 28, 2021, Defendants removed this case to federal court, asserting seven grounds for removal: (1) federal common law; (2) the federal officer removal statute, 28 U.S.C. § 1442(a)(1); (3) OCSLA, 43 U.S.C. § 1349(b)(1); (4) federal enclave jurisdiction; (5) diversity jurisdiction based on fraudulent joinder; (6) CAFA, 28 U.S.C. §§ 1332(d), 1453(b); and (7) the First Amendment of the United States Constitution. *See* Dkt. 1, Notice of Removal ("NOR") ¶¶ 22–

23. The City timely moved to remand the case to state court, *see* Dkt. 38, and the parties briefed that motion.

On November 12, 2021, the Court stayed this action pending the Second Circuit's decision in *Connecticut*, a similar climate deception case that had been brought by the State of Connecticut and removed by Exxon Mobil Corporation to federal court. *See* Dkt. 58. On September 27, 2023, the Second Circuit unanimously affirmed the district court's order remanding Connecticut's lawsuit to state court. *See Connecticut*, 2023 WL 6279941, at *1. In response, this Court denied the City's motion to remand without prejudice and with leave to refile. *See* Dkt. 63. The City now renews its remand motion, requesting that the Court send its municipal-law action back to state court.

## III.    LEGAL STANDARDS

Federal courts "strictly construe[]" removal jurisdiction. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 201 (2d Cir. 2001). Doing so not only respects Congress's "intent to restrict federal court jurisdiction," but also "preserv[es] the independence of state governments." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013). Accordingly, federal courts must "resolv[e] any doubts against removability." *Connecticut*, 2023 WL 6279941, at *3.

## IV.    FEDERAL COMMON LAW PROVIDES NO BASIS FOR REMOVAL.

Defendants argue that this case "arises under" federal law for jurisdictional purposes because the City's municipal-law claims are "governed" by federal common law. NOR ¶¶ 24–71. But *Connecticut* forecloses that theory of removal, which has also been rejected by every court to consider it. And Defendants' attempts to evade *Connecticut* are both untimely and unmeritorious.

### A.    *Connecticut* forecloses removal under federal common law.

In *Connecticut*, the State of Connecticut sued Exxon Mobil (a Defendant in the City's case) under its consumer protection statute, "alleging that Exxon Mobil had engaged in a decades-long 'campaign of deception' to knowingly mislead and deceive Connecticut consumers about the

negative climatological effects of the fossil fuels that Exxon Mobil was marketing to those consumers." 2023 WL 6279941, at *1. Although the State pleaded only state-law claims, Exxon Mobil removed the action to federal court based on 28 U.S.C. § 1331 (among other bases), arguing that the lawsuit arose under federal law because it was governed by federal common law. *See id.*

The Second Circuit disagreed, unanimously affirming remand of Connecticut's case to state court. *Id.* at *1. As the Circuit explained, the well-pleaded complaint rule governs the scope of arising-under jurisdiction. *Id.* at *4. And under that century-old rule, a case generally does not arise under federal law unless the complaint "affirmatively allege[s] [a] cause of action created by federal law." *Id.* (cleaned up). As such, jurisdiction "cannot be triggered on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* (cleaned up). Instead, "the plaintiff [is] the master of the claim, meaning that—subject to certain exceptions—plaintiffs may avoid federal jurisdiction by exclusive reliance on state law." *Id.* (cleaned up).

Recognizing as much, Exxon Mobil tried to recast its theory of federal-common-law removal as one of those exceptions, presenting the exact same arguments that Defendants advanced here in their removal notice and their opposition to the City's first motion to remand. In *Connecticut*, as in the City's case, Exxon Mobil argued that federal common law created jurisdiction under the "artful-pleading doctrine." *Compare id.* at *5, *with* NOR ¶¶ 61–62; Dkt. 47 at 21–24. But as the Second Circuit explained, "[t]here are three—and only three—exceptions" to that rule, and they apply only to state-law claims that either (1) are "expressly" removable under a statute (*e.g.*, the federal-officer-removal statute), (2) "are completely preempted by federal law," or (3) satisfy the test set forth "in *Grable* and later streamlined in *Gunn*." 2023 WL 6279941, at *8, 10. Accordingly, the panel rejected Exxon Mobil's "broad, flexible" reading of the artful-pleading

doctrine, holding instead that the doctrine "is simply a label for the first two of the three exceptions to the well-pleaded complaint rule." *Id.* at \*5, 6. And the Second Circuit rebuffed Exxon Mobil's "suggest[ion]" that there exists "a *fourth* exception" for state-law claims that are purportedly governed by federal common law. *See id.* at 6.

Just as in City's case, moreover, Exxon Mobil only invoked one of the recognized exceptions to the well-pleaded complaint rule in its removal of Connecticut's case: *Grable*. *Compare id.* at \*10–12, *with* NOR 63–71; Dkt. 47 at 24–27. But the Second Circuit rejected that bid too, explaining that federal common law was not a "necessary element" of Connecticut's state-law claims and so the first requirement of *Grable* was not satisfied. 2023 WL 6279941, at \*10–12. The Circuit therefore held that federal common law provided no basis for removing Connecticut's case. And this Court should reach the same conclusion because the theory of federal-common-law jurisdiction that Defendants raised in their removal notice and argued in the first round of remand briefing is *identical* to the jurisdictional theory considered and rejected by the Second Circuit.

B.     **Defendants' assertion of complete preemption is untimely.**

Recognizing that *Connecticut* forecloses their original federal-common-law theory, Defendants informed the City that they intend to add a new removal ground: complete preemption. *See* Jones Decl. Ex. B. Even though Defendants never mentioned complete preemption in their removal notice or in their opposition to the City's first remand motion, they will apparently argue for the first time that federal common law completely preempts the City's municipal-law claims.

That new theory of removal is time-barred. Under 28 U.S.C. § 1446, a removal notice may be amended within 30 days after receipt of the complaint. Once that period expires, a Court may—in its discretion—grant leave to amend under Section 1653, but *only* if "the proposed amendments are technical in nature or merely serve to clarify what was contained in the original notice for

removal." *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 924 (S.D.N.Y. 1995); *see also CBS Inc. v. Snyder*, 762 F. Supp. 71, 73–76 (S.D.N.Y. 1991) (allowing amendment to clarify ambiguous citizenship allegation in diversity case). Outside the 30-day window, a defendant cannot "add a new avenue of jurisdiction" to its removal notice. *Bernadin v. Am. Airlines, Inc.*, No. 08 CV 1774(NG)(VVP), 2009 WL 1910964, at *3 (E.D.N.Y. July 1, 2009) (cleaned up). Nor can it advance "new [removal] argument[s]" or "change [its] reasoning" for why jurisdiction purportedly exists. *Ortiz v. Tara Materials, Inc.*, 2021 WL 5982289, at *2, 3 (S.D. Cal. Dec. 17, 2021).

Here, Defendants never pleaded complete preemption as a removal ground. Nor can they seriously argue that their newfound theory merely clarifies their original theory of federal-common-law removal. Again, there is no mention of the complete preemption doctrine in their removal notice or in their opposition to the City's first motion to remand. Instead, Defendants have concocted this new theory in response to *Connecticut*, which extinguished their original theory of federal-common-law jurisdiction. The Court should reject this untimely attempt to "add a new ground for removal" more than two years after the City's case was removed. *Wyant*, 881 F. Supp. at 925.

Indeed, "[i]t would be contrary to any concept of sensible judicial administration to permit [Defendants] to amend [their] notice of removal at this juncture." *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994). As the Second Circuit has explained, courts should not "prolong[] preliminary litigation over the removal issue simply because [a defendant] failed in the first instance to aver a proper jurisdictional basis for removal." *Id.* Instead, they should "limit[] the application of § 1653 to technical corrections and clarifications." *Schubarth v. Fed. Republic of Germany*, 2021 WL 7889662, at *8 (D.D.C. Jan. 25, 2021). And they should deny "attempts to present legal theories *seriatim*," *Jackson v. N.A.A.C.P.*, 575 F. App'x 256, 259 (5th Cir. 2014), especially where—as here—the defendants' removal has already delayed prosecution of the case by more than two years.

### C.   Federal common law does not completely preempt the City's claims.

Even if the Defendants' new theory of complete preemption were not time-barred, it would fail on its merits, as every court to consider the question has concluded in other climate deception cases.[2] "Complete preemption is rare." *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 60 n.2 (2d Cir. 2023). "[It] occurs when the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) (cleaned up). To date, "[t]he Supreme Court has identified only three statutes as having the requisite 'preemptive force.'" *Id.* And the Second Circuit has only "identified two other[s]." *Solomon*, 62 F.4th at 60 n.2. That is not surprising because the test for complete preemption is "exacting." *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005). To meet it, a defendant must first identify a federal statute that "preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action." *Solomon*, 62 F.4th at 60–61. The defendant must then show that the plaintiff's claims fall "within the scope of the federal cause of action." *Id.* at 61.

Defendants cannot carry that burden for three independent reasons. First, federal common law cannot completely preempt state law in the absence of congressional authorization. Second, even if it could, the City's claims are not preempted by federal common law. Third, even if federal common law did somehow "govern" this lawsuit, it provides no federal remedy to plaintiffs.

### 1.   Federal common law cannot completely preempt state law unless Congress explicitly says so.

In *Connecticut*, the Second Circuit did not reach the question of whether federal common

---

[2] *See, e.g., Hoboken*, 45 F.4th at 707–08; *Minnesota*, 63 F.4th at 710; *Boulder*, 25 F.4th at 1262; *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142, 149 (D.R.I. 2019); *D.C.*, 640 F. Supp. 3d at 104; *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 628 (D. Del.), *cert. denied*, 143 S. Ct. 2483 (2023).

law can "*ever* give rise to complete preemption," as Exxon Mobil had disavowed that argument. 2023 WL 6279941, at *9 n.4 (cleaned up). But under this Circuit's precedent, it clearly cannot unless Congress expressly says so in a statute, which it has not done here.

The Second Circuit unambiguously answered this question in *Marcus*. There, the defendant argued that "federal common law provide[d] a basis for removal." 138 F.3d at 53. The Circuit acknowledged that, in an earlier decision, it had allowed removal "under the doctrine of complete preemption based upon the preemptive force of federal common law in the area of interstate telecommunications." *Id.* at 53. But in light of intervening U.S. Supreme Court authority, the Second Circuit reversed course, explaining that it was now "clear that the complete preemption doctrine applies only where Congress has clearly manifested an intent to disallow state law claims in a particular field." *Id.* at 54. Accordingly, the Circuit held that federal common law "does not preempt state law claims," "absent some express statement or other clear manifestation from Congress that it intends the complete preemption doctrine to apply." *Id.*

Since then, courts in this Circuit have reaffirmed that holding and its logic. In *Fax Telecommunicaciones Inc. v. AT&T*, 138 F.3d 479, 486 (2d Cir. 1998), the Second Circuit relied on *Marcus* to reject another attempt to remove state-law claims based on the complete preemption of federal common law. So, too, have courts in this District. *See Sotheby's Inc. v. Mod. Art Servs., Ltd.*, No. 10 CIV. 9032 RMB, 2011 WL 1642197, at *1–2 (S.D.N.Y. Apr. 21, 2011). In *Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 142 (2d Cir. 2005), moreover, then-Judge Sotomayor refused to find arising-under jurisdiction just because a state-law claim satisfies the "test" for federal common law, which would be the end-result of Defendants' proposed theory of complete preemption. And in decision after decision, the Second Circuit has tethered the complete preemption doctrine to congressional intent and federal statutes, consistent with the Supreme

Court's admonition that "'the proper inquiry'" under that doctrine "'focuses on whether *Congress intended* the federal cause of action to be exclusive.'" *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 304 (2d Cir. 2004) (emphasis added) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003)); *see also, e.g.*, *Solomon*, 62 F.4th at 60 ("Complete preemption occurs when a federal statute preempts and replaces all state-law causes of action . . . .").

Here, however, Defendants have not argued—much less shown—that Congress "intend[ed] the complete preemption doctrine to apply" to the bodies of federal common law that they invoked in their removal notice, namely: the federal common law of interstate pollution and the federal common law of foreign affairs. *See Marcus*, 138 F.3d at 54. Instead, those two bodies of federal common law were created by the judiciary, not Congress. And so they "cannot *completely* preempt the [City's] state-law claims." *Boulder*, 25 F.4th at 1262.

### 2. No body of federal common law preempts the City's claims.

Even if federal common law could somehow completely preempt state law in the absence congressional authorization, Defendants' newly raised theory of complete preemption would still fail. That is because the City's claims fall far outside any cognizable body of federal common law— a conclusion reached by every court to address the question in a climate deception case.[3]

#### a. The federal common law of interstate pollution does not apply.

Defendants invoke the federal common law of interstate air pollution as a basis for removal. *See* NOR ¶¶ 28–41. That body of judge made law has been displaced by the Clean Air Act. *See Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) ("*AEP*"). And Defendants do not cite a single decision holding that congressionally displaced federal common law can singlehandedly

---

[3] *See, e.g.*, *Rhode Island*, 35 F.4th at 55–56; *Baltimore*, 31 F.4th at 201–202; *Minnesota v. Am. Petroleum Inst.*, 2021 WL 1215656, at *4–5 (D. Minn. Mar. 31, 2021); *D.C.*, 640 F. Supp. 3d at 102–03; *Massachusetts*, 462 F. Supp. 3d at 42–43.

create federal court jurisdiction. To the contrary, every court to consider that bespoke jurisdictional question in a climate deception case has reached the opposite conclusion. *See supra* 1 n.1.

In any event, the Supreme Court and the Second Circuit have only ever applied the federal common law of interstate pollution to cases that have the purpose and effect of regulating out-of-state pollution. *See, e.g.*, *AEP*, 564 U.S. at 421 ("Decisions of this Court . . . have approved federal common-law suits brought by one State to abate pollution emanating from another State."); *City of New York v. Chevron Corp.*, 993 F.3d 81, 93 (2d Cir. 2021) ("the City's lawsuit would regulate cross-border emissions").[4] And here, the City's CPL claims cannot regulate cross-border emissions of any sort. In terms of injunctive relief, the City seeks only to enjoin Defendants from engaging in deceptive advertising. *See* Compl. at 53. It does not request any court order to limit or stop Defendants from producing or selling their products. As for monetary relief, the City simply seeks civil penalties that will be assessed based on the number of CPL violations. *See id.* So, even assuming *arguendo* that these civil penalties could qualify as a form of "regulation," they would regulate—at most—Defendants' use of deceptive advertising to sell fossil fuels to the City's consumers. They would not prevent or discourage Defendants from selling fossil fuels or from using non-deceptive forms of advertising to promote those products. This lawsuit therefore falls far outside any previously recognized body of federal common law relating to interstate pollution.

---

[4] *See also City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 311 (1981) (seeking an order requiring "petitioners to eliminate all overflows and to achieve specified effluent limitations on treated sewage"); *Illinois v. City of Milwaukee*, 406 U.S. 91, 93 (1972) (similar); *New Jersey v. City of New York*, 283 U.S. 473, 476–77 (1931) (seeking "an injunction" that would "restrain[] the city from dumping garbage into the ocean or waters of the United States off the coast of New Jersey and from otherwise polluting its waters and beaches"); *New York v. New Jersey*, 256 U.S. 296, 298 (1921) (seeking to "permanently enjoin[]" defendant from "discharging . . . sewage" into the New York harbor); *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 236 (1907) (seeking "to enjoin the defendant copper companies from discharging noxious gas"); *Missouri v. Illinois*, 200 U.S. 496, 517 (1906) (seeking "to restrain the discharge of . . . sewage"); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987) ("the regulation of interstate water pollution is a matter of federal, not state, law"); *North Dakota v. Minnesota*, 263 U.S. 365, 371–72 (1923) (seeking "an order enjoining the continued use of [certain] ditches" that were overflowing with water, injuring farming area in neighboring state).

*City of New York* does not compel a different conclusion, but instead confirms that the federal common law of interstate air pollution is restricted to lawsuits that, "if successful, would operate as a *de facto* regulation on [transborder] emissions." 993 F.3d at 96. In that case, the City brought common-law claims for nuisance and trespass against certain oil and gas companies, "seeking to recover damages for the harms caused by global greenhouse gas emissions." *Id.* at 91. The City specifically defined the conduct giving rise to liability as "lawful commercial activity," namely: their lawful "production, promotion, and sale of fossil fuels." *Id.* at 87, 88 (cleaned up). Its complaint did "not concern itself with aspects of fossil fuel production and sale that are unrelated to emissions." *Id.* at 97. And the City reaffirmed this point in its opening brief to the Second Circuit, declaring that its "particular theory of the claims . . . assumes that Defendants' business activities have substantial social utility and does not hinge on a finding that those activities themselves were unreasonable or violated any obligation other than the obligation to pay compensation." Appellant Br. at 19, *City of New York*, Dkt. 89, 2018 WL 5905772, at *19 (Nov. 8. 2018).

In light of these representations, the Second Circuit concluded that the City's claims "would regulate cross-border emissions" because they "effectively impose[d] strict liability for the damages caused by fossil fuel emissions no matter where in the world those emissions were released (or who released them)." 993 F.3d at 93. Under that theory of liability, the Circuit reasoned, the defendants would need to "cease global production [of fossil fuels] altogether" if they "want[ed] to avoid all liability." *Id.* And that "ongoing liability . . . would no doubt compel the [defendants] to develop new means of pollution control." *Id.* (cleaned up). As a result, the Second Circuit concluded that the lawsuit before it was "no different" from earlier Supreme Court cases that applied federal common law to nuisance claims for the abatement of interstate pollution. *Id.* at 92.

Plainly, *City of New York* stands separate and distinct from the other climate deception cases remanded to state court, all of which seek to hold fossil fuel companies liable for damages caused by their use of *unlawful deception* to inflate the market for their fossil fuel products. *See supra* 1 n.1. And it stands miles apart from the City's CPL claims here, which do not even seek damages or any relief directed at the production or use of Defendants' products. Instead, this action requests civil penalties for false and deceptive statements. Moreover, if the City prevails on the merits of its CPL claims, Defendants would *not* need to "cease global production" of fossil fuels to "avoid all [future] liability." *City of New York*, 993 F.3d at 93. They would simply need to stop their deceptive marketing campaigns. As a result, Defendants' "ongoing liability" would *not*, in any way, "compel [them] to develop new means of pollution control." *Id.* (cleaned up). At the very most, the threat of CPL liability would encourage Defendants to develop new forms of advertising.

### b.    The federal common law of foreign affairs does not apply.

Defendants cannot shoehorn this case into the federal common law of foreign affairs. *See* NOR ¶ 42–60. In making those arguments, Defendants once again mischaracterize the Complaint as having the purpose and effect of "forc[ing] Defendants to reduce—if not eliminate—their fossil fuel production activities to achieve the City's preferred greenhouse gas emissions levels." *Id.* ¶ 46. Of course, the Complaint does not have anything to do with "preferred greenhouse gas emissions levels," which are immaterial to proving a CPL claim for deceptive advertising. And for the reasons already stated, holding Defendants liable for misrepresenting the climate impacts of their products and businesses does not regulate the extraction, production, or sale of fossil fuels. So long as Defendants refrain from engaging in deceptive advertising practices, they can sell as many and as much of their fossil fuel products as they want without risk of incurring liability under the CPL.

14

The City's lawsuit also has nothing to do with any "international treaties" or federal policies relating to "the prevention of global warming . . . energy production, economic growth, foreign policy, [or] national security." *Id.* ¶ 47 (cleaned up). Defendants' cited examples prove as much. The removal notice points to legislation, executive action, treaties, and comments made by government officials about "quotas" on petroleum imports, *id.* ¶¶ 48–49; "emergency oil stocks," *id.* ¶ 50; "international commitment[s] to reduce greenhouse gas emissions," *id.* ¶¶ 51, 53–55; "domestic gas production . . . and domestic crude oil production," *id.* ¶ 52; "lease[s]" on federal lands for oil and gas production, *id.* ¶ 52; and "sovereign liability and compensation schemes to address climate change on an international level," *id.* ¶ 57 (cleaned up).

But none of these supposed federal policies addresses the liability of private companies for making false and misleading statements about the climate impacts of their products and businesses. And the City's lawsuit is nothing like the foreign-affairs cases cited by Defendants. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 400–06 (1964) (applying act-of-state doctrine to claims that Cuba violated international law by expropriating sugar from a Cuban corporation owned primarily by United States residents); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 366 (2000) (concluding that a federal statute preempted state law that restricted state agencies from purchasing goods or services from companies doing business with the nation of Burma); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 420 (2003) (finding preemption because of a "clear conflict" between state law and executive agreements); *Republic of Philippines v. Marcos*, 806 F.2d 344, 354 (2d Cir. 1986) ("an action brought by a foreign government against its former head of state arises under federal common law because of the necessary implications of such an action for United States foreign relations"); *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 119 (2d Cir. 2010) (finding a "clear conflict" between state law and an express foreign policy of the United States).

### c.   The Court should not expand federal common law to encompass the City's claims.

This Court would need to expand the boundaries of federal common law to sustain Defendants' complete preemption theory. But before making such an expansion, "strict conditions must be satisfied" because "the cases in which federal courts may engage in common lawmaking are few and far between." *Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713, 716, 717 (2020). And here, Defendants cannot satisfy the two most basic requirements because they cannot show that "the operation of state law would (1) significantly conflict with (2) uniquely federal interests." *Empire*, 396 F.3d at 140 (cleaned up); *see also City of New York*, 993 F.3d at 90 (similar).

As in other climate deception cases, "there is no federal common law here because nothing about the allegations in th[is] lawsuit[] implicates interests that are uniquely federal." *Massachusetts*, 462 F. Supp. 3d at 43 (cleaned up). To the contrary, the City's claims for deceptive marketing fall squarely within fields that have been traditionally occupied and regulated by the states, including consumer protection, *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 150 (1963); "advertising," *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541–42 (2001); and "unfair business practices," *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989). Nor have they identified an "actual conflict" between the City's "false-advertising claims" and any federal interests "in regulating transboundary pollution" or "in foreign affairs." *D.C.*, 640 F. Supp. 3d at 102, 103 (cleaned up). That omission also "deals a fatal blow to [Defendants'] bid to base federal-question jurisdiction on federal common law." *Rhode Island*, 35 F.4th at 54–55 (cleaned up).

### D.   Federal common law does not supply the City with a federal remedy.

Finally, the Court must reject Defendants' new theory of complete preemption because the federal common law that supposedly preempts the City's CPL claims does not provide an alternative cause of action or remedy. As a precondition for complete preemption, the federal statute

at issue must create an "exclusive cause of action for the claim asserted [by the plaintiff] and also set forth procedures and remedies governing that cause of action." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 275 (2d Cir. 2005). It is not enough that the statute "preempts state law claims." *Briarpatch*, 373 F.3d at 304. For complete preemption to apply, the statute must "preempt[] state law *and* substitute a federal remedy for that law." *Solomon*, 62 F.4th at 60 (emphasis added).

Yet here, the federal common law that Defendants invoke does not provide plaintiffs with *any* federal cause of action or *any* federal remedy. As the Second Circuit explained in *City of New York*, the Clean Air Act extinguished any federal common law claims relating to domestic greenhouse gas emissions, 993 F.3d at 95, and federal common law does not "recognize" a "cause of action targeting emissions emanating from beyond our national borders," *id.* at 101. At most, then, that body of judge-made law "creates an immunity scheme" for defendants, preempting state law without providing an alternative federal remedy to plaintiffs. *Solomon*, 62 F.4th at 61. But "immunity has no bearing on complete preemption, which is a *jurisdictional* doctrine, not a preemption-defense doctrine." *Id.* And because Defendants' federal common law "does not provide *any* cause of action (let alone an exclusive, federal one)," *Martin v. Petersen Health Operations*, *LLC*, 2021 WL 4313604, at *7 (C.D. Ill. Sept. 22, 2021) (emphasis added), Defendants fail one of the most "basic requirement[s]" of the complete preemption doctrine, *Californians for Alternatives to Toxics v. N. Coast R.R. Auth.*, 2012 WL 1610756, at *9 (N.D. Cal. May 8, 2012).

## V.   FEDERAL OFFICER REMOVAL DOES NOT APPLY.

Defendants also continue to advance their theory of federal officer removal, even though it is foreclosed by the Second Circuit's decision in *Connecticut*. To invoke that removal statute, Defendants "must satisfy a three-pronged test," and the failure of any prong will destroy jurisdiction. *Connecticut*, 2023 WL 6279941, at *13. In this case, Defendants flunk all three prongs.

Indeed, this Court's analysis can start and end with *Connecticut*'s application of the nexus prong of federal officer jurisdiction. To satisfy that requirement, a defendant must show that it "performed the actions for which it is being sued 'under color of federal office'"—*i.e.*, "that the acts that form the basis for [a plaintiff's] suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Id.* at *13 (cleaned up). In *Connecticut*, as here, Exxon Mobil insisted it satisfied that requirement because it produced fossil fuels on government-leased land and supplied fossil fuels to the federal government and the military. *Compare id.* at *13–14, *with* NOR ¶¶ 72–156. The Second Circuit disagreed, explaining that those government-related acts had no "causal nexus" with "the alleged campaign of deception that form[ed] the basis of Connecticut's [consumer protection] claims." *Connecticut*, 2023 WL 6279941, at *14 (cleaned up). Indeed, there was "a total mismatch between the business practices that Exxon Mobil assert[ed] were subject to federal control and supervision (its actual production of fossil fuels) and the business practices of which Connecticut complain[ed] (its marketing and public-relations campaigns to assuage consumers' fears about the environmental impacts of those fossil fuels)." *Id.* The same is true here, where Defendants have premised federal officer removal on their production and sale of fossil fuels, but the City is suing them for deceptively marketing their products to consumers.

Defendants will argue that *Connecticut* applied an outdated version of the nexus standard, which they claim was relaxed by the Removal Clarification Act of 2011. *See* Jones Decl. Ex. B. But the Second Circuit has already considered that argument and rejected it. *See Connecticut*, 2023 WL 6279941, at *14 n.7. Contrary to Defendants' suggestions, the 2011 Act "did not radically change" the nexus prong of federal officer removal. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 295 (5th Cir. 2020). And like other circuits that have interpreted that prong "expansively," the Second Circuit has no need to modify its "causal nexus" test. *See id.* at 295 n.8. In any event, even

under a maximally "relaxed reading . . . of the [] nexus prong," Defendants' arguments fail, as courts have concluded in similar cases. *E.g.*, *Baltimore*, 31 F.4th at 233 (cleaned up). There is no "connection"—causal or otherwise—between the City's "claims and military fuel production, OCS operation, or participation in the strategic petroleum infrastructure." *Minnesota*, 63 F.4th at 715; *Rhode Island*, 35 F.4th at 53 n.6 (similar).

In any event, Defendants fail to show that they "acted under a federal officer"—a separate requirement of federal officer removal. *Connecticut*, 2023 WL 6279941, at *13. Indeed, the Second Circuit reached that same conclusion in *Connecticut* after reviewing the same categories of purported acting-under activities that Defendants present here:

- First, the Circuit rejected the claim that Exxon Mobil had acted under federal officers when it "lease[d] oil drilling sites from the federal government" or operated "the Strategic Petroleum Reserve Infrastructure," explaining that these "arms-length commercial transactions" could not create an acting-under relationship for removal purposes. *Compare id.* at *13, *with* NOR ¶¶ 114–18 (describing Defendants' fossil fuel leases and their operation of the Strategic Petroleum Reserve).

- Next, the panel disposed of Exxon Mobil's argument that "it ha[d] contributed significantly to the United States military by providing fossil fuels that support the national defense," explaining that the acting-under requirement demanded more than simply "help[ing] the government to produce an item that it needs." *Compare Connecticut*, 2023 WL 6279941, at *14, *with* NOR ¶ 80 (asserting that Defendants' fossil fuel production is critical to national security).

- Then, the Second Circuit refused to find an acting-under relationship based on Exxon Mobil's production activities during World War II, explaining that those activities all predated the deceptive conduct "alleged in Connecticut's complaint." *Compare Connecticut*, 2023 WL 6279941, at *14, *with* NOR ¶¶ 96–113 (describing Defendants' production activities during World War II and the Korean War).

- Finally, the Second Circuit disregarded Exxon Mobil's assertion that it "supplies fossil-fuel products to the military under exacting specifications established by the federal government," explaining that the "record contains no indication of the degree of [governmental] 'supervision' or 'control.'" *Compare Connecticut*, 2023 WL 6279941, at *14, *with* NOR ¶¶ 85–95 (asserting that Defendants sold specialized military fuels).

That analysis applies with equal force here, and it results in the same outcome.

Finally, Defendants do not "raise a colorable federal defense" and so cannot clear the third prong of federal officer removal. *Connecticut*, 2023 WL 6279941, at *13. In their notice of removal, Defendants cite a hodgepodge of federal defenses based on *res judicata*, the domestic and foreign commerce clauses, the foreign affairs doctrine, preemption, the First Amendment, and the due process clause. *See* NOR ¶¶ 150–55. None of those defenses can support federal officer removal, however, because none of them "arise out of [Defendants'] official duties." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008); *see also Honolulu*, 39 F.4th at 1110 (similar conclusion in climate deception case). That leaves Defendants' government contractor and immunity defenses. But as in other climate deception cases, "Defendants do not show that these defenses are colorable." *Honolulu*, 39 F.4th at 1110. On the government contractor defense, "they merely cite two cases that dealt with design defect claims, not [consumer protection] claims." *Id.*; *see also* NOR ¶¶ 150–51. As for the other immunity defenses, Defendants simply assert that "they are immune from liability" because they "produced oil and gas at the direction of the federal government." *Honolulu*, 39 F.4th at 1110 (cleaned up); NOR ¶ 151 (same). But those "conclusory statements and general propositions of law do not make [those] defenses colorable." *Honolulu*, 39 F.4th at 1110.

## VI.    FEDERAL ENCLAVE JURISDICTION DOES NOT EXIST.

Defendants advance the same theory of federal enclave jurisdiction that Exxon Mobil litigated, lost, and then abandoned on appeal in the *Connecticut* case. *See* 2021 WL 2389739, at *13. Indeed, that theory has been roundly rejected by every court to consider it in other climate deception cases.[5] This Court should do the same.

---

[5] *San Mateo*, 32 F.4th 733, 749–51; *Honolulu*, 39 F.4th at 1111–12; *Baltimore*, 31 F.4th at 217–19; *Rhode Island*, 35 F.4th at 58; *Boulder*, 25 F.4th at 1271–72; *Minnesota*, 2021 WL 1215656, at *10–11; *Honolulu*, 2021 WL 531237, at *8; *Baltimore*, 388 F. Supp. 3d at 565; *Rhode Island*, 393 F. Supp. 3d at 152; *Boulder*, 405 F. Supp. 3d at 974; *San Mateo*, 294 F. Supp. 3d at 939; *New Jersey*, 2023 WL 4086353, at *3 n.2; *D.C.*, 640 F. Supp. 3d at 106–07; *Oakland*, 2022 WL 14151421, at *4–5.

Federal question jurisdiction encompasses claims that "arose on" federal enclaves—*i.e.*, on military bases, federal facilities, and other lands obtained pursuant to the Enclaves Clause of Article I of the Constitution. *See San Mateo*, 32 F.4th at 748–49 (reviewing the "framework for federal enclave jurisdiction"). That jurisdictional grant is exceedingly "narrow[]," however. *Honolulu*, 39 F.4th at 1111. A claim generally arises on federal enclaves only when "*all* pertinent events take place on a federal enclave." *Boulder*, 25 F.4th at 1271 (cleaned up). At a bare minimum, the alleged misconduct or the alleged injuries must have "occurred entirely within a purported federal enclave." *D.C.*, 640 F. Supp. 3d at 107; *see also Baltimore*, 31 F.4th at 217–18 (jurisdiction does not apply "merely because *some* of Defendants' activities occurred on military installations").

That is not the case here. Indeed, the Complaint does not even reference a federal enclave, much less concern any events that occurred on those lands. Instead, the City "alleges that Defendants' false advertising affected consumers across the [City]." *D.C.*, 640 F. Supp. 3d at 107. Far, then, from being the "locus" in which the City's claims "arose," federal enclaves play no role in the Complaint. *Minnesota*, 2021 WL 1215656, at *11. And so in this case, as in other climate deception lawsuits, "it would require the most tortured reading of the Complaint[] to find [federal enclave] jurisdiction." *Honolulu*, 39 F.4th at 1111 (cleaned up).

In arguing otherwise, Defendants grossly misconstrue the City's claims. They insist that this lawsuit "necessarily sweeps in" Defendants' fossil fuel activities "on military bases and other federal enclaves" because "[t]he City's true aim is to halt Defendants' oil and gas operations and thereby reduce fossil-fuel emissions." NOR ¶ 172. But numerous courts have rightly disregarded similar mischaracterizations of other climate deception lawsuits. *See, e.g.*, *Honolulu*, 39 F.4th at 1111 (refusing "to recharacterize the claims from deceptive practices to activities on federal

enclaves").[6] And this Court should too. Once again, the City seeks to hold Defendants liable for violating the CPL by making statements and omissions that have "the capacity, tendency or effect of deceiving or misleading consumers" in the City. NYC Code § 20-701(a); *see also* Compl. ¶¶ 76–100 (causes of action). Although the *subject matter* of Defendants' deceptive advertising involves climate change, greenhouse gas emissions, and fossil fuels, that mundane fact does not magically transform this lawsuit into one that seeks to halt global fossil fuel production. To the contrary: if the City prevails on its CPL claims, Defendants will still be able to extract, produce, and sell as much fossil fuel as they can without any fear of incurring liability under the CPL.

Nor can Defendants manufacture federal enclave jurisdiction by vaguely asserting that some (unspecified) number of false and misleading advertisements were viewed by consumers on federal enclaves located within the City's borders. *See* NOR ¶ 173. "[F]ederal-question jurisdiction is not conferred merely because *some* of Defendants' activities occurred on military installations" or other federal enclaves. *Baltimore*, 31 F.4th at 217–18. Instead, "[t]he doctrine of federal enclave jurisdiction generally requires "that *all* pertinent events take place on a federal enclave." *Rhode Island*, 35 F.4th at 58 (cleaned up). If Defendants' theory were adopted, it would work "a sweeping change to the balance between the jurisdiction of state and federal courts," opening federal courthouses to "any case involving injuries that occur throughout a state, no matter how minor the injuries occurring on federal enclaves are in relation to the claims at issue." *Connecticut*, 2021 WL 2389739, at *13. That "overreaching" jurisdictional theory is untenable. *Baltimore*, 31 F.4th at 218; *see also Honolulu*, 39 F.4th at 1111.

---

[6] *See also Honolulu*, 2021 WL 531237, at *1 ("The principal problem with Defendants' arguments is that they misconstrue Plaintiffs' claims."); *Baltimore*, 31 F.4th at 234 n.23 ("But that is not how Baltimore has framed its claim."); *Connecticut*, 2021 WL 2389739, at *13 (rejecting ExxonMobil's "characterization of Connecticut's claims as targeting pollution"); *Minnesota*, 2021 WL 1215656, at *13 ("[T]he State's action here is far more modest than the caricature Defendants present."); *Baltimore*, 388 F. Supp. 3d at 560 ("This argument rests on a mischaracterization of the City's claims."); *Boulder*, 405 F. Supp. 3d at 969 ("Defendants mischaracterize Plaintiffs' claims."); *Massachusetts*, 462 F. Supp. 3d at 44 (criticizing "ExxonMobil's caricature of the complaint").

## VII.    FIRST AMENDMENT DEFENSES PROVIDE NO BASIS FOR REMOVAL.

The Court should also reject Defendants' farfetched theory that the First Amendment "injects affirmative federal-law elements" into the City's CPL claims and thereby satisfies the requirements of *Grable*. NOR ¶ 205. That theory—which Exxon Mobil raised in *Connecticut* but then abandoned on appeal—has been rejected by every court to consider it.[7] And for good reason: their First Amendment argument is nothing more than a thinly veiled "federal defense" that cannot support jurisdiction under the well-pleaded complaint rule. *Connecticut*, 2021 WL 2389739, at *10.

*Grable* is an "extremely rare exception" to the well-pleaded complaint rule that applies only when a state law claim (1) "necessarily raise[s]" a federal issue that is (2) "actually disputed," (3) "substantial," and (4) "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (cleaned up). Here, Defendants stumble at the very first prong of this test. As the Second Circuit explained in *Connecticut*, a claim necessarily raises a federal issue only if a question of federal law is "a *necessary element* of one of the well-pleaded state claims." 2023 WL 6279941, at *10 (cleaned up). Accordingly, Defendants "cannot establish *Grable* jurisdiction simply by gesturing toward ways in which 'this case' loosely 'implicates' [federal law]." *Id.* at *11. Instead, they "must point to a 'necessary element' of proving liability under [the CPL] claims that is affirmatively premised on [a] violation of—and could not be resolved without applying—[a federal law]." *Id.* (cleaned up).

This, Defendants cannot do. To make out a *prima facie* case of a CPL violation, the City must prove two elements: (1) that Defendants have engaged in "a deceptive or unconscionable trade practice," and (2) that those "practices involved consumer goods or services." *Polonetsky v. Better*

---

[7] *Hoboken*, 45 F.4th at 709; *Oakland*, 2022 WL 14151421, at *5; *Annapolis*, 2022 WL 4548226, at *9–10; *Hoboken*, 558 F. Supp. 3d at 205; *Charleston* Op. at 10 (Ex. A).

*Homes Depot*, 97 N.Y.2d 46, 52 (N.Y. 2001). Neither element references or otherwise incorporates the First Amendment; instead, both derive entirely from municipal law. *See id.*; *see also* NYC Code § 20-701 (defining "deceptive or unconscionable trade practices" and "consumer goods [and] services" without reference to federal law). To the extent, then, that the First Amendment ever becomes an issue in this case, it would be because Defendants have "affirmatively raised" it as a federal defense. *Tokhtaman v. Hum. Care, LLC*, No. 18-CV-5907 (VEC), 2018 WL 5447543, at *2 (S.D.N.Y. Oct. 29, 2018) ("Regardless of whether a court will 'necessarily' need to determine an issue, if the issue must be affirmatively raised by the defendant, then it is an affirmative defense, not an essential element of the plaintiff's claim."). After all, it is Defendants—not the City—who seek to invoke the First Amendment's protections. For that reason, courts in this Circuit and elsewhere have repeatedly rebuffed analogous attempts to remove state-law claims based on First Amendment protections. *See supra* 23 n.7.[8]

At any rate, even if the City's claims somehow necessarily raised Defendants' First Amendment rights, that federal issue would still flunk the last two prongs of *Grable*. As the Second Circuit has explained, "most federal law questions raised in connection with state law claims will not be deemed substantial" for jurisdictional purposes. *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1029 (2d Cir. 2014) (cleaned up). And Defendants' First Amendment defenses are no exception. In fact, because those defenses must be applied on an individual basis to each false and misleading statement alleged in the Complaint, they are exactly the type of "fact-bound" and "situation-specific" federal questions that are incapable of supporting *Grable* jurisdiction. *Qatar v.*

---

[8] *See also, e.g.*, *Troung v. Am. Bible Soc'y*, 171 F. App'x 898, 898 (2d Cir. 2006) ("First Amendment defenses . . . cannot establish federal question jurisdiction."); *Solucorp Indus., Ltd. v. Goldstein*, No. 11 CV 5920(VB), 2011 WL 7101063, at *2 (S.D.N.Y. Nov. 17, 2011) (similar); *Carey v. Ripp*, No. 2:17-cv-04899(ADS)(SIL), 2018 WL 1135553, at *2 (E.D.N.Y. Feb. 28, 2018) (similar); *Children's Vill. v. Greenburgh Eleven Teachers' Union Fed'n of Teachers, Local 1532*, 867 F. Supp. 245, 247 (S.D.N.Y. 1994) (similar).

*First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 419 (S.D.N.Y. 2020); *see also Oakland*, 969 F.3d at 907 ("[A] state-law claim that is 'fact-bound and situation-specific' is not the type of claim for which federal-question jurisdiction lies.").

If adopted, moreover, Defendants' theory of First Amendment jurisdiction would upend the federal-state balance approved by Congress, in violation of *Grable*'s fourth requirement. "State courts routinely hear libel, slander, and misrepresentation cases involving matters of public concern." *Hoboken*, 45 F.4th at 709. Yet under Defendants' theory, the First Amendment would extend federal jurisdiction to all of those cases, simply because the U.S. Constitution imposes some "limits [on] state laws that touch speech." *Id.*; *Annapolis*, 2022 WL 4548226, at *9 ("[I]t would dramatically expand *Grable* to conclude that any state tort claim involving speech on matters of public concern could invoke federal court jurisdiction."). That cannot be what Congress intended.

Not surprisingly, then, Defendants "cite no authority for the proposition that the First Amendment—through *Grable* jurisdiction—converts state law causes of action involving speech into federal causes of action for purposes of assessing jurisdiction." *Oakland*, 2022 WL 14151421, at *5. Instead, they point to cases where federal court jurisdiction was not at issue because diversity jurisdiction existed, *see Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 48 (1988); because bankruptcy jurisdiction existed, *see In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 761–62 (S.D. Tex. 2005); or because the case was litigated to judgment in state court and then reviewed by the Supreme Court after state court appeals, *see N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 256 (1964) (Alabama); *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 6–8 (1990) (Ohio); *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 770–71 (1986) (Pennsylvania); *see also Nat'l Rev., Inc. v. Mann*, 140 S. Ct. 344, 345 (2019) (Alito, J., dissenting from denial of certiorari) (D.C.). None of Defendants' authorities support their radical theory that a defendant's First Amendment rights can

render removable any state-law claim that allegedly concerns "speech . . . [on] a subject of national and international importance." NOR ¶ 207. Accordingly, the Court should reject Defendants' attempts to manufacture *Grable* jurisdiction out of their supposed First Amendment defenses.

## VIII.   THERE IS NO FRAUDULENT JOINDER.

Next, Defendants argue fraudulent joinder on the theory that the City has "no real interest in gaining a judgment against" ExxonMobil Oil Corporation ("EMOC"), an in-state Defendant. NOR ¶ 181. But they cannot satisfy their "heavy burden" of showing "outright fraud" by "clear and convincing evidence." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). The Court must therefore reject their assertion of fraudulent joinder, just as another court recently did in a similar climate deception case. *See Charleston* Op. at 10–12 (Jones Decl. Ex. A).

The Second Circuit recognizes two paths by which a defendant can establish diversity jurisdiction based on fraudulent joinder: (1) by showing there has been "outright fraud committed in the plaintiff's pleadings," or (2) by showing "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461. Defendants expressly disavow the second path. *See* Dkt. 47 at 15 (confirming that the no-possibility prong is "not at issue here"). That comes as no surprise because federal courts must apply the pleading standards of the forum state when evaluating fraudulent joinder. *See Fayet v. Target Corp.*, No. 20-CV-3191-LTS-KHP, 2021 WL 706332, at *5 (S.D.N.Y. Feb. 22, 2021). And the City's allegations against EMOC easily clear New York's standard, which is "more lenient" than its federal counterpart and which "requires only that a complaint plead facts with sufficient particularity to give the court and parties notice of the transactions [or] occurrences . . . intended to be proved and the material elements of each cause of action." *Shanahan v. Kolmar Labs., Inc.*, No. 18-CV-8317 (JMF), 2019 WL 935164, at *1 (S.D.N.Y. Feb. 26, 2019) (cleaned

up). The City alleges that EMOC markets gasoline to City consumers, makes false and misleading statements about the climate impacts of its products, and is therefore subject to CPL liability for deceptive trade practices. *See* Compl. ¶¶ 11(d)–(l), 31, 76–92. Because these allegations plainly state a claim under New York law, Defendants rightly disclaim the no-possibility prong.

They do not come close, moreover, to meeting the outright fraud prong. To carry that "heavy burden," Defendants "must establish by clear and convincing evidence that [the City's] pleadings contain some false set of facts." *Rosenfeld v. Lincoln Life Ins. Co.*, 239 F. Supp. 3d 636, 639 (E.D.N.Y. 2017) (cleaned up). Yet here, Defendants do not argue—much less demonstrate through evidence—that any of the allegations in the Complaint are false. And that omission is fatal to their assertion of outright fraud, as courts in this Circuit have long recognized. *See, e.g.*, *Bronx Dough, LLC v. Dunkin' Donuts, Inc.*, No. 03 CIV.1398 DC, 2004 WL 112880, at *2 (S.D.N.Y. Jan. 23, 2004) (no outright fraud where the defendant had "not asserted that the factual allegations are fraudulent in the sense that [the plaintiff] knew they were false"); *Rosenfeld*, 239 F. Supp. at 639 (no outright fraud even though the defendant provided "pages and pages" of deposition testimony that supposedly contradicted the complaint's allegations); *Marathon CRE 2018-FL1 Issuer, Ltd. v. 257-263 W 34th St. LLC*, No. 22 CIV. 1991 (KPF), 2023 WL 1815195, at *7 (S.D.N.Y. Feb. 7, 2023) ("[M]ere discrepancies or mistakes do not demonstrate fraud in the pleadings . . . .").

Unable to provide any evidence of false pleading, Defendants resort to speculation and conjecture, asserting—without support—that the City named EMOC as a defendant "in the hopes of staying out of federal court and evading the preclusive effect" of *City of New York*. Dkt. 47 at 10. However, a plaintiff's "subjective motive" is "irrelevant to the fraudulent joinder analysis in this Circuit." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 3776385, at *3 (S.D.N.Y. June 17, 2015). And in any event, there is a simple and perfectly

innocuous explanation for why the City sued EMOC in this action but not in *City of New York*: the two lawsuits target different types of misconduct that implicate different defendants. As explained above, *City of New York* sought to recover damages under tort law for physical climate harms caused by the defendants' "lawful" "production, promotion, and sale of fossil fuels." 993 F.3d at 87–88 (cleaned up). By contrast, this lawsuit seeks to recover civil penalties under the CPL for Defendants' unlawful advertising, which deceptively exaggerates their investments in clean energy and falsely portrays their fossil fuel products as environmentally friendly. *See* Compl. ¶¶ 1–9. There is nothing improper—much less fraudulent—in naming different defendants in different lawsuits.

In suggesting otherwise, Defendants point to the strength of their purported *res judicata* defense. But the merits of that defense bear on the no-possibility prong of fraudulent joinder, which Defendants have already disclaimed. *See Briarpatch*, 373 F.3d at 302–03 (finding no fraudulent joinder under the "no possibility" standard based on a *res judicata* defense). They are not relevant to the outright fraud prong, which—as Defendants have recognized—instead requires proof of "actual fraud" in the pleadings. Dkt. 47 at 14. Regardless, *res judicata* does not apply where, as here, the two suits name different defendants, allege different causes of action, target different types of misconduct that occurred during different periods of time, and seek different forms of relief. *See Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100 (N.Y. 2005) (applying a "pragmatic" test that considers "whether the facts [of the two actions] are related in time, space, origin, or motivation"); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) ("[A] claim arising subsequent to a prior action is not barred by *res judicata* even if the new claim is premised on facts representing a continuance of the same course of conduct." (cleaned up)). As a result, that purported defense cannot give rise to fraudulent joinder. *See Castillo v. BJ's Wholesale Club*, 645 F. Supp.

3d 85, 90 (E.D.N.Y. 2022) ("[A]ny possibility of recovery, even if slim, militates against a finding

of fraudulent joinder; only where there is no possibility of recovery is such a finding warranted.").

Taking another swing in the wrong direction, Defendants insist that the City committed

outright fraud by referring to EMOC and its parent company (Exxon Mobil) collectively as

"ExxonMobil" in the Complaint. NOR ¶ 184. But that argument goes to the sufficiency of the

pleadings, not the existence of fraud. And even if Defendants had not disclaimed the no-possibility

prong of fraudulent joinder, "there is no flaw in a pleading where collective allegations are used to

describe the actions of multiple defendants who are alleged to have engaged in precisely the same

conduct." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018)

(cleaned up). Here, the Complaint alleges that EMOC and its parent company "committed the same

wrongful acts," *id.*, namely: deceptive greenwashing. *See* Compl. ¶¶ 11(d)–(l), 31, 76–92. To the

extent, then, that the Complaint contains collective allegations, those allegations are entirely proper.

As for Defendants' cited cases, none support their theory of fraudulent joinder. In fact, with

one exception, none of those cases even applied the outright fraud prong; instead, they were

resolved under the no-possibility prong that Defendants have disavowed here. *See In re Briscoe*,

448 F.3d 201, 219–20 (3d Cir. 2006); *Briarpatch*, 373 F.3d at 302; *Pampillonia*, 138 F.3d at 461–

62. Defendants do not dispute, moreover, that the joinder of EMOC bears zero resemblance to "the

egregious level of fraud described in *Rodriguez*," the only outright-fraud case they cite. *See* Dkt.

47 at 14 (citing *Rodriguez v. Casa Chapa S.A. de C.V.*, 394 F. Supp. 2d 901 (W.D. Tex. 2005)).

Nor could they seriously argue otherwise. In *Rodriguez*, the court found that the plaintiffs had

committed "actual fraud" because (1) they "l[ied] to the defendants about the representation of the

[fraudulently joined defendant]," (2) the "same attorneys" represented both the plaintiffs and the

fraudulently joined defendant, and (3) there was "overwhelming" evidence that the plaintiffs "had

no real interest in gaining judgment against the [fraudulently joined defendant]," as confirmed by the plaintiffs' failure to serve any discovery on the fraudulently joined defendant and their failure to seek default judgment after that defendant failed to answer the complaint. 394 F. Supp. 2d at 908. Far, then, from helping Defendants, *Rodriguez* confirms that the City's case bears no resemblance to a lawsuit that could satisfy the outright fraud standard of fraudulent joinder.

## IX.   THIS CASE IS NOT REMOVABLE UNDER CAFA.

Equally frivolous is Defendants' invocation of CAFA jurisdiction. This lawsuit does not qualify as a "class action" within the meaning of that statute, as every court to consider the question has concluded in similar climate deception cases.[9]

CAFA applies only to "class action[s]," which the statute defines as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure." 28 U.S.C. § 1332(d)(1)(B). In applying CAFA's similarity test, courts examine the particular law under which the case was filed and ask whether that law "imposes any of the familiar hallmarks of Rule 23 class actions; namely, adequacy of representation, numerosity, commonality, typicality, or the requirement of class certification." *Purdue Pharma*, 704 F.3d at 216. At a minimum, the law that authorizes a plaintiff's suit must "provide a procedure by which a member of a class whose claim is typical of all members of the class can bring an action not only on his own behalf but also on behalf of all others in the class." *Id.* at 217.

Defendants do not attempt to identify any overlap between the requirements for bringing a CPL claim and those for pursuing a Rule 23 class action. Nor could they because, "[p]rocedurally, Rule 23 and the [CPL] are entirely different beasts." *LG Display Co. v. Madigan*, 665 F.3d 768,

---

[9] *See Minnesota*, 63 F.4th at 716–17; *D.C.*, 640 F. Supp. 3d at 111–12; *Hoboken*, 558 F. Supp. 3d at 209; *Massachusetts*, 462 F. Supp. 3d at 47–51; *Minnesota*, 2021 WL 1215656, at *11–12; *see also Delaware*, 578 F. Supp. 3d at 627 n.6 (asserting and then abandoning CAFA arguments).

772 (7th Cir. 2011) (reaching similar conclusion about antitrust claims brought by the Illinois Attorney General). The CPL grants the City the power to sue for civil penalties and injunctive relief "[w]henever any person has engaged in [deceptive trade practices]." NYC Code § 20-703(d)–(e). Beyond that, the CPL does not impose any procedural requirements on the City's authority to bring CPL claims, much less any of the "core requirements" for a Rule 23 class action. *See Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 833, 836 (6th Cir. 2020) (rejecting CAFA jurisdiction over a "representative action" brought under Michigan's Consumer Protection Act, even though the Act expressly labeled the action as a "class action"). More damaging still for Defendants, the statute provides no mechanism for a class member to bring a "typical" claim on behalf of a class. *See Purdue Pharma*, 704 F.3d at 217 (describing this mechanism as the "minimum" requirement of a CAFA class action). Instead, the City is "authorized to file suit independently of any consumer complaints." *W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 176 (4th Cir. 2011). The City need not even "demonstrate standing through a representative injury" to bring a CPL claim, one of the most basic requirements of serving as a class representative. *Purdue Pharma*, 704 F.3d at 217; *see also* NYC Code § 20-703(j) ("To establish a cause of action under this section it need not be shown that consumers are being or were actually injured.").

Rather than applying the Second Circuit's similarity test for CAFA actions, Defendants insist that CAFA applies simply because the City's CPL claims seek to protect the interests of its consumers. *See* NOR ¶¶ 195–96. But that line of argument is squarely foreclosed by the Second Circuit's decision in *Purdue Pharma*. There, Kentucky filed state-law claims against various pharmaceutical companies, alleging that the defendants violated its consumer protection statute (among others) by misleading consumers about the addiction risks of opioids. 704 F.3d at 210–11. In a bid to squeeze the lawsuit into CAFA's definition of a class action, the defendants insisted that

the State was "acting, in effect, as a disguised class representative" because it had sued in its capacity as *parens patriae* and sought restitution for prescription costs incurred by injured consumers. *Id.* at 217. The Second Circuit disagreed. Declining the defendant's invitation to "look past the pleadings" and "deduce the true nature of this proceeding," the Circuit instead focused on the statutes that authorized the State's claims. *Id.* at 217, 220. And because it concluded that none of these statutes "impose[d] any of the familiar hallmarks of Rule 23 class actions," the Second Circuit rejected the defendants' assertion of CAFA jurisdiction. *Id.* at 216. That conclusion also applies to the CPL, which "bears little similarity to Rule 23." *Minnesota*, 63 F.4th at 716 (rejecting CAFA jurisdiction over climate deception lawsuit).

Defendants, for their part, identify no case that even remotely supports their position that CAFA permits removal whenever a civil action protects or implicates the interests of consumers. In passing, they cite the Seventh Circuit's decision in *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740 (7th Cir. 2013), and the Eighth Circuit's decision in *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891 (8th Cir. 2017). Both cases are distinguishable, however, because they involved plaintiffs whose authority to bring suit depended on them being representatives in a prior class action. *See Addison*, 731 F.3d at 742; *Williams*, 845 F.3d at 900. And so the decisions are consistent with the settled law of those two circuits, both of which unambiguously reject CAFA jurisdiction where—as here—the law authorizing the suit "does not impose any of the familiar Rule 23 constraints." *LG*, 665 F.3d at 772; *see also Minnesota*, 63 F.4th at 717.

Defendants' remaining citations are also facially inapposite. As other courts have rightly concluded, *Song v. Charter Commc'ns, Inc.*, 2017 WL 1149286 (S.D. Cal. Mar. 28, 2017), sheds no light on CAFA jurisdiction. *See D.C.*, 640 F. Supp. 3d at 112; *Minnesota*, 2021 WL 1215656, at *12 n.7. Indeed, the court there offered no jurisdictional analysis whatsoever, which is unsurprising

given that the plaintiff had not yet moved to remand. *See Song*, 2017 WL 1149286, at *1 n.1. And *New Jersey Carpenters Vacation Fund v. HarborView Mortgage Loan Trust 2006-4*, 581 F. Supp. 2d 581 (S.D.N.Y. 2008), is even less relevant. There, the plaintiff expressly brought a "putative class action" and never argued that its suit fell outside of CAFA's definition of a class action; instead, it argued that remand was required by the 1933 Securities Act's anti-removal provision. *Id.* at 582. Likewise, the plaintiff in *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84–85 (2014), avowedly "filed a putative class action," and the question there was whether the amount in controversy exceeded $5 million. Those cases, like *Song*, lend no support to Defendants' unbounded definition of a CAFA class action.

That leaves Defendants' misguided appeals to CAFA's "legislative purposes." NOR ¶ 201. In passing CAFA, Congress was concerned primarily with ensuring federal court review of class actions that spanned multiple states, raised issues of "national importance," and threatened to "adversely affect[] interstate commerce." Pub. L. No. 109-2, 119 Stat. 4 § 2 (2005). That prototypical CAFA action bears no resemblance to the City's CPL claims, which invoke New York City law to protect New York City consumers from false and misleading advertisements that Defendants directed at New York City residents in New York City. Because the City's claims focus on "primarily local matters" that CAFA has "reserv[ed] to the States" out of respect for the Nation's "deeply-rooted principles of federalism," CAFA's legislative purposes support remand of this case to state court. *McGraw*, 646 F.3d at 178; *see also In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 354 F. Supp. 3d 1122, 1124 (N.D. Cal. 2019) ("[W]hen an action has been brought by a state or one of its officials or subdivisions, the need to resolve doubts against the exercise of federal jurisdiction is particularly acute.").

## X.   DEFENDANTS' CONTINUED OPPOSITION TO REMAND IS OBJECTIVELY UNREASONABLE.

Pursuant to Section 1447(c), the City requests that this Court award costs and expenses incurred by the City in responding to Defendants' objectively unreasonable removal arguments. Congress enacted that fee-shifting provision to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). Courts award fees when "the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. And even when an objectively reasonable basis exists, a court may still award fees in its discretion, if its reasons for doing so are "faithful to the purposes of awarding fees under Section 1447(c), which include disincentivizing actions that delay resolution of the case, impose additional costs on both parties, and waste judicial resources." *CMGRP, Inc. v. Agency for the Performing Arts, Inc.*, 689 F. App'x 40, 41 (2d Cir. 2017) (cleaned up); *see also Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011) (same).

Here, Defendants' removal was objectively unreasonable. Defendants continue to assert removal grounds that were either abandoned in *Connecticut*, squarely rejected by *Connecticut*, or uniformly dismantled by courts around the country. And their removal notice grossly mischaracterizes the City's claims as seeking to regulate greenhouse gas emissions, when it is apparent from the face of the Complaint that this action cannot do anything of the sort. *See Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 474 (S.D.N.Y. 2006) (awarding fees where the defendant "mischaracterize[d] the substance of the [Plaintiff's] Complaint"); *Owen v. Stokes*, 2020 WL 127552, at *2 (D. Nev. Jan. 10, 2020) (same). Worse still, their notice of removal does not grapple at all with the "parade of recent opinions" rejecting the removal of other climate deception lawsuits. *City of New York*, 993 F.3d at 93. Instead, Defendants opt for "the ostrich-like tactic of pretending that potentially dispositive authority against [their] contention[s] does not

exist." *Moses v. Martin*, 360 F. Supp. 2d 533, 546 n.74 (S.D.N.Y. 2004) ("Courts do not approve [of that tactic]."). On top of all that, Defendants waste the time and resources of the City and this Court by offering hundreds of pages of exhibits in support of removal arguments that have been rejected by two dozen different courts.

In these unusual circumstances, "it would be unfair to require either [the City] or [its] counsel to absorb the cost of litigating the remand motion." *Greenidge v. Mundo Shipping Corp.*, 60 F. Supp. 2d 10, 12 (E.D.N.Y. 1999). And the Court should not "casually overlook[]" Defendants' efforts to "[r]ehash[] th[e] same issue[s] endlessly." *Wilson v. Ethicon Women's Health & Urology*, 2014 WL 1900852, at *3–5 (S.D.W. Va. May 13, 2014) (awarding costs and fees for improper removal). Nor should it let Defendants get away with "fail[ing] to address the governing law or accurately represent the factual allegations of the Complaint." *Kuperstein*, 457 F. Supp. 2d at 474. Numerous courts have called out Defendants for their mischaracterizations of the plaintiffs' claims in climate deception cases. *See supra* 22 n.6. Yet Defendants continue to disregard those warnings, as evident by their distortions of the Complaint. This conduct must stop. The Court should therefore uphold the core purposes of Section 1447(c) by awarding fees that will disincentivize Defendants from taking future actions that "delay resolution of the case, impose additional costs on both parties, and waste judicial resources." *CMGRP*, 689 F. App'x at 41.

## XI.   CONCLUSION

Defendants' leading theories of removal are precluded by the Second Circuit's decision in *Connecticut*, and the rest have been washed away by an ocean of judicial authority remanding similar climate deception cases to state court. The Court should therefore grant the City's renewed motion to remand, award the City costs and fees, and return this municipal-law action to New York state court, where it was filed and where it belongs.

Dated:  October 20, 2023                         Respectfully submitted,

**Hon. Sylvia O. Hinds-Radix**
**Corporation Counsel of**
**the City of New York**

_/s/ Hilary Meltzer_
Hilary Meltzer
  Chief, Environmental Law Division
Alice R. Baker
Tess Dernbach
Nathan Taylor
  Assistant Corporation Counsel
100 Church Street
New York, New York 10007
Tel: (212) 356-2072
Email:  hmeltzer@law.nyc.gov
            albaker@law.nyc.gov
            tdernbac@law.nyc.gov
            ntaylor@law.nyc.gov

**SHER EDLING LLP**

 _/s/ Matthew K. Edling_
Matthew K. Edling
Victor M. Sher (_pro hac vice_)
Michael H. Burger
Katie Jones (_pro hac vice_)
Quentin C. Karpilow (_pro hac vice_)
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
Tel:    (628) 231-2500
Fax:    (628) 231-2929
Email: matt@sheredling.com
            vic@sheredling.com
            michael@sheredling.com
            katie@sheredling.com
            quentin@sheredling.com

_Attorneys for Plaintiff City of New York_

36

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 20th day of October, 2023, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

*/s/ Matthew K. Edling*_____

Matthew K. Edling
