USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/8/24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
THE CITY OF NEW YORK,                          :
                                               :
                              Plaintiff,       :
                                               :           21-CV-4807 (VEC)
             -against-                         :
                                               :           OPINION
EXXON MOBIL CORPORATION, EXXON                 :
MOBIL OIL CORPORATION, ROYAL DUTCH             :
SHELL PLC, SHELL OIL COMPANY, BP               :
P.L.C., BP AMERICA INC., and AMERICAN          :
PETROLEUM INSTITUTE,                           :
                                               :
                              Defendants.      :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

     The City of New York (the "City") sued Exxon Mobil Corporation, other fossil fuel

companies, and their top trade association ("Defendants") in state court for violations of the

City's Consumer Protection Law ("CPL"), New York City Administrative Code ("N.Y.C.

Code") §§ 20-700 *et seq.  See* Not. of Removal ("Compl."), Dkt. 1-5.[1]  Defendants removed the

case to federal district court, and the City moved for remand.  *See* Pl. Mot., Dkt. 37.  Defendants

opposed the motion.  Defs. Opp., Dkt. 47.  This case was then stayed for approximately two

years while a remand order entered in the substantively-similar case that had been filed by the

State of Connecticut was unsuccessfully appealed by Exxon Mobil.  *See* Nov. 12, 2021 Order,

Dkt. 58.  Upon the Circuit's decision in the Connecticut case, *Connecticut v. Exxon Mobil Corp*.,

83 F.4th 122 (2d Cir. 2023) ("*Connecticut*"), this Court lifted the stay and denied the motion for

remand without prejudice to allow the parties to re-brief the issue with the benefit of the Circuit's

decision in *Connecticut.  See* Oct. 4, 2023 Order, Dkt 63.  The City again moved to remand the

---

[1]     This case is one of many similar cases filed throughout the country using consumer protection laws as a
way to hold fossil fuel companies responsible for their role in climate change.

case to state court, Pl. Mot., Dkt. 68, and, in a never-say-die move, Defendants again opposed. Defs. Opp., Dkt. 72.  For the reasons discussed below, the City's Motion to Remand is GRANTED, and the City's request for costs and fees is GRANTED in part.

## BACKGROUND

### A.  Allegations in the Complaint

The City commenced this action on April 22, 2021, alleging that Defendants "have systematically and intentionally misled consumers in New York City [] about the central role their products play in causing the climate crisis."  Compl. ¶ 2.  Such conduct, the City argues, violates the CPL.  *Id*. ¶ 9.  The Complaint alleges that Defendants misled consumers about the impact of their products on the climate and falsely represented themselves as corporate leaders in the fight against climate change. *Id*. ¶¶ 5–6.  Plaintiff alleges that Defendants' failure to disclose the climate risks associated with use of their products deprived consumers of information related to the consequences of their purchasing decisions.  *Id*. ¶ 19.  According to the Complaint, Defendants use "greenwashing advertisements" to represent falsely that they are "environmentally responsible companies developing innovative green technologies and products," when, in truth, Defendants' investment in clean energy sources is allegedly "miniscule," and their business models are based on pushing the consumption of fossil fuels.  *Id*. ¶ 20.

The City brings three causes of action: Counts One and Two allege deceptive trade practices in violation of the CPL against ExxonMobil, Shell, and BP, and Count Three alleges the same against Defendant American Petroleum Institute, the top trade association for oil companies.  *Id*. ¶¶ 76–100.  As relief, the City seeks to enjoin Defendants from violating the CPL, civil penalties, attorneys' fees, and costs.  *Id*. at 53–54.

### B. Procedural History

On May 28, 2021, Defendants removed this case to federal court. *See* Not. of Removal, Dkt. 1. Defendants' notice of removal asserted seven bases for federal jurisdiction, one of which has since been abandoned: (1) the City's claims arise under federal common law because they implicate transboundary pollution and foreign affairs; (2) the action falls under the federal officer removal statute, 28 U.S.C. § 1442(a)(1); (3) Defendants' production and sale of fossil fuels occur on "federal enclaves;" (4) the Court has diversity jurisdiction over the action under the fraudulent joinder doctrine; (5) the action is removable under the Class Action Fairness Act, 28 U.S.C. § 1332(d); and (6) the City's claims include federal constitutional elements.[2]

On June 25, 2021, the City moved to remand the action to state court. *See* Pl. Mot., Dkt. 37. Defendants opposed the motion. *See* Defs. Opp., Dkt. 47. On November 12, 2021, this Court stayed the action pending the Second Circuit's decision in *Connecticut v. Exxon Mobil Corp.*, No. 21-1446, a case similar to this action, in which Connecticut sued one of the defendants in this case claiming that it had violated Connecticut's unfair trade practices statute. *See* Nov. 12, 2021 Order. On September 27, 2023, the Second Circuit affirmed the district court's decision to remand the case to state court. *Connecticut*, 83 F.4th at 147. The City requested that the Court lift the stay in this action and decide its pending motion to remand. *See* Dkt. 62. The Court lifted the stay, denied the City's motion to remand without prejudice with leave to refile in light of the decision in *Connecticut*. *See* Oct. 4, 2023 Order. The City filed the instant motion to remand on October 20, 2023. *See* Pl. Mot. Defendants oppose the motion. *See* Defs. Opp.

## DISCUSSION

### I.     The City's Motion to Remand is Granted

#### A.  Legal Standard

The federal removal statute allows a defendant to remove to federal court "any civil

action brought in a State court of which the district courts of the United States have original

jurisdiction." 28 U.S.C. § 1441(a).  A motion to remand for lack of subject matter jurisdiction

may be brought at any time while the action is pending in federal court, pursuant to 28 U.S.C. §

1447(c).  The removing party bears the burden of establishing the propriety of removal.  *Cal.*

*Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004).  Removal jurisdiction

must be "strictly construed," *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and

"there is a presumption against removal," *Harraz v. EgyptAir Airlines Co.*, No. 18-cv-12364,

2019 WL 6700946, at *2 (S.D.N.Y. Dec. 9, 2019).  "[O]ut of respect for the limited jurisdiction

of the federal courts and the rights of states," *In re Methyl Tertiary Butyl Ether ("MTBE")*

*Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007), federal courts must "resolv[e] any doubts

against removability," *Connecticut*, 83 F.4th at 132 (citation omitted).

#### B.  Removal and Federal Court Jurisdiction

The "well-pleaded complaint rule" provides that federal question jurisdiction "exists only

when a federal question is presented on the face of the plaintiff's properly pleaded complaint."

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The artful pleading doctrine is said to be

a corollary to the well-pleaded complaint rule.  Under the artful pleading doctrine, a plaintiff

---

2       Defendants abandoned their argument that the Court has federal question jurisdiction because the action
falls under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b).  Defendants concede that
*Connecticut* forecloses their argument based on OCSLA.  *See* Decl. of Katie Jones ("Jones Decl."), Ex. B. at 1, Dkt.
69–1.

cannot defeat federal question jurisdiction by pleading its complaint as if it "arises under state law where the plaintiff's suit is, in essence, based on federal law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005) (citation omitted).  Conversely, federal question jurisdiction cannot be created "on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc.*, 482 U.S. at 393.

In *Connecticut*, the Second Circuit reaffirmed that there are only three circumstances in which a complaint that does not allege a federal claim may nevertheless "arise under" federal law for purposes of removal: "(1) if Congress expressly provides, by statute, for removal of state-law claims; (2) if the state-law claims are completely preempted by federal law; and (3) in certain cases if the vindication of a state-law right necessarily turns on a question of federal law." *Connecticut*, 83 F.4th at 133 (cleaned up) (citing *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014)).

### 1.   Federal Common Law

Defendants argue that this action is removable because the City's claims are completely preempted by federal common law that governs claims based on transboundary pollution and federal common law that implicates foreign affairs. Defs. Opp. at 15–19.  In *Connecticut*, the Second Circuit reaffirmed that "a federal cause of action" must "completely preempt[] a state cause of action" to "trigger the potent legal fiction that 'any [state-law] complaint that comes within the scope of th[at] federal cause of action necessarily 'arises under' federal law." 83 F.4th at 137 (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal. et al.*, 463 U.S. 1, 24 (1983)).  The Second Circuit rejected the defendant's argument that Connecticut's claims arose under federal common law, finding that the State's unfair trade practice claims had

"absolutely nothing to do with" the federal common law of transboundary pollution, *id.* at 142, and, further, that the defendant's argument that Connecticut's allegations necessarily implicate foreign policy and national security "is not grounds for federal jurisdiction," *id.* at 140 n.6 (citation omitted).  The City's CPL claims similarly have "absolutely nothing to do with" the federal common law of transboundary pollution or foreign affairs, and, accordingly, are not preempted by federal common law.

Defendants nonetheless argue that there is complete preemption of Plaintiff's claims.[3] Complete preemption occurs when federal law "preempts and replaces all state-law causes of action so 'a claim which comes within the scope of that [federal] cause of action, even if pleaded in terms of state law, is in reality based on federal law.'"  *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 60 (2d Cir. 2023) (citing *In re WTC Disaster Site*, 414 F.3d 352, 372 (2d Cir. 2005)).  In other words, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded

---

[3]      In *Connecticut*, the defendant conceded that its "invocation of federal common law [wa]s *not* an argument for complete preemption," *id.* at 138, and the Circuit reserved judgment on "whether federal common law can *ever* give rise to complete preemption or otherwise convert state claims into federal claims in the same manner as complete preemption under federal statutes," *id.* at 138 n.4 (cleaned up).

The City contends that Defendants' argument that federal common law completely preempts the City's municipal law claims is untimely, as Defendants did not assert this argument in their notice of removal or in their opposition to the City's first motion to remand.  Pl. Mem. of Law at 7–8.  *See also* 28 U.S.C. § 1446(b)(3) ("a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading"); *Bernadin v. Am. Airlines, Inc.*, No. 08-cv-1774, 2009 WL 1910964, at *3 (E.D.N.Y. July 1, 2009) (citation omitted) ("[a] notice of removal may not be untimely amended to add a new avenue of jurisdiction"). The City argues that because Defendants never pled complete preemption as a ground for removal and only did so in their current opposition to remand and in response to *Connecticut*, the Court should hold the argument was waived. Pl. Mem. of Law at 8 (citing *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 924 (S.D.N.Y. 1995)).

Although the Second Circuit did not address complete preemption by federal common law in *Connecticut*, it indicated in *dicta* that, but for the defendant's concession that it was not raising complete preemption (which Defendants have not conceded in this action), the Court would have held that the notice of removal "would squarely present the question" of whether federal common law can give rise to complete preemption.  83 F.4th at 138 n.4. Because Defendants' Notice of Removal in this case is essentially identical to the Notice of Removal in *Connecticut*, the Court finds that Defendants have not waived this argument.

complaint rule.'"  *Id.* (citing *Caterpillar*, 482 U.S. at 393).  The Supreme Court has only

identified three instances of complete preemption, and the Second Circuit has identified two

others; all are based on federal statutes.  *Solomon*, 62 F.4th at 60 n.2.

Defendants' preemption argument is based on their argument that the City disguised

claims that target Defendants' production and sale of fossil fuels as consumer protection claims;

claims directed at production and sale of fossil fuels, according to Defendants, implicate

transboundary pollution and foreign affairs.  They then argue that federal common law governing

transboundary pollution and foreign affairs "utterly dominates" the field, such that any claim

touching those areas "necessarily arises under federal law."  Defs. Opp. at 16 (citing *Marcus v.

AT&T Corp.*, 138 F.3d 46, 53 (2d Cir. 1998)).  They have made the same argument in many if

not all of the similar consumer protection cases filed by other state and local governments.  None

has succeeded.[4]  The argument does not succeed here either.

There are two problems with Defendants' argument.  First, as much as they have tried in

this case and similar cases to recharacterize consumer protection claims to be about emissions,

that is not what is alleged in the Complaint.  The claims in the City's Complaint are about false

and misleading advertisements.  Those claims do not become claims about transboundary

pollution and foreign affairs just because the alleged deception relates to the impact of fossil

fuels on the climate.  The second problem with Defendants' argument is that there is no

indication that Congress expressly authorized or intended to completely preempt state laws that

---

[4]    *See, e.g.*, *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 707–08 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 2483 (2023); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 710 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 620 (2024); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1262 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142, 149 (D. R.I. 2019); *District of Columbia v. Exxon Mobil Corp.*, 640 F. Supp. 3d 95, 104 (D.D.C. 2022), *aff'd*, 89 F.4th 144 (D.C. Cir. 2023); *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 628 (D. Del. 2022), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022).

have a glancing relationship to transboundary pollution or foreign affairs.[5]    Defendants argue

that Congressional intent does not control the complete displacement of state law in all areas

where federal law governs.  Defs. Opp. at 17–18.  Further, Defendants claim that a federal statute

is not required because the federal common law governing interstate pollution arises from the

constitutional structure and not from a federal statute.  *Id*. at 19.

The Court is not persuaded by Defendants' argument.  The Circuit has indicated that it is

an open question whether federal common law can have complete preemptive effect.

*Connecticut*, 83 F.4th at 138 n. 4.  Although this Court would be inclined to hold that federal

common law cannot completely preempt state law, the Court need not wade into that thicket.

Even if federal common law could, in the abstract, have complete preemptive effect, it would not

preempt Plaintiff's claims, which are garden-variety false advertising claims.  The Supreme

Court and the Circuit have made clear that even in areas in which there is a substantial federal

interest, when operating in an area traditionally occupied by the state, the Court must "start with

the assumption that the historic police powers of the States were not to be superseded by the

Federal Act unless that was the clear and manifest purpose of Congress."  *Medtronic, Inc. v.

Lohr,* 518 U.S. 470, 485 (1996) (citation omitted).  Because of that presumption, state laws

designed to protect the state's citizenry against fraud and deception apply even in otherwise

highly regulated areas, such as those involving public health and safety.  *See Hillsborough Cnty.,

Fla. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 715–19 (1985); *see also Fla. Lime & Avocado

Growers, Inc. v. Paul,* 373 U.S. 132, 144 (1963).

---

[5]      In *Marcus*, the Second Circuit held that complete preemption only applies where Congress has made "some express statement or other clear manifestation . . . that it intends the complete preemption doctrine to apply." *Marcus*, 138 F.3d at 54.

Defendants have cited no cases and the Court has found none in which a Court has concluded that because the subject matter of particular advertising relates to a matter of federal interest, state consumer protection laws are preempted.  There is simply no conflict between the State's interest in ensuring its consumers are not misled by false advertising and any federal interest in regulating environmental pollution.  For the same reason that state consumer protection laws are generally not preempted by federal legislation, *see*, *e.g.*, *Toy Mfrs. of Am., Inc. v. Blumenthal*, 986 F.2d 615 (2d Cir. 1992) (federal Hazardous Substances Act does not preempt Connecticut's consumer protection law); *Pennsylvania v. Navient Corp.*, 967 F.3d 273 (3d Cir. 2020) (federal Higher Education Act does not preempt Pennsylvania's consumer protection law); *WinRed, Inc. v. Ellison*, 59 F.4th 934 (8th Cir. 2023) (Federal Election Campaign Act does not preempt Minnesota's consumer protection law), New York City's consumer protection law is not preempted by whatever federal common law might govern transboundary pollution.

The City's claims also do not implicate the foreign affairs of the United States. According to Defendants, the City's claims touch on a "complex and carefully calibrated network of international treaties" concerning climate change, which would "necessarily require[] national standards and global participation."  Defs. Opp. at 22.  But, as previously noted, that mischaracterizes the City's complaint.  The City is suing Defendants for disseminating false and misleading advertisements to consumers in New York City.  With all due respect to the men and women who are devoted to the foreign affairs of this country at the Department of State (and every other agency that touches foreign affairs), this Court cannot imagine any state of affairs under which their work would be affected by an order enjoining Defendants from disseminating misleading ads in New York City.  None of the legislation, treaties, executive action, or

international agreements cited in the Notice of Removal, Not. of Removal ¶¶ 47–55, would be affected one iota by the remedy Plaintiff is seeking.

In short, even assuming there were a basis for complete preemption in the absence of a federal statute, the City's claims in this case would not be preempted.

## 2. Federal Officer Removal

Defendants argue that this action was properly removed under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[6]

Defendants acknowledge that the Second Circuit in *Connecticut* "interpreted the federal officer removal statute to impose a strict causal-nexus requirement that would foreclose the statute's application to this suit on the current record;" they raise the argument to preserve for "future appellate review" their argument that the Removal Clarification Act of 2011 broadened federal officer removal to actions "not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." Defs. Mem. of Law at 25 (citing *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc)).

This Court is bound by Second Circuit precedent. The federal officer removal statute does not apply here for the same reason it did not apply in *Connecticut*: there is no causal nexus between Defendants' work for the federal government and Defendants' allegedly false and misleading advertisements.[7]

---

[6]     The federal officer removal statute permits removal of a state court civil action "that is against or directed to . . . any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Because Defendants are not themselves federal officers, they "must satisfy a three-pronged test to determine whether [they] may effect removal" on those grounds. *Connecticut*, 83 F.4th at 142 (citing *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008)). Defendants "must (1) show that [they are] a person within the meaning of the statute who acted under a federal officer, (2) show that [they] performed the actions for which [they are] being sued under color of federal office, and (3) raise a colorable federal defense." *Id.* at 142–43 (cleaned up).

[7]     Other Circuit Courts have similarly rejected defendants' arguments in other consumer protection cases in which they advocated for a "relaxed reading . . . of the [] 'nexus prong.'" *Mayor & City Council of Baltimore v. BP*

### 3.    Federal Enclave Jurisdiction

In the silliest of all of its arguments, Defendants argue that removal is proper because of federal enclave jurisdiction.  Section 8 of Article I of the U.S. Constitution authorizes Congress "[t]o exercise exclusive Legislation in all Cases whatsoever . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."  U.S. Const. art. I, § 8, cl. 17.  Some courts have interpreted that provision to establish federal subject matter jurisdiction for tort claims occurring on federal enclaves, even when applying state law.  *See, e.g.*, *Jograj v. Enter. Servs., LLC*, 270 F. Supp. 3d 10, 16 (D.D.C. 2017); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Federico v. Lincoln Mil. Hous.*, 901 F. Supp. 2d 654, 670–73 (E.D. Va. 2012).

Defendants' theory, contrary to fact, is that the City's Complaint targets their extraction, production, and sale of fossil fuels, including "operations that occur on military bases and other federal enclaves."  Defs. Opp. at 29.  Defendants contend that the City "seeks to reduce or eliminate altogether consumers' demand for and use of fossil fuel products," Defs. Opp. at 30, thereby implicating Defendants' actions both on and off federal enclaves.  Additionally, Defendants assert that the advertising the City alleges is false reaches federal enclaves, *i.e.*, "API's Super Bowl ads reach federal enclaves, such as Ellis Island and Fort Tilden."  Defs. Opp. at 30 (citing Compl. ¶ 71).

---

*P.L.C.*, 31 F.4th 178, 233 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023).  *See also Minnesota*, 63 F.4th at 715; *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 53 n.6 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 1796 (2023).

Defendants' theory of federal enclave jurisdiction has been rejected by every court to consider it in similar consumer protection cases that touch on deception about climate change.[8] The Court finds no reason to part company with those courts. The Complaint in this action does not target Defendants' extraction, production, or sale of fossil fuels, undercutting Defendants' first argument.

Defendants' second theory – that because their allegedly misleading advertisements reach federal enclaves, the Court has federal question jurisdiction – is ridiculous. Defs. Opp. at 30. The notion that because individuals in a federal enclave may view or hear an allegedly misleading advertisement there exists federal question jurisdiction related to the advertisement is absurd. In essence, Defendants' argument would federalize all consumer protection laws that relate to advertisements (and probably everything else); it is self-evident that all advertisements on the internet, television, radio and in newspapers can be viewed or heard by persons who happen to be in a federal enclave. Defendants' position is unsupported by law or logic and would improperly effect "a sweeping change to the balance between the jurisdiction of state and federal courts." *Connecticut v. Exxon Mobil Corp.*, No. 20-cv-1555, 2021 WL 2389739, at *13 (D. Conn. June 2, 2021).

---

[8]      *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 749–51 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1797 (2023); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1111–12 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *Mayor & City Council of Baltimore*, 31 F.4th at 217–19; *Rhode Island*, 35 F.4th at 58; *Minnesota v. Am. Petroleum Inst.*, No. 20-1636, 2021 WL 1215656, at *10–11 (D. Minn. Mar. 31, 2021), *aff'd*, 63 F.4th 703 (8th Cir. 2023); *Bd. of Cnty. Comm'rs of Boulder Cnty.*, 25 F.4th 1238 at 1271–72; *City & Cnty. of Honolulu v. Sunoco LP*, No. 20-00163, 20-cv-00470, 2021 WL 531237, at *8 (D. Haw. Feb. 21, 2021); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 564–66 (D. Md. 2019); *Rhode Island*, 393 F. Supp. 3d at 152; *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 973–975 (D. Co. 2019); *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 939 (N.D. Cal. 2018); *Platkin v. Exxon Mobil Corp.*, No. 22-cv-6733, 2023 WL 4086353, at *3 n.2 (D.N.J. 2023); *District of Columbia*, 640 F. Supp. 3d at 106–07; *City of Oakland v. BP P.L.C.*, No. 17-06011, 17-06012, 2022 WL 14151421, at *4–5 (N.D. Cal. Oct. 24, 2022), *appeal filed*, No. 22-16810 (9th Cir. Nov. 25, 2022).

### 4.   Diversity Jurisdiction

Defendants next assert that the Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the only non-diverse party, ExxonMobil Oil Corporation ("EMOC"), is fraudulently joined.  Defs. Opp. at 8–9.  Fraudulent joinder refers to "the joinder of unnecessary or nominal parties in order to defeat federal jurisdiction."  *Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation omitted).  Because Defendants are invoking federal court jurisdiction, they have the burden to prove fraudulent joinder.  *Id*.  To meet this "heavy burden," the "defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is *no possibility*, based on the pleadings that [the] plaintiff can state a cause of action against the non-diverse defendant in state court."  *Id*. (citation omitted).  Courts must consider the complaint at the time of removal to ascertain whether removal was appropriate.  *Fed. Ins. Co. v. Tyco Int'l Ltd.,* 422 F. Supp. 2d 357, 368 (S.D.N.Y. 2006).  If the complaint would likely survive a motion to dismiss in state court, the court's inquiry ends, and remand is appropriate.  *See Kuperstein*, 457 F. Supp. 2d at 471.  If state case law or legislation removes all reasonable possibility that the plaintiff would be permitted to litigate the claim, then remand must be denied.  *See id*.  If the viability of the claim is unclear, doubt must be resolved in favor of the plaintiff, and the case must be remanded.  *See id*.  The plaintiff's motive in joining the non-diverse party is "irrelevant, so long as the claim against that party is colorable."  *See id*. at 470 (citation omitted).

Defendants argue that the City used EMOC as a strawman to destroy diversity and that the City has "no real interest in gaining a judgment" against EMOC.  Defs. Opp. at 9.  Aside from the Complaint alleging EMOC's state of incorporation and principal place of business and alleging that it is a wholly owned subsidiary of Exxon Mobil Corporation, Defendants note that

the City did not make a single allegation in the Complaint specific to EMOC.  *See id*.  Then, in a

*non sequitur*, Defendants argue that the fact that the City did not sue EMOC in a prior suit that it

brought against Exxon Mobil Corp. (hereafter "City Trespass Case") is evidence that the City is

not interested in obtaining a judgment against EMOC in this case and only sued it to destroy

diversity.[9]  *See id*. at 10.

Defendants have not met their "heavy burden" of proving by clear and convincing

evidence that EMOC was fraudulently joined or that there is no possibility, based on the

pleadings, that the City can state a viable cause of action against EMOC.  Federal courts look to

the pleading standards of the forum state when assessing whether a plaintiff's claims could

proceed in state court.  *Kuperstein*, 457 F. Supp. 2d at 471.  The Complaint alleges that EMOC

markets its gasoline to City consumers and has done so using misleading advertisements in

violation of the CPL.  Comp. ¶¶ 11, 31, 76–92.  The Complaint, which appears to meet New

York's "liberal pleading rules," asserts a colorable claim against EMOC arising under municipal

law.  *See Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 476 (S.D.N.Y. 2000).  *See also*

*Shanahan v. Kolmar Labs., Inc.*, No. 18-cv-8317, 2019 WL 935164, at *1 (S.D.N.Y. Feb. 26,

2019) (cleaned up) (noting that "New York's pleading standards are more lenient than the

plausibility standard applicable in federal courts").

---

[9]     In *City of New York v. BP p.l.c.*, 325 F. Supp. 3d 466, 469 (S.D.N.Y. 2018), *aff'd sub nom. City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021) ("City Trespass Case"), the City sued some of the same defendants as here for public nuisance, private nuisance, and trespass for "exacerba[ing] global warming and caus[ing] recurring injuries to New York City."  Because that case was dismissed, Defendants argue that the City's current claims against EMOC are barred by *res judicata*.  Defs. Opp. at 10–11.  That being the case, they argue, there is "no possibility" that the City can state a viable cause of action against EMOC in state court.  *See id*. at 10 (citing *Pampillonia* v. *RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).  Defendants acknowledge that the City has brought different causes of action here but argue that the City cannot escape claim preclusion by "dressing up claims based on the same alleged misconduct under a different legal theory."  Defs. Opp. at 12.  Bringing a precluded claim against EMOC to destroy diversity, Defendants assert, demonstrates "the overall fraudulent nature of the City's pleadings."  *See id*. at 13.

Defendants have not made a single argument suggesting that the City's allegations against EMOC amount to outright fraud.  *See Rosenfeld v. Lincoln Life Ins. Co.*, 239 F. Supp. 3d 636, 639 (E.D.N.Y. 2017) (not finding outright fraud where the defendant argued that the allegations in the amended complaint were contrary to Plaintiff's deposition testimony).  Instead, they argue that the City's failure to make "specific allegations" against EMOC demonstrates "the outright fraudulent nature of EMOC's joinder."  Defs. Opp. at 2.  Although the Court agrees that the Complaint could be more specific as to the culpable actions of EMOC specifically, that is not sufficient to establish outright fraud.  Defendants speculate that the City has "no real interest in gaining a judgment" against EMOC.  *Id.* at 9.  In support of that speculation, Defendants cite an out of circuit case, *Rodriguez v. Casa Chapa S.A. de C.V.*, 394 F. Supp. 2d 901 (W.D. Tex. 2005).  In *Rodriguez*, the court found outright fraud based on the fact that the Plaintiffs failed to serve any discovery on the fraudulently-joined defendant and failed to seek a default judgment against the defendant when he failed to answer to the complaint.  394 F. Supp. 2d at 908.  The facts here are entirely distinguishable.

Next, Defendants claim that the fact that the City did not name EMOC as a defendant in the City Trespass Case years ago is proof that the City named EMOC in this case only to destroy diversity and to get a second bite at the apple by re-litigating its prior claims in another forum.  Defs. Opp. at 12.  Such speculation about the City's motives is not convincing nor is it relevant to the fraudulent joinder inquiry.  *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2015 WL 3776385, at *3 (S.D.N.Y. June 17, 2015) (finding a plaintiff's subjective motive or intent to recover "irrelevant" to the fraudulent joinder analysis).  As the City notes, the City Trespass Case targeted different conduct of Defendants under an entirely different legal theory,

and there is nothing improper or fraudulent in naming different defendants in different suits.  Pl.

Mem. of Law at 28.

Defendants argue that the City's claims are barred by *res judicata* and, therefore, the City

cannot state a viable cause of action against EMOC.[10]  This argument is unpersuasive.  *Res*

*judicata* does not apply here because the City has alleged different causes of action, targeting

different conduct during different periods of time, and naming different defendants from the City

Trespass Case.[11]  *See City of New York*, 325 F. Supp. 3d at 468–70.  Despite different causes of

actions, Defendants insist that the City "cannot escape the preclusive effect of [the prior federal

action] by dressing up claims based on the same alleged misconduct under a different legal

theory."  Defs. Opp. at 12.

That is a correct statement of the law, but it is not applicable here.  "[A] claim arising

subsequent to a prior action is not barred by *res judicata* even if the new claim is premised on

facts representing a continuance of the same course of conduct."  *TechnoMarine SA v. Giftports,*

*Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (cleaned up).  As noted in note 11, *supra*, this case

focuses on conduct that occurred almost entirely after the City Trespass Case was dismissed.

Because *res judicata* does not apply, Defendants have failed to show that the City has "no

possibility" of stating a plausible cause of action against EMOC in state court.  *See Briarpatch*

---

[10]     The City argues that Defendants disavowed the "no possibility" prong of the fraudulent joinder inquiry, because Defendants argued in their prior opposition brief, Dkt. 47 at 15, that the second prong of the test is "not at issue here."  Pl. Mem. of Law at 26.  Defendants argue that they did not "disclaim[]" fraudulent joinder under the "no possibility" test but, rather, that they emphasized the outright fraud prong in their prior brief.  Defs. Opp. at 10 n.8.  The Court need not decide whether Defendants abandoned this argument, because their argument fails on the merits.

[11]     The City Trespass Case and the action here focus on different conduct. In the prior suit, the City brought three causes of action, including public nuisance, private nuisance, and trespass for physical climate harms caused by Defendants' production and sale of fossil fuels.  325 F. Supp. 3d at 470.  In the instant case, the City alleges only violations of the CPL, asserting that Defendants "misrepresent[] the climate impacts of various gasoline products" to City consumers.  Compl. ¶ 5.  The time frame of the two lawsuits is also very different.  The City Trespass Case focused on conduct between 1980 and 2018.  325 F. Supp. 3d at 468–69.  This lawsuit focuses on conduct between 2017 and 2021, almost entirely after the prior case had been dismissed.  Compl. ¶¶ 31, 48, 71.

*Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302–03 (2d Cir. 2004) (rejecting fraudulent joinder under "no possibility" prong based on a *res judicata* defense).

Defendants have not met their burden of establishing fraudulent joinder.  Accordingly, the Court does not have diversity jurisdiction.

### 5.  Class Action Jurisdiction

Second in absurdity to Defendants' federal enclave argument is their claim that the case is removable under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the Complaint "resembles" a class action "in substance."  Defs. Opp. at 31–32.  CAFA creates federal jurisdiction for any class action in which "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," the proposed plaintiff class has 100 or more members, and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2), (d)(11)(B)(i).  A "class action" filed in state court is removable pursuant to CAFA.  28 U.S.C. § 1453(b); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 166 (2014).  CAFA defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  In fashioning a test for what constitutes a "similar State stature or rule of judicial procedure," the Second Circuit has held that "a similar state statute or rule need not contain all of the other conditions and administrative aspects of Rule 23, [but] it must, at a minimum, provide a procedure by which a member of a class whose claim is typical of all members of the class can bring an action not only on his own behalf but also on behalf of all others in the class."  *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 217 (2d Cir. 2013) (citation omitted).

The Complaint was not filed under Rule 23 or under the N.Y. C.P.L.R. equivalent, but Defendants insist that Congress intended the definition of "class action" "to be interpreted liberally" and argues that CAFA permits removal of a suit that is "in substance a class action." Defs. Opp. at 31 (citing *Addison Automatics, Inc. v. Hartford Cas. Inc. Co.*, 731 F.3d 740, 742 (7th Cir. 2013)).

The CPL grants the City authority to commence a proceeding "[w]henever any person has engaged in any act or practice which constitutes a violation" of the CPL.  N.Y.C. Code § 20-703(e).  Defendants do not even attempt to compare the requirements for a Rule 23 class action to those for a claim under the CPL.  That is understandable because the CPL does not impose any procedural requirements for bringing a suit or "impose any of the familiar hallmarks of Rule 23 class actions."[12] *Purdue Pharma*, 704 F.3d at 216.  The CPL does not pass muster under the Second Circuit's similarity test.  It provides that only the City can bring an action to enforce it, and it has no mechanism for a class member to bring a "typical" claim on behalf of a class.  The CPL does not even require proof that consumers have actually been injured, a far cry from the basic requirement in Rule 23 that a class representative have a representative injury.  N.Y.C. Code § 20-703(j) ("To establish a cause of action under this section it need not be shown that consumers are being or were actually injured.").  In short, the CPL provides a cause of action only for the City, which means a claim under it bears absolutely no similarity to a class action.[13]

---

[12]     Defendants argue that the City's reliance on *Purdue Pharma* is misplaced because that case involved a *parens patriae* suit.  Defs. Opp. at 32 n.18.  Although it is true that *Purdue Pharma* was filed by the Kentucky Attorney General under his *parens patriae* authority, the Circuit held broadly that to be "similar" to Rule 23 for purposes of CAFA, the statutory basis for the claim must contain a mechanism for a class member to bring an action on behalf of other class members.  *Purdue Pharma L.P.*, 704 F.3d at 217.  There was no indication that the Court intended its decision to apply only to *parens patriae* suits.  In this case, while there is no dispute that the City is not proceeding *parens patriae*, Pl. Reply at 18, Dkt. 75, the Second Circuit's analysis is still binding on this Court.

[13]     Defendants cite out of circuit cases that either have no bearing on or are easily distinguishable from the case at hand.  In *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891 (8th Cir. 2017), for example, the plaintiff actually brought a class action lawsuit.  In *Addison Automatics, Inc.*, 731 F.3d at 741–42 , the plaintiff had previously

In short, this action is not removable under CAFA.

### 6. First Amendment Defenses

As in *Connecticut*, Defendants argue that there is federal jurisdiction under the so-called *Grable* exception. The *Grable* exception provides that a claim is deemed to arise under federal law for purposes of the well-pleaded complaint rule when the state-law claim implicates significant federal issues. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This exception applies in only a "slim category" of cases. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). *Grable* jurisdiction exists if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance." *Fracasse*, 747 F.3d at 144 (citing *Gunn*, 568 U.S. at 258).

Defendants attempt to invoke this narrow category of jurisdiction by arguing that this false advertising case necessarily implicates affirmative federal constitutional elements based on the First Amendment. For a federal issue to be "necessarily raised," the "mere *presence* of a federal issue in a state cause of action" is inadequate; the question of federal law must be "a *necessary element* of one of the well-pleaded state claims." *Connecticut*, 83 F.4th at 140 (cleaned up). The City's CPL claim would "necessarily raise" a federal issue only if they were "affirmatively 'premised' on a violation of federal law." *Id*. (cleaned up). They are not so premised. To the contrary, to establish a CPL violation the City must prove (1) that Defendants engaged in "deceptive or unconscionable trade practice[s]" and (2) those practices involved

---

brought a class action in state court that had settled and then attempted to double dip when it filed another action fashioned as "an individual declaratory judgment action." The Court held that the lawsuit was an "artificial attempt to disguise" a class action as an individual suit. *Id*. at 742. In *Song v. Charter Commc'n, Inc.*, No. 17-cv-325, 2017 WL 1149286, at *1 (S.D. Cal. Mar. 28, 2017), defendants removed the action under CAFA based on the plaintiff's allegation that he brought his claims "not only for his benefit but also for the benefit of millions of California consumers."

"consumer goods or services." *Polonetsky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46, 52 (N.Y. 2001).

Defendants argue that the City's CPL claims "hinge on showing that [Defendants'] protected speech on an issue of public concern was deceptive because it did not parrot the City's approved viewpoint on climate change." Defs. Opp. at 32–33. According to Defendants, the court will not be able to resolve the City's misrepresentation claims without addressing whether the First Amendment protects the companies' commercial speech or speech on matters of public concern. Defs. Opp. at 33.

But Defendants are confusing a defense ("My statements were truthful and therefore protected") with an element of the City's claim ("Defendants' statements were deceptive"). If Defendants' statements were truthful and not misleading, the City will not prevail. The fact that Defendants may have a defense, even a defense rooted in the First Amendment, is not adequate to establish the *Grable* exception. If the law were as Defendants urge, every libel, slander, and false advertising claim in the country would be encompassed within *Grable*, which they plainly are not.[14] *Troung v. Am. Bible Soc'y*, 171 F. App'x 898, 898 (2d Cir. 2006) ("First Amendment defenses . . .cannot establish federal question jurisdiction.").

### C.  Fees and Costs

The City seeks costs and expenses incurred in litigating Defendants' removal pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The purpose of this fee-shifting provision is to "deter removals sought for

---

[14]      *See, e.g., Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343, 351 (4th Cir. 2024) (holding that federal question jurisdiction does not exist even though the first amendment is a defense and noting that "[s]tate courts routinely hear libel, slander, and misrepresentation cases involving matters of public concern.").

the purpose of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005). Courts may award costs in cases "where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. Whether to award fees is "left to the district court's discretion," *id.* at 139, and "does not require a finding of bad faith or frivolity," *Kuperstein*, 457 F. Supp. 2d at 472 (citation omitted). Section 1447(c) "affords . . . flexibility to the district courts in fashioning awards of costs and fees." *Morgan Guar. Tr. Co. of New York v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992). In deciding whether to award attorneys' fees or costs, district courts look at "overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." *Id.*

The City argues that an award of costs and fees is warranted because Defendants continued to assert grounds for removal that were abandoned in *Connecticut*, rejected in *Connecticut*, or have been universally rejected by courts around the country. Pl. Mem. of Law at 34. It would be "unfair," the City argues, to require it to absorb the costs of litigating "Defendants' efforts to rehash the same issues endlessly." *See id.* at 35 (cleaned up). In considering the plaintiff's request for fees in *Connecticut*, the district court noted that multiple district courts throughout the country had rejected similar arguments for removal. Because those courts were in different circuits, however, the *Connecticut* district court found that those decisions did not mean that Exxon Mobil lacked "an objectively reasonable basis for removal." 2021 WL 2389739, at *15. Accordingly, the court denied the state's request for costs and fees. *Id.* Although many of the municipalities and states that have brought similar consumer protection claims against oil companies and have succeeded in having the cases remanded to state court have not sought fees and costs, in the ones that have, the courts have generally not

awarded fees. [15]  A notable exception is the First Circuit, which awarded costs to Rhode Island in

*Rhode Island*, 35 F.4th at 62.

In the three years since the Connecticut district court denied fees in *Connecticut*, the

Second Circuit has largely rejected three of the seven grounds for removal that the defendant

argued in *Connecticut* and that Defendants continued to press in this Court.  Defendants argued

three additional bases for removal that were not before the Second Circuit, two of which had

been abandoned on appeal.  While those arguments had not, therefore, been decided by the

Second Circuit, the arguments had been roundly rejected by countless courts throughout the

country.

Although Defendants may have removed this case in good faith in 2021, their opposition

to the City's renewed Motion to Remand, which was briefed in October 2023, made multiple

arguments that had previously been made to and universally rejected by federal courts across the

country.  Defendants conceded that *Connecticut* controlled one of its grounds for removal, Jones

Decl., Ex. B. at 1, but conceded nothing else, despite the string of cases in district and circuit

courts that have rejected the very arguments they were pursuing.  Whatever may have been the

state of play in 2021, this can no longer be considered a good faith litigation strategy. Defendants

are grasping for straws for any way to bring this and the long list of similar consumer

---

[15]    *See Delaware*, 578 F. Supp. 3d at 641 (denying motion for fees and costs because the plaintiff waived its
opportunity to request fees and costs by raising the issue for the first time in its reply brief but also noting that
despite "the overwhelming weight of authority in other similar cases" the Third Circuit had not yet decided these
issues); *Platkin*, 2023 WL 4086353, at *4 (denying motion for fees and costs "[a]lbeit a close call" as Defendants
removed to preserve their jurisdictional rights in the event the Supreme Court granted certiorari and reversed *City of
Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022); *Vermont v. Exxon Mobil Corp., et al.*, No. 21-cv-260,
2024 WL 446086, at *10 (D. Vt. Feb. 6, 2024) (denying motion for fees and costs noting these cases involve
"evolving areas of law and present pleadings that are reasonably subject to varying interpretations"); Jones Decl. Ex.
A at 13, *City of Charleston v. Brabham Oil Co., Inc.*, No. 20-cv-3579, Dkt. 154 (denying motion for fees and costs
because at the time of removal, many of the grounds were contested because the Fourth Circuit had not yet decided
*Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022)).

protection cases into federal court. Defendants removed this case three years ago, and Defendants cite only one out of the countless similar cases decided since then in which a court has accepted a single ground for removal that Defendants have argued here. [16]

For all of these reasons, the Court finds that it is appropriate to award costs and fees incurred by the City in connection with arguments that it was not reasonable for Defendants to press when the City renewed its motion for remand: arguments that had largely been decided by the Circuit in *Connecticut* – federal common law, federal officer removal, and First Amendment defenses, [17] and those that were objectively absurd – federal enclaves and CAFA. Although Defendants' diversity jurisdiction argument was not a winner, the Court cannot say that it was unreasonable for Defendants to press that argument.

Accordingly, the City's request for costs and fees is GRANTED as to five of the six bases for removal at issue in this motion and DENIED as to the sixth. The parties must meet and confer and attempt to reach agreement on the amount of such fees and costs. [18] If the parties cannot reach agreement by June 28, 2024, the City must submit a fees application not later than

---

[16]     In *Pac. Coast Fed'n of Fishermen's Ass'ns v. Chevron Corp.*, No. 18-cv-7477, 2023 WL 7299195, at *1 (N.D. Cal. Nov. 1, 2023), the district court "reluctantly denied" Plaintiff's motion to remand finding that the case was properly removed under CAFA. In that case, however, the complaint pled a representative action authorized by California law. That case is readily distinguishable. It was brought by an association "in a representative capacity on behalf of its members," thus putting it squarely within the definition of class action in CAFA. *See id.*

[17]     Exxon Mobil abandoned its argument regarding First Amendment defenses on appeal in *Connecticut*. Although the Second Circuit did not, therefore, specifically address First Amendment defenses as a ground for removal, the Court did reaffirm that federal question jurisdiction "cannot be triggered on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Connecticut*, 83 F.4th at 132 (citing *Caterpillar*, 482 U.S. at 393). Defendants' nuanced distinctions regarding their First Amendment arguments are not objectively reasonable following *Connecticut*.

[18]     The Court is happy to refer the parties to their assigned Magistrate Judge for a settlement conference to assist. If the parties desire such a referral, they should submit a joint letter requesting a referral.

**July 19, 2024**, with supporting documentation regarding the fees and costs it incurred in litigating those five grounds for removal.

## CONCLUSION

For the reasons stated above, this Court joins the overwhelming majority of federal district and circuit courts around the country to conclude that these municipal law claims belong in state court. The City's Motion to Remand is GRANTED, and its request for costs and fees is GRANTED in part. The Clerk of Court is directed to terminate the open motion at Dkt. 68 and remand the case to the Supreme Court of the State of New York, County of New York.

**SO ORDERED.**

**Date:  May 8, 2024**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**